UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
WESLEY GABRIEL and SHAWN SMITH,                  :
individually and on behalf of all others similarly
situated,                                                               :
                       Plaintiffs,
        -against-                                          :        08 Civ. 2460 (SHS)

BRIAN FISCHER, in his capacity as Commissioner of the  :
New York State Department of Correctional Services
(DOCS), and in his individual capacity; ANTHONY J.             :
ANNUCCI, in his capacity as Deputy Commissioner and
Counsel for DOCS, and in his individual capacity;                 :
LUCIEN J. LECLAIRE, JR., former Acting Commissioner
of DOCS in his individual capacity; GLENN S. GOORD,    :
former Commissioner of DOCS, in his individual capacity,
and JOHN/JANE DOES 1-50 (DOCS Supervisory,                  :
Training, and Policy Personnel),
                                                    :
                       Defendants.
------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR INJUNCTIVE RELIEF AND IN SUPPORT OF ABSTENTION BY THE COURT

### PRELIMINARY STATEMENT

      On behalf of all defendants, none of whom has been served,[1] the Office of Attorney General ANDREW M. CUOMO, submits this Memorandum of Law in Opposition to Plaintiffs' Application for Injunctive Relief. This Office submits the Opposition in order to comply, in good faith, with the Court's scheduling orders, but must point out that plaintiffs cannot hope to succeed now, in any interim, or indeed ultimately, if service of any defendant is not effected. Assuming that plaintiffs effect service on defendants so that the Court may entertain the application for injunctive relief (and particularly relief from postrelease supervision), the Office of the Attorney General contends that the Court should deny injunctive relief to plaintiffs Wesley Gabriel and Shawn Smith on grounds

---

[1] This Office expects to represent defendants BRIAN FISCHER, LUCIEN J. LECLAIRE, JR., GLENN S. GOORD, and ANTHONY ANNUCCI,, as well as any JOHN/JANE DOES 1-50 (collectively "Defendants") if any is served. This Office spoke with plaintiff's counsel on Friday, April 11, 2008 to alert them of the apparent oversight, and counsel represented that the oversight would be cured as early as Monday, April 14, 2008.

– that Smith has already been relieved of post-release supervision, and thus has no claim for injunctive relief; and

– that Gabriel is not entitled to injunctive relief at this time as he does not meet his burden of showing that his complaint states a claim in this Court, and that even if it did, his claims are not ripe for review, as they belong in state court, or as federal habeas corpus claims, and

– that this Court, in any event, should abstain from hearing plaintiffs' claims in deference to proceedings in New York State courts.

In this action (inappropriately brought as a class action, given the lack of common characteristics of each of the cases of individuals in any prospective class), plaintiffs Wesley Gabriel and Shawn Smith seek different kinds of relief arising out of a challenge to New York State's authority to supervise violent criminals and to protect its civilian population from recidivist predators. On August 6, 1998, the New York State Legislature enacted "Jenna's Law," which ended indeterminate sentences for criminal defendants convicted of violent felonies.[2] See NY Penal Law §70.02. Jenna's law also imposed a schedule of mandatory terms of parole postrelease supervision to be included as a part of the sentences of violent felony offenders. See NY Penal Law §70.45. Plaintiffs do not challenge the constitutionality of the statute, but argue that DOCS should not enforce the statute (calculate periods of parole supervision) because of errors made by sentencing judges in New York State criminal courts. Because of these errors, plaintiffs argue that parole supervision and any consequent terms of incarceration are unlawful.

Essentially, the injunctive relief plaintiff Gabriel here seeks from this Court is an Order which would release plaintiff Gabriel (and other members of the class) from postrelease supervision, and other members of any prospective class from prison where they have been returned after a

---

[2] Jenna's Law was named for Jenna Grieshaber, a 22 year old nursing student who was murdered by a violent felon released from prison after serving only 2/3 of his sentence. The purpose of the law is to end indeterminate sentencing for violent felony offenders and to ensure that a fixed period of parole supervision applies to releasees who are believed to have difficulty re-adjusting to life outside of prison.

violation of parole. This relief – release from parole supervision or release from prison[3] – is really habeas corpus relief, not relief pursuant to 42 U.S.C. §1983, and thus the injunctive relief should be denied as inappropriate to the complaint. Plaintiffs should file habeas corpus proceedings in either the State or federal courts in the districts in which they are supervised or incarcerated.

Moreover, this Court should abstain from adjudicating plaintiffs' constitutional claims under the doctrines of Younger and Pullman and Colorado River abstention. Under the Younger doctrine, this Court should abstain from exercising jurisdiction over this matter until state appellate remedies have been exhausted. Under the Pullman and Colorado River doctrines, this Court should abstain until New York courts resolve state law questions on which the constitutional adjudication depend.

## FACTS

Postrelease supervision is mandatory for criminal defendants, such as plaintiffs, sentenced to determinate sentences for violent felonies after September 1, 1998. See NY Penal Law §70.45. The New York State Court of Appeals has repeatedly held that postrelease supervision is a direct consequence of a criminal conviction as it has a "definite, immediate and largely automatic effect on [a] defendant's punishment." See People v. Catu, 4 N.Y.3d 242 (2005); People v. Van Deusen, 7 N.Y.3d 744 (2006); People v. Louree, 8 N.Y.3d 541 (2007); and People v. Hill, 9 N.Y.3d 189 (2007). In Hill, decided in November of 2007, the Court of Appeals did not treat postrelease supervision which went undocumented at sentencing to be "a nullity;" instead, the Court of Appeals directed that Hill return to his sentencing court for that court to correct the error. The Court of Appeals significantly also did not cite to Earley v. Murray, 451 F. 3d 71 (2d Cir. 2006), and was not compelled to address its applicability to the law governing criminal sentencing and procedure in New York, a body of law considered by both federal and State courts to be a province of the State.

---

[3] Plaintiffs purport to represent a class of inmates incarcerated solely on the basis of warrants issued pursuant to violations of the conditions of "administratively imposed" terms of postrelease supervision.

Notwithstanding Hill, all four of this State's Appellate Divisions have held that postrelease supervision is "a nullity" when it is neither pronounced by the sentencing judge nor recorded on the sentence and commitment sheet.  See People v. Figueroa, 45 A.D.3d 297 (1st Dept. 2007); People v. Wilson, 37 A.D.3d 855 (2d Dept. 2007); Quinones v. Dept. of Correctional Services, 46 A.D.3d 1268 (3d Dept. 2007); People ex rel. Eaddy v. Goord, __ A.D.3d __ (4th Dept. 2008).  These Appellate Division cases are all based on the Second Circuit's decision in Earley v. Murray, 451 F.3d 71 (2d Cir. 2006), which held that postrelease supervision is "a nullity" unless it was expressly pronounced by the sentencing court.

On March 12, 2008, the Court of Appeals heard argument in a number of cases that will have direct bearing on the merits of the instant litigation as the cases heard will resolve the issue of whether a trial court's failure to expressly impose a period of postrelease supervision as part of a sentence pronounced in open court renders that component of the sentence invalid, and whether any invalidity or other error must be corrected by remand to the sentencing court.  See Garner v. N.Y.S. Dept. of Correctional Services, 39 A.D.3d 1019 (3d Dept. 2007), *lv granted*, 9 N.Y.3d 809 (2007); People v. Thomas, 35 A.D.3d 192 (1st Dept. 2006), *lv granted* 9 N.Y.3d 882 (2007); People v. Sparber, 34 A.D.3d 265 (1st Dept. 2006), *lv granted*, 9 N.Y.3d 882 (2007); People v. Lingle, 34 A.D.3d 287 (1st Dept. 2006), *lv granted*, 9 N.Y.3d 877 (2007).  Plaintiffs' own convictions arguably will be affected by any decision from the Court of Appeals.  Indeed, to the extent that the Court of Appeals should follow the lead suggested by Hill and Catu, the error in plaintiffs' own sentencings will require return to their sentencing courts.  As such, the prospect of ongoing material New York State criminal court proceedings suggests that this Court should refrain – and defendants will contend, abstain – from deciding the federal issues raised until the State law issues (which, as plaintiffs concede, give rise to the federal issues) are resolved.

4

## ARGUMENT

## POINT I

### THIS COURT SHOULD ABSTAIN FROM DECIDING THIS CASE UNDER THE *YOUNGER* AND *PULLMAN* ABSTENTION DOCTRINES

A.  *Younger* Abstention Applies

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that federal courts must abstain from enjoining a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment or irreparable injury that is both serious and immediate. "Younger involved a criminal judicial proceeding, but subsequent decisions have made clear that the same concerns of federalism and comity warrant abstention where state administrative disciplinary proceedings (like the one at issue here) are ongoing." Doe v. Connecticut, 75 F.3d 81, 85 (2d Cir. 1996). As the Supreme Court explained, "[t]he policies underlying Younger are fully applicable to noncriminal proceedings when important state issues are involved." Middlesex County Ethics Comm'n v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).

Under Younger, a would-be plaintiff who has been subjected to a state court proceeding must exhaust all available state appellate remedies. Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975). The fact that a constitutional issue (as framed by the federal courts) is not the direct subject of a state court proceeding, or that a plaintiff may not be vindicated on the particular constitutional claim that he raises in federal court, does not provide a plaintiff with independent grounds to pursue a separate federal case: "it is sufficient under [Supreme Court precedent] that constitutional claims may be raised in state-court judicial review of the administrative proceeding. Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 629 (1986). See also Huffman, 420 U.S. at 608 (violation of obscenity laws; constitutionality may be raised in state court proceeding); Trainor v. Hernandez, 431 U.S. 434 (1977) (constitutionality of state lien without due process may be raised in state court proceeding).

In this case, plaintiffs have the opportunity to proceed in state court, through motions to their criminal sentencing courts, by direct appeal of determinations made by their sentencing courts, or through resort to filing CPLR Article 78 proceedings or Article 70 habeas corpus petitions, to vindicate their rights. Plaintiffs have the opportunity to petition the New York Supreme Court for judicial review of their detention on constitutional and other grounds. Indeed, should the Court of Appeals reiterate its holdings that errors in sentencing criminal defendants to postrelease supervision are to be resolved in the criminal sentencing courts, plaintiffs will be <u>required</u> to return to the State courts, notwithstanding any decision by a federal court. Accordingly, <u>Younger</u> abstention should apply, and the case should be dismissed.

In this case, the three prerequisites for abstention discussed above are present. First, plaintiff Gabriel has criminal proceedings (<u>People v. Gabriel</u>, Indictment No. 86-01 and No. 129-01), attached as Exhibits A and B to Declaration of Matthew D. Brinckerhoff, dated March 11, 2008, which he alleges give rise to his federal claims. <u>People v. Louree</u> held that a criminal defendant may prevail upon the inherent powers of the courts to redress alleged infirmities in his criminal sentence even after significant time has elapsed. Moreover, plaintiff Gabriel and the other putative plaintiffs have avenues of relief in the State courts through Article 78 and Article 70, which avenues plaintiff Smith availed himself of. Further, DOCS will be bound by the decision in <u>Garner</u>, now before the Court of Appeals, such that there is an "ongoing" state proceeding which provides a basis for invoking abstention.. <u>See</u>, <u>e.g.</u>, <u>Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 433-34 (1982) (applying <u>Younger</u> to state proceedings).

Second, the substantial state interest necessary to invoke the abstention doctrine is also present. As plaintiffs' complaint itself reveals, postrelease supervision affects arguably hundreds of individuals and challenges the viability of applying a mandatory state sentencing scheme to protect the People of New York from violent felons who are released from prison and are attempting to re-adjust to society. It cannot be questioned that the State of New York has a vital interest in preventing the sudden release of hundreds of violent felons from prison or from supervision by the

Division of Parole until its own courts can determine the issues that allegedly compel the sweeping relief sought herein.

Third, a State court opportunity to vindicate federal rights is present here as well. Plaintiff Gabriel and any other plaintiff, could have raised his challenge, as demonstrated by co-plaintiff Shawn Smith, in a state habeas corpus proceeding. Indeed, plaintiff Smith "nullified" his postrelease supervision in Bronx County Supreme Court. Plaintiffs cannot argue that there are not ample protections in State court. Plaintiffs cannot be heard to argue that the New York State Courts will not address their issues in a fair manner. See, e.g., University Club v. City of New York, 842 F. 2d 37, 40 (2d Cir. 1988) (where the three-part test is met, and where constitutional issues may be considered, abstention is required). Moreover, much as the plaintiff in Earley found relief in the federal courts, plaintiff could likewise have availed himself of the federal habeas corpus statute, to the extent, as the Second Circuit recognized, he had exhausted his State remedies. Plaintiffs' complaint here is simply an end-run around the front line of relief provided plaintiffs by both State and federal statutes and courts. It is thus apparent that there are ample State court avenues for plaintiffs. Notions of comity and federalism compel the conclusion that the State courts are competent to hear and fully resolve plaintiffs' constitutional challenge. "[T]here is no reason to assume that .. [plaintiffs'] constitutional rights will not be protected by the Appellate Division ..., or, if further review becomes necessary, by the New York Court of Appeals." Erdmann v. Stevens, 458 F. 2d 1205, 1211 (2d Cir. 1972).

Under Younger, a would-be plaintiff who has been subjected to a state court proceeding must exhaust all available state appellate remedies. Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975). The fact that a constitutional issue may not be the direct subject of a state court proceeding, or that a plaintiff may not be vindicated on the particular constitutional claim that he raises in federal court, does not provide a plaintiff with independent grounds to pursue a separate federal case: "it is sufficient under [Supreme Court precedent] that constitutional claims may be raised in state-court judicial review" of the state proceeding. Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,

7

477 U.S. 619, 629 (1986). See also Trainor v. Hernandez, 431 U.S. 434 (1977) (constitutionality of state lien may be raised in state court proceeding).

Plaintiff cannot establish any bad faith exception to Younger abstention. The burden of establishing the exception is on the party seeking to avoid application of the abstention doctrine. Diamond "D", 282 F. 3d at 198-99 (citation omitted). For bad faith to exist, "the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome." Cullen, 18 F. 3d at 103. "To invoke this exception, the federal plaintiff must show that [a] state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." Diamond "D", 282 F. 3d at 199. Because abstention under Younger is appropriate here, this action should be dismissed. "Younger v. Harris contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." Gibson v. Berryhill, 411 U.S. 564, 577 (1973). "[W]hen Younger applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." Diamond "D", 282 F.3d at 197. See also Inman v. Harder, 2007 U.S. Dist. LEXIS 45260 (N.D.N.Y. 2007).

**B.**     ***Pullman* Abstention Should Apply**

Even if Younger abstention does not apply to this case, the Court should apply the Pullman abstention doctrine and require plaintiffs to litigate their claim in State court first. Under the Pullman doctrine, a federal court may abstain from deciding a case "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941).

In the Second Circuit, Pullman abstention may be appropriate when (1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible "to an interpretation by a state court that would avoid or modify the federal constitutional issue." Greater New York Metro. Food Council v. McGuire, 6 F.3d 75, 77 (2d Cir.1993). This case satisfies all three requirements for Pullman abstention. Plaintiffs complain that the statute violates the Due Process Clause's guarantees with respect to sentencing

8

expectations, while the Court of Appeals of New York State has defined the due process problem as one implicated during plea negotiations. This Court should abstain in order to permit the Court of Appeals to speak on the issue..

The Court of Appeals has never spoken on the applicability of Earley v. Murray. Earley is not controlling in the Court of Appeals.[4] That postrelease supervision attaches at the plea is current New York State law. Earley did not have the benefit of Hill when the Second Circuit addressed the issue. The federal courts must "defer to the judgment of the state court unless the state court determination constitutes an 'unreasonable application' of clearly established federal law as determined by the Supreme Court." See Brown v. Costello, 2003 WL 118499 (S.D.N.Y. 2003). It is also axiomatic that New York State courts have not found federal case law controlling, absent a clear direction from the United States Supreme Court. See People v. Andra Handre, et al., 94 Misc. 2d 217 (Kings Cty. 1978), citing, New York R.T. Corp., v. City of New York, 275 N.Y. 258 (1937), aff'd, 303 U.S. 573 (1938). Indeed, "[i]t is axiomatic, however, that when interpreting state statutes federal courts defer to state courts' interpretation of their own statutes. See, e. g., Bush v. Palm Beach County Canvassing Bd., 531 U.S. 70, 76 (2000) (per curiam) ( "As a general rule, this Court defers to a state court's interpretation of a state statute." ); Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 119 (2d Cir. 2001) (noting that "we must defer to the [state] [s]upreme [c]ourt on issues of state law "). The Second Circuit has affirmed that "[w]e are thus guided not only by the language of the statute itself but also by New York courts' interpretation of the statute." U.S. v. Fernandez-Antonia, 278 F.3d 150 (2d Cir. 2002). The Second Circuit may well have to revisit Earley should the New York State Court of Appeals refine its definition of State sentencing or procedural law. Certainly, in the federal habeas corpus context, '[u]nder established federal habeas principles,' federal courts must defer to state court determinations on issues of state procedural law."

---

[4] Earley can also be distinguished from the much-vaunted Wampler decision. Wampler involved an aggressive clerk who imposed a penalizing fine in the clerk's discretion. Earley involves a State agency attempting to comply with legislative mandate in the face of judicial error. The two cases are quite inapposite, and the Office of the Attorney General contends that Earley was wrongly decided.

9

Merriweather v. Mitchell, 1993 U.S. Dist. LEXIS 5213, *3 (S.D.N.Y. Apr. 21, 1993) (citing Maula v. Freckleton, 972 F.2d 27, 28 (2d Cir. 1992)). The Second Circuit itself has held that "[i]n determining whether a petitioner was entitled to a defense under state law, federal courts must of course defer to state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional." Davis v. Strack, 270 F.3d 111 (2d Cir. 2001) (emphases added). Plaintiffs' reliance on Earley could very well be further undermined by the impending Court of Appeals decisions. In the alternative, should the Court of Appeals adopt Earley and its progeny, the need for any further litigation on this issue may be eliminated altogether.

This Court in determining plaintiffs' claims will be required to interpret State law. The Court will have to determine not only whether the error at sentencing is one involving the plea or the sentencing expectations of criminal defendants, and will be required to determine whether the postrelease portion of a sentence can be commuted, as if it were a nullity (as plaintiffs would argue), or whether it should be calculated into the sentence upon return to the sentencing court. This is not a case in which plaintiffs raise an arguable facial challenge to the State's statute. Instead, plaintiffs complain about the statute's applicability to them as criminal defendants, without ever having pursued state remedies to determine whether or to what extent errors in the application of the statute should be addressed.

In these circumstances, Pullman abstention is warranted.

**C.     Abstention Under Colorado River v. U.S. Warrants Dismissal of this Action**

If this Court finds that it has jurisdiction here, notwithstanding the Younger doctrine, the Supreme Court has still held that abstention may be appropriate in cases that do not fit neatly within the traditional abstention doctrines set forth above. See Colorado River v. U.S., 424 U.S. 800, 817-18 (1976); DeCisneros v. Younger, 871 F.2d 305, 307 (2d Cir.1989). Abstention under Colorado River applies where, as here, "state and federal courts exercise concurrent jurisdiction simultaneously." Burnett v. Physician's Online, Inc., 99 F.3d 72, 76 (2d Cir.1996). To determine propriety of abstention under Colorado River, a district court is required to weigh several factors,

including jurisdiction of the court over the relief requested (here, essentially habeas corpus relief), the avoidance of piecemeal litigation, the order in which jurisdiction was obtained, whether state or federal law supplies the rule of decision, and whether a state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction (as, for example, plaintiff Smith's State court proceeding adequately protected his rights).  See Burnett, 99 F.3d at 76.  No single factor is necessarily decisive, see DeCisneros, 871 F.2d at 307, and the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." Moses H. Cone v. Mercury, 460 U.S. 1, 16 (1983).

Review of these factors compels the conclusion that this Court alternatively should abstain from hearing this case under Colorado River, either by dismissing it or staying the action, pending the outcome of State court proceedings, on the grounds that the applicability of Penal Law §70.45 has not yet been definitively addressed by the New York Court of Appeals and the State courts of New York can adjudicate the legal issues presented herein, with no reason to believe that the State courts will not protect plaintiff's rights adequately, not to mention the fact that the criminal court proceedings of all of the putative plaintiffs have been filed before this action and remain the principal source for relief plaintiffs seek.[5]

**POINT II**

**PLAINTIFFS FAIL TO MEET THE STANDARD FOR AFFIRMATIVE INJUNCTIVE RELIEF TO OVERTURN THE STATUS QUO**

Plaintiffs fail to meet the standard for preliminary injunctive relief.  A party seeking a preliminary injunction "must show irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor."  Louis

---

[5] Were plaintiffs to return to their sentencing courts for correction of the error in sentencing, plaintiffs might lose the windfall gained if civil courts declare postrelease supervision "a nullity."

11

Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 113-14 (2d Cir. 2006). A plaintiff who seeks an injunction "alter[ing], rather than maintain[ing], the status quo," must meet the more rigorous standard of demonstrating a "clear" or "substantial" showing of a likelihood of success on the merits. Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 33-34 (2d Cir. 1995). As the argument in Point I above demonstrates, plaintiffs' likelihood of success is not clear or substantial.

 A preliminary injunction is "an extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). In this case, the plaintiffs are seeking to alter the status quo and therefore must meet the more rigorous standard. Indeed, because plaintiffs here "seek[] a preliminary injunction that will affect 'government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard.'" No Spray Coalition, Inc. v. City of New York, 252 F.3d 148, 150 (2d Cir. 2001) (quoting Beal v. Stern, 184 F.3d 117, 122 (2d Cir. 1999)).

 Irreparable harm exists where, "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." Brenntag Int'l Chems. Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999). "[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1998) (internal citations and quotations omitted); See also Reuters, Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990). Plaintiff Gabriel, who was released to supervision on November 24, 2006, and has taken no steps to address his complaints in the State

courts for nearly two years, should not now be heard to argue that he is burdened by the statutory scheme such that he will be irreparably harmed unless this Court grants him immediate relief. Certainly, plaintiff Gabriel and no other plaintiff can demonstrate that the burdens of postrelease supervision justify overturning the status quo.[6] The obvious risk of releasing hundreds of violent felons from their supervision or incarceration by the State does not justify granting plaintiffs blanket relief they could seek and obtain individually in certain State court proceedings. The People, should the injunction issue, would obviously not be able to return to the status quo if, at the end of this litigation, plaintiffs were not to prevail and would be directed by this Court to return to their supervision or incarceration. Any balancing of harships tips in favor of defendants and the People of New York, with their interest in keeping violent felons under supervision or otherwise in custody. Thus, without a showing of irreparable injury, and because plaintiffs cannot demonstrate a likelihood that they will prevail in their claims, any preliminary injunctive relief should be denied.

## POINT III

### PLAINTIFFS' CLAIMS ARE NOT COGNIZABLE UNDER §1983

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into

---

[6] To the extent that plaintiff Gabriel or any other plaintiff seeks accommodations from the Division of Parole (which is not here a defendant), he (and no other potential plaintiff) demonstrates that he has sought any such accommodations.

question by a federal court's issuance of a writ of habeas corpus….A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983. Thus, when a prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck, 512 U.S. at 486 – 487 (emphasis in original). Additionally, "[e]ven a prisoner who has fully exhausted available state remedies has no cause of action under §1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." Id. at 489.

The Heck Court's conclusion was based upon "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Heck, at 486; see Wallace v. Kato, 127 S. Ct. 1091 (2007). The Court also stated that, "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of §1983." Heck, at 482 (quoting Preiser v. Rodriguez, 411 U.S. 475, 490(1973)).

While §1983 does not contain a judicially imposed exhaustion requirement, absent some other bar to the suit, a claim either is cognizable under §1983 and should immediately go forward, or is not cognizable and should be dismissed. Edwards v. Balisok, 520 U.S. 641, 649 (1997); See Heck, 512 U.S. at 481, 483.

"The purpose of the Heck favorable termination requirement is to prevent prisoners from using §1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of their confinement, and that punishments related to their term of imprisonment, or the procedures that led to them (if the procedural defect at issue was critical to the imposition of the punishment),

14

must be attacked through a habeas petition." Peralta v. Vasquez, 467 F.3d 98 (2d Cir. 2006).

Injunctive relief "tantamount to seeking relief from confinement" is barred by the Supreme Court's decision in Preiser v. Rodriguez. See 411 U.S. 475, 487-90, 500 (1973) (holding that a state prisoner challenging a state conviction or sentence, or the fact or duration of confinement and seeking immediate or speedier release, must do so by petition for writ of habeas corpus after exhausting state remedies); see also Jenkins v. Haubert, 179 F.3d 19, 24 (2d Cir. 1999) ("The Supreme Court held in Preiser that, for those cases at the heart of habeas corpus--those in which a prisoner challenges the fact or length of his confinement--habeas is the exclusive federal remedy, at least where the prisoner seeks an injunction affecting the fact or length of his incarceration"). Murphy v. Travis, 36 Fed. Appx. 679 (2d Cir. 2002).

A habeas petitioner need not be confined physically to satisfy the "in custody" requirement. Maleng v. Cook, 490 U.S. 488, 491, 104 L. Ed. 2d 540, 109 S. Ct. 1923 (1989)(per curiam). All petitioners whose convictions cause them to suffer substantial restraints not shared by the public generally come within the statute's purview, and parole has long been held to constitute such a restraint. See Jones v. Cunningham, 371 U.S. 236, 242-43, 9 L. Ed. 2d 285, 83 S. Ct. 373 (1963); Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994); DePompei v. Ohio Adult Parole Auth., 999 F.2d 138, 140 (6th Cir. 1993). As plaintiff Gabriel remains subject to postrelease supervision, he is "in custody" under § 2254(a). Velez v. New York, 941 F. Supp. 300 (EDNY 1996). Indeed, "[f]ederal courts have held that Heck applies to Section 1983 actions that challenge the fact or duration of confinement based on the revocation of parole." Davis v. Cotov, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002). It is clear that all plaintiffs, except for plaintiff Smith at this time, are challenging the validity of their confinement and must therefore proceed pursuant to the federal habeas corpus statute and their available state court remedies.

## POINT IV

## **PLAINTIFFS' SUIT IS BARRED BY QUALIFIED IMMUNITY**

Defendants are entitled to qualified immunity, at the very least, and thus any complaint seeking damages must be dismissed. Given the unsettled state of federal and state law on postrelease supervision, it is reasonable for defendants to believe that enforcement of a mandatory sentencing statute, notwithstanding the judiciary's errors, is reasonable and not a violation of clearly established precedent. Although plaintiffs argue that Earley clearly establishes their rights, it is certainly reasonable for individuals to disagree with Earley and to find the Second Circuit precedent inapplicable to other cases (as did the Judges of the Court of Appeals). Imputing ill motives to defendants grossly overstates plaintiffs' arguments. Even the district court in Earley questioned the validity of the Second Circuit determination that due process is implicated as a matter of State sentencing law. See Earley v. Murray (2007 WL 1288031 (E.D.N.Y. May 1, 2007) (District Judge Korman)).

Moreover, Earley was a federal habeas corpus action in which the federal courts recognized that the petitioner was required, as plaintiffs should be required here, to return to the State sentencing court. The district court, on remand, recognized that as a reasonable approach and held that the petitioner there was required to return to his sentencing judge.[7] While petitioner Earley did not get the relief in State court given the state of the law at that time, the circumstances of Earley do not mean that plaintiffs cannot here find their relief in New York

---

[7] Earley v. Murray (2007 WL 1288031 (E.D.N.Y. May 1, 2007)) held on remand that the remedy is to stay an order for release in order to allow the sentencing court to correct the illegal sentence. The inherent powers of the New York judiciary can solve the problem, instructed Judge Korman. The New York State Court of Appeals has held similarly.

State courts.  Neither the Earley court nor any other court has found Penal Law §70.45 unconstitutional.  Thus, DOCS and its individual employees remain bound to enforce its provisions.  Plaintiffs cannot expect a New York State agency to flout State legislative mandates as if it had discretion to comply with some laws and not others.  Even if clearly established as applicable to this situation, Wampler can reasonably be read as inapplicable to postrelease supervision, as the Court of Appeals of New York has obviously found to date.  Accordingly, qualified immunity certainly attaches to defendants.

Qualified immunity will terminate a lawsuit at the earliest possible stage.  Anderson v. Creighton, 483 U.S. 635, 638 (1987)   "[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigations will unduly inhibit officials in the discharge of their duties.  Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  Id.  "There are two ways government officials can show they are entitled to qualified immunity arising from their discretionary actions.  First, they are immune from liability if their conduct does not violate 'clearly established' statutory or constitutional rights the existence of which a reasonable person would have known." Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004) (internal citations omitted).  "Second, government officials will be immune if they can establish that it was objectively reasonable for them to believe their actions were lawful at the time.  That is to say, government officials enjoy immunity from liability 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  Id. (citing Anderson, 483 U.S. at 638).  Here, the individual

17

defendants cannot be said to have disregarded clearly established precedent; rather, they have followed the mandates of the Court of Appeals and the New York State Legislature.

The New York State Court of Appeals has repeatedly held that postrelease supervision is a direct consequence of a criminal conviction as it has a "definite, immediate and largely automatic effect on [a] defendant's punishment." See People v. Catu, 4 N.Y.3d 242 (2005); People v. Van Deusen, 7 N.Y.3d 744 (2006); People v. Louree, 8 N.Y.3d 541 (2007); People v. Hill, 9 N.Y.3d 189 (2007). In both Catu and Hill the defendants' sentencing courts were silent regarding postrelease supervision and so DOCS calculated the terms of postrelease by following Penal Law §70.45. The Court of Appeals held, in both cases, that Catu and Hill were entitled to have their pleas vacated because the defendants were not informed that they would be subject to postrelease supervision. The silence of the sentencing courts was irrelevant because DOCS was required to assess the postrelease supervision pursuant to Penal Law §70.45(2). Thus, if DOCS were precluded from assessing postrelease supervision without specific direction by the court, there would have been no basis for the Court of Appeals to grant plea vacatur to Catu and Hill.

DOCS is located in Albany, New York, which sits within the jurisdiction of the Third Department of the New York State Supreme Court, Appellate Division. Up until December 2007, caselaw in the Third Department held that when a defendant was "sentenced to a determinate sentence for his commission of a violent felony . . . 'a period of postrelease supervision [was] automatically included' in his sentence by statute. Matter of Deal v Goord (8 A.D.3d 769, 778 N.Y.S.2d 319 [2004], *appeal dismissed* 3 N.Y.3d 737, 820 N.E.2d 293, 786 N.Y.S.2d 814 [2004]) (internal citations omitted); Matter of Garner v. New York State Dept. of Correctional Servs., 39 A.D.3d 1019, 831 N.Y.S.2d 923 (3rd Dept. 2007) ("respondents are only enforcing, not imposing, a part of petitioner's sentence which was automatically included by

18

statute"). Therefore, since DOCS was merely "enforcing a statutorily-required part of petitioner's sentence, they ha[d] not performed any judicial function, making prohibition an unavailable remedy." Id. Garner and Deal were not overturned by the Third Department until December 27, 2007. See Matter of Quinones v. New York State Dept. of Correctional Servs., 46 A.D.3d 1268 (3rd Dept. 2007); Matter of Dreher v. Goord, 46 A.D.3d 1261, 848 N.Y.S.2d 758 (3rd Dept. 2007). Therefore, relying on precedent from the New York State Court of Appeals and the Appellate Division, Third Department, it was clearly objectively reasonable for defendants herein to believe their actions were lawful.

Accordingly, the complaint cannot succeed for money damages against any defendant, and thus plaintiffs are not likely to succeed on the merits.[8] Injunctive relief should be denied.

---

[8] Defendants also contend that the doctrines of res judicata or collateral estoppel apply to bar, in whole or in part, the claims of plaintiffs Gabriel and Smith (as well as other, yet unidentified plaintiffs), and that the plaintiffs' claims may be barred by applicable statutes of limitations. This Office reserves all rights to assert these and any other defenses when defendants are served with the complaint, to the extent that the complaint is not here dismissed on abstention grounds.

## CONCLUSION

For all of the foregoing reasons, the Court should abstain from entertaining plaintiffs' complaint at this time, and otherwise deny plaintiffs' application for injunctive relief.

Dated: New York, New York
April 11, 2008

Respectfully submitted,

ANDREW CUOMO
Attorney General of the
 State of New York
Attorney for Defendants

By:      s/ Michael J. Keane
Michael J. Keane
Andrew Meier
Assistant Attorneys General
120 Broadway - 24th Floor
New York, New York 10271
(212) 416-8550

Damian Noto
Law Intern
On the Brief