UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
WESLEY GABRIEL and SHAWN SMITH, individually
and on behalf of all others similarly situated,

                           Plaintiffs,                08 Civ. 2460 (SHS)

       – against –

BRIAN FISCHER, in his capacity as Commissioner
of the New York State Department of Correctional
Services (DOCS), and in his individual capacity;
ANTHONY J. ANNUCCI, in his capacity as Deputy
Commissioner and Counsel for DOCS, and in his
individual capacity; LUCIEN J. LECLAIRE, JR., former
Acting Commissioner of DOCS, in his individual capacity;
GLENN S. GOORD, former Commissioner of DOCS,
in his individual capacity; and JOHN/JANE DOES 1-50
(DOCS Supervisory, Training, and Policy Personnel),

                           Defendants.
----------------------------------------------------------------------x


# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION


**EMERY CELLI BRINCKERHOFF & ABADY LLP**
**75 Rockefeller Plaza, 20th Floor**
**New York, New York 10019**

**LAW OFFICES OF JOSHUA L. DRATEL, P.C.**
**2 Wall Street, 3rd Floor**
**New York, New York 10005**

***Attorneys for Plaintiffs***

## TABLE OF CONTENTS

**PAGE NO(s)**:

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    ABSTENTION IS NOT WARRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.    The *Younger* Doctrine Does Not Apply Here . . . . . . . . . . . . . . . . . . . . . 2

1.    No Interference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2.    Non-Parties Do Not Count . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B.    Abstention Under *Pullman* Is Improper . . . . . . . . . . . . . . . . . . . . . . . . . 5

C.    *Colorado River* Does Not Apply,
There Is No "Concurrent" State Proceeding . . . . . . . . . . . . . . . . . . . . . . 7

II.    THIS ACTION IS NOT BARRED BY *HECK V. HUMPHREY* . . . . . . . . . . . . . 9

III.    RELIEF FROM THE EFFECTS OF PRS IS NOT BARRED BY *PREISER* . . . 10

IV.    QUALIFIED IMMUNITY DOES NOT "BAR" THIS SUIT . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Plaintiffs Wesley Gabriel and Shawn Smith submit this reply memorandum of law in further support of their motion for a preliminary order pursuant to Fed. R. Civ. P. 65.

## PRELIMINARY STATEMENT

Defendants do not meaningfully contest the merits of plaintiffs' motion. They acknowledge that they (1) continue to impose the terms and conditions of post-release supervision ("PRS") upon plaintiff Gabriel and others similarly situated, (2) continue to issue arrest warrants for PRS violations, and (3) continue to re-incarcerate for PRS violations. They cannot dispute that this violates the Due Process Clause of the Fourteenth Amendment. They cannot dispute that the harm caused by their conduct is irreparable.

Wisely eschewing a battle on the merits, defendants instead attempt to avoid the consequences of their misconduct by invoking technical doctrines, like abstention, that have no application here, and raising defenses, like qualified immunity, that have nothing to do with the relief plaintiffs seek. Defendants' tactics have no merit. Almost two years have passed since the Second Circuit's decision in *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006). It is time for defendants to comply with the law. Plaintiffs' rights must be vindicated. Plaintiffs' motion should be granted.

## ARGUMENT

## I.    ABSTENTION IS NOT WARRANTED

Federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *see also, e.g., England v. La. Bd. of Med. Examiners*, 375 U.S. 411, 415 (1964) ("'When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such

jurisdiction.'") (quoting *Willcox v. Consol. Gas Co.*, 212 U.S. 19, 40 (1909)); *Cohens v. Virginia*, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given").

The Supreme Court has long emphasized that "[a]bstention rarely should be invoked, because the federal courts have a virtually unflagging . . . obligation to exercise the jurisdiction given them." *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (citing *Co. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *see also City of Houston v. Hill*, 482 U.S. 451, 467 (1987) (abstention is "the exception and not the rule"); *Zwickler v. Koota*, 389 U.S. 241, 251-52 (1967) ("abstention cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim"); *Williams v. Lambert*, 46 F.3d 1275, 1281 (2d Cir. 1995) (abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and "[a]bdication of the obligation to decide cases can be justified . . . only in . . . exceptional circumstances"). The strong policy disfavoring abstention applies with special force in civil rights cases because "[s]ection 1983 provides a unique federal remedy based on the Constitution." *C & A Carbone, Inc. v. Town of Clarkstown*, 770 F. Supp. 848, 853 (S.D.N.Y. 1991).

A.    **The *Younger* Doctrine Does Not Apply Here**

To justify a refusal to assume jurisdiction on the grounds set forth in *Younger v. Harris*, 401 U.S. 37 (1971), this Court must conclude that the relief plaintiff seeks will interfere with "ongoing" state court enforcement proceedings. *Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 72 (2d Cir. 1990). "*Younger* abstention does, in fact, depend on the 'technicality' of *ongoing* judicial proceedings." *Agriesti v. MGM Grand Hotels*, 53 F.3d 1000, 1002 (9th Cir. 1995); *see*

*also FOCUS v. Allegheny Co. Court of Common Pleas*, 75 F.3d 834, 843 (3d Cir. 1996) (reversing *Younger* abstention where ongoing state judicial proceeding had been terminated).

Defendants' opposition papers[1] mention, merge and conflate three possible state court proceedings in their *Younger* argument. First, they point out that plaintiffs "have the opportunity" to file their federal constitutional claims in state court. Defs.' Br. at 6. Second, they advert to Mr. Gabriel's criminal prosecution as if it is still pending (*i.e.,* "Gabriel *has* criminal proceedings," *id.*). Third, they identify the cases now before the New York State Court of Appeals that will almost certainly be decided next week as "'ongoing' state proceeding[s] which provide[] a basis for invoking abstention." *Id.* None of this should long detain this Court.

Abstention was appropriate in *Younger* because the defendant in an ongoing criminal prosecution filed an action in federal court claiming that the prosecution violated his constitutional rights and sought to enjoin his own prosecution. *Id.*

Plaintiffs are not challenging their convictions. They are not challenging their sentences. Indeed, Mr. Gabriel's prosecution and any right to appeal that may have followed ended long ago. Because this is undeniably true, defendants' statement that plaintiffs "have the opportunity" to file their federal constitutional claims in state court, Defs.' Br. at 6, gets them nowhere. *Every* plaintiff that seeks to vindicate his federal constitutional rights in federal court has "the opportunity" to file the same action in state court.

### 1.    No Interference

"[T]here is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts." *New Orleans Pub. Serv., Inc. v. Council of the City of*

---

[1]  Memorandum of Law in Opposition to Plaintiffs' Application for Injunctive Relief and in Support of Abstention by the Court (April 11, 2008) ("Defs.' Br.").

*New Orleans*, 491 U.S. 350, 373 (1989). The mere existence of a state court proceeding that may involve similar issues but different parties is not sufficient for a federal court to abstain under *Younger*. Instead, the Supreme Court has confirmed that "interference" with ongoing state judicial proceedings is the guiding principle when considering whether to abstain under *Younger*. *See*, *e.g.*, *Samuels v. Mackell*, 401 U.S. 66, 72 (1971). The Ninth Circuit, sitting *en banc*, has explained that *Younger* abstention is proper only where the federal court's interference "would have the same practical effect on the state proceeding *as a formal injunction*." *Gilbertson v. Albright*, 381 F.3d 965, 977-78 (9th Cir. 2004) (*en banc*) (emphasis supplied).

Obviously, nothing this Court does can interfere with Mr. Gabriel's long ago completed criminal case. Nor could this Court interfere with the inchoate "opportunity" to file an action elsewhere. That leaves the soon to be concluded state court cases currently before the Court of Appeals. Even though these cases are "ongoing" state court proceedings filed by others aggrieved by defendants' misconduct, none of the relief plaintiffs seek in this case would have the "same practical effect on the state proceeding as a formal injunction." *Gilbertson*, 381 F.3d at 977-78.

### 2.    Non-Parties Do Not Count

*Younger* abstention does not generally act as a bar to relief in federal court where the federal litigants are not the same parties in "ongoing state proceedings." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930 (1975). In *Doran*, the owners of three bars sought to enjoin the enforcement of a town ordinance prohibiting topless dancing. One of the three bar owners had a criminal proceeding pending against it in state court. The Supreme Court refused to apply *Younger* to the bar owners against whom no state cases were pending. *Id.* at 928-29.

Finally, insofar as this Court might be concerned that granting injunctive relief on a class-wide basis could affect some number of ongoing state court actions brought by putative class members seeking similar relief in state court, the solution would be to excise this small group from the effects of any injunctive order.

**B.     Abstention Under *Pullman* Is Improper**

Under the doctrine first announced in *Railroad Commission of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), a federal court may defer ruling on, but not dismiss, a federal case if there is an ambiguity in state law, which, if narrowly construed, would obviate the necessity of reaching the constitutional question.  "[F]ederal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided."  *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984).  The resolution of the federal question must depend upon the interpretation to be given to the state law.  *Pullman* is limited to "those cases in which the construction of a state statute by a state court could avoid or modify the federal constitutional question."  *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 601 (2d Cir. 1988); *see also Kusper v. Pontikes*, 414 U.S. 51, 54 (1973) (*Pullman* applies only if there is a "challenged state statute . . . susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching a federal constitutional question").

A district court may not abstain and issue a stay order under *Pullman* unless three criteria are met: "(1) an unclear state statute or uncertain state law issue; (2) determination of the federal issue turns upon resolution of the unclear state law provision; and (3) the state law provision is susceptible to an interpretation that would avoid or modify the federal constitutional question presented."  *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122,

126 (2d Cir. 1995); *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004).

Not one of these factors is present here. The only state law that has any bearing on plaintiffs' federal claim is unmistakably clear. New York Penal Law § 70.45 requires that persons convicted of various enumerated offenses should be sentenced to defined terms of post-release supervision in addition to a determinate sentence of incarceration. There is nothing ambiguous about it. State law requires post-release supervision ("PRS"). *Id.*

The statute commands that PRS be imposed. *Id.* The federal constitution commands that a penal sentence can only be imposed by a court. *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936). The interpretation of the plain meaning of the statute thus has no bearing on the resolution of the federal constitutional question presented. This is handily confirmed by the Second Circuit's analysis of the state statute and its impact on the constitutional analysis in *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006).

Defendants do not meaningfully contend otherwise. Instead, they devote most of their *Pullman* argument[2] to the uncontroversial proposition that state courts in general, and the New York State Court of Appeals in particular, are the final arbiters of the meaning of state law. Defs.' Br. at 9-10. While this is certainly true, it has nothing to do with whether this Court should stay its hand under *Pullman*.

---

[2] Defendants also appear to contend that abstention under *Pullman* is somehow appropriate because this "is not a case in which plaintiffs raise an arguable facial challenge to the State's statute." Defs.' Br. at 10. While defendants' observation is correct, defendants do not explain why this matters and cite no authority for the proposition that as-applied challenges are any different than facial challenges for *Pullman* purposes.

Although defendants do not say it expressly, it appears that their "real" abstention argument is that this Court should stay this action until the Court of Appeals decides the related cases because that determination may well moot plaintiffs' injunctive claims, thus rendering any decision by this Court unnecessary. While that may make sense as a matter of judicial economy, and, at this point, will likely occur in any event given that the Court of Appeals will almost certainly rule next week, it is not a ground for abstention.

That said, given (i) the impending ruling by the Court of Appeals, (ii) the likelihood that it will find that the administrative imposition of PRS is a nullity, and (iii) the possibility that defendants might then finally conform their conduct to clearly established constitutional law, there is a strong possibility that plaintiffs' injunctive claims will soon be moot. No one will be more pleased than plaintiffs and the putative class should this occur as it will finally put a stop to defendants' persistent flouting of federal law and will allow this case to focus on securing appropriate compensation for the thousands victimized by defendants' misconduct.

C.    *Colorado River* **Does Not Apply, There Is No "Concurrent" State Proceeding**

Before any analysis of the six *Colorado River* factors to determine whether this case presents the truly "exceptional circumstances" that would justify abstention on this ground, defendants must demonstrate that this action and the cases currently before the New York State Court of Appeals are "'concurrent' in the manner required by the *Colorado River* doctrine." *Sheerbonnet, Ltd. v. American Express Bank Ltd.*, 17 F.3d 46, 49 (2d Cir. 1994); *see also Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir. 1988) (overlap of subject matter not enough to make actions concurrent); *Crawley v. Hamilton County Commissioners*,

-7-

744 F.2d 28, 31 (6th Cir. 1984) (reversing abstention dismissal under *Colorado River* for failure to satisfy requirement that state proceeding be parallel because the parties and claims were different).

This case and the cases before the New York State Court of Appeals are not concurrent. The parties are not the same. The relief sought is not the same. Indeed, the parties aggrieved by defendants' misconduct in the state cases filed actions under the state habeas statute and Article 78 of the CPLR. Damages are not allowed under either provision. For this reason alone, *Colorado River* abstention has no application here.

But, there is more. Abstention under *Colorado River* is particularly inappropriate here because "the source of law in this proceeding is the federal constitution . . . . [T]he federal courts are more appropriate arbiters for this action and the presence of federal issues weighs heavily against dismissal." *American Insurers*, 854 F.2d at 603; *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (holding that "the presence of federal-law issues must always be a major consideration weighing against surrender" of federal jurisdiction).

Defendants can offer nothing to outweigh this interest. That defendants would prefer plaintiffs to litigate their claims in a state forum is certainly insufficient. Plaintiffs have every right to file this action in the federal courts – long the protectors of federal constitutional rights. Indeed, requiring plaintiffs to bypass this forum for state court would contravene "the paramount role Congress has assigned to the federal courts to protect constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 473 (1974).

Defendants fare no better under the six factors used to inform a court's analysis of whether exceptional circumstances exist which apply where, unlike here, there is a concurrent

-8-

state proceeding and the paramount need to provide a federal forum for a federal claim does not

exist. *See Village of Westfield v. Welch's*, 170 F.3d 116, 121 (2d Cir. 1999) (setting forth six

factors). Four of the six factors counsel against abstention. No court has assumed jurisdiction

over any *res* or real property. This forum, the federal forum, is not inconvenient. Abstaining

will not avoid piecemeal litigation because the state proceedings do not provide a damages

remedy. Federal, not state, law supplies the rule of decision. A fifth factor, whether the state

court cases adequately protect plaintiffs rights, cannot be determined at this time as it will depend

on defendants' willingness to comply with the state court ruling. Thus far, defendants have

continued to violate plaintiffs' rights even after *all four* appellate divisions issued rulings

following *Earley*. In the end, only one of the six factors favors a finding of exceptional

circumstances; the state cases defendants incorrectly identify as concurrent were commenced

before this action was filed. That is not enough.

Defendants' argument that this Court should abstain under *Younger*, *Pullman* and

*Colorado River* should be rejected.


## II.     THIS ACTION IS NOT BARRED BY *HECK V. HUMPHREY*

The Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)

is unambiguous:

> We hold that, in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff
> must prove that the conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state tribunal authorized to
> make such determination, or called into question by a federal court's issuance of a
> writ of habeas corpus. . . . A claim for damages bearing that relationship to a
> conviction or sentence that has *not* been so invalidated is not cognizable under §
> 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district
> court must consider whether a judgment in favor of the plaintiff would necessarily

imply the invalidity of his conviction or sentence; if it would, the complaint must
be dismissed unless the plaintiff can demonstrate that the conviction or sentence
has already been invalidated. *But if the district court determines that the
plaintiff's action, even if successful, will **not** demonstrate the invalidity of any
outstanding criminal judgment against the plaintiff, the action should be allowed
to proceed . . . .*

*Id.* (emphasis in italics supplied, emphasis in bold in original, footnotes omitted).

This case is the antithesis of *Heck*. Plaintiffs do not challenge the validity of their

convictions. They do not challenge the validity of their judicially imposed sentences. They do

not challenge the validity of the criminal court's judgments against them.

Plaintiffs' challenge the *ultra vires,* extra-judicial, imposition of post-release

supervision by administrators. The very point of plaintiffs' claim is that PRS was not imposed

by the judge or court that presided over plaintiffs' criminal cases, convictions and sentences.

Seeking redress for the misconduct of state executive branch administrators in violation of the

Constitution is at the core of 42 U.S.C. § 1983.

Plaintiffs' liberty has been restricted by the terms and conditions of PRS.

Plaintiffs, and many of the absent class members they seek to represent, have even been

incarcerated for allegedly violating the unlawful conditions of PRS. They are entitled to seek

damages for their injuries. The success of plaintiffs' claims "will *not* demonstrate [or even

imply] the invalidity of any outstanding criminal judgment" against them. *Heck*, 512 U.S. at 487.

This "action should be allowed to proceed." *Id.*

## III.    RELIEF FROM THE EFFECTS OF PRS IS NOT BARRED BY *PREISER*

By this motion, and on behalf of others similarly situated, plaintiff Gabriel seeks a

preliminary order directing defendants Fisher and Annucci to vacate, withdraw and/or nullify

immediately: (1) all terms and conditions of PRS imposed upon persons whose judicially

imposed determinate sentence(s) did not include a term of PRS, but whom nevertheless have been, or will be, subjected to PRS after the maximum expiration date of their determinate sentence(s); (2) all outstanding arrest warrants predicated upon alleged violations of the terms or conditions of PRS by persons whose judicially imposed determinate sentence(s) did not include a term of PRS, and whose maximum determinate sentence(s) date has expired; and (3) directing the release from custody of all persons whose judicially imposed determinate sentence(s) did not include a term of PRS, but who nevertheless are being detained after the maximum expiration date of their determinate sentence(s) for allegedly violating the terms and conditions of PRS.

Relying primarily on *Heck*, but also on *Preiser v. Rodriguez*, 411 U.S. 475 (1973), defendants argue that plaintiffs' claims for injunctive relief are not cognizable under § 1983. Unlike defendants' contention that this entire action, including plaintiffs' claims for damages, is barred by *Heck*, which is plainly wrong, *see* Point II above, defendants' argument based on *Preiser* and the availability of the injunctive relief plaintiffs seek has more traction.

In *Preiser*, the Supreme Court held that relief from the "fact or duration" of physical confinement by a prisoner must be brought under the federal habeas statute, 28 U.S.C. § 2254. 411 U.S. at 500. In *Preiser*, state prisoners brought actions under § 1983 seeking restoration of good time credits towards early release. The Supreme Court explained that "even if restoration of respondents' good-time credits had merely shortened the length of their confinement, rather than required immediate discharge from that confinement, their suits would still have been within the core of habeas corpus attacking the very duration of their *physical confinement* itself." *Id.* at 487-88 (emphasis supplied).

Setting aside the third portion of the injunctive relief plaintiffs seek (release from custody), plaintiffs' request to be freed from the terms and conditions of PRS and for any

-11-

outstanding arrest warrants to be vacated, does not affect the fact or duration of their physical confinement.  Accordingly, *Preiser* does not bar plaintiffs from seeking this relief in this action under § 1983.

Courts considering the reach of *Preiser* in this regard have uniformly construed it narrowly.  As long as a prisoner seeks injunctive relief that does not *necessarily and directly* affect the fact or duration of physical confinement, it is cognizable under § 1983.  *See Williams v. Ward,* 556 F.2d 1143, 1150 (2d Cir.1977) ("Although the relief sought by petitioner may improve his chances for parole, the question of his release and of the length of his confinement still lies within the sound discretion of the board, unlike *Preiser* where the restoration of good-conduct-time credits would have resulted *automatically* in the shortening of the prisoners' confinement") (emphasis supplied).  *See also, e.g., Anyanwutaku v. Moore*, 151 F.3d 1053, 1055-56 (D.C. Cir. 1998) (challenge to miscalculation of parole eligibility date cognizable under § 1983 because although change in parole eligibility date might shorten duration of confinement, it would not *necessarily* do so); *Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997) (same); *Gwin v. Snow,* 870 F.2d 616, 624-25 (11th Cir. 1989) (due process challenge to parole board procedures might, but will not necessarily, affect duration of physical confinement); *Serio v. Members of La. State Bd. of Pardons,* 821 F.2d 1112, 1119 (5th Cir. 1987) (same); *Georgevich v. Strauss,* 772 F.2d 1078, 1087 (3d Cir. 1985) (*en banc*) (same); *Walker v. Prisoner Rev. Bd.,* 694 F.2d 499, 501 (7th Cir. 1982) (same); *Candelaria v. Griffin,* 641 F.2d 868, 869 (10th Cir. 1981) (same); *Strader v. Troy,* 571 F.2d 1263, 1269 (4th Cir. 1978) (same).

Enjoining defendants from continuing to subject Mr. Gabriel (and those he seeks to represent) to the unconstitutional terms and conditions of PRS has no effect on the fact or duration of his physical confinement which ended when he was released from prison on

-12-

November 24, 2006, although the unlawful imposition of PRS did not commence until one year

later upon the expiration of his maximum determinate sentence.

       Similarly, enjoining defendants from issuing new warrants for the arrest of

putative class members for alleged PRS violations and directing that all outstanding warrants be

vacated, has no effect on the fact or duration of plaintiffs' physical confinement and is thus

appropriate relief under § 1983.

       Finally, while the third form of relief sought by this motion (release from custody)

appears to necessarily and directly affect the fact or duration of confinement and might thus be

precluded as a form of relief under § 1983, the extraordinary circumstances presented here

counsel against a strict application of *Preiser*.  Habeas relief is simply inadequate to address the

scope and breadth of defendants' willful disregard for the unequivocal pronouncement of the

Supreme Court in *Wampler* and the Second Circuit in *Earley*.  Plaintiffs can find no case where

state officials have so cavalierly violated the Constitution in a manner that resulted in the

wholesale unjustified incarceration of so many.  Defendants' hubris would appear to know no

bounds.  If, as plaintiffs expect, the New York State Court of Appeals rules next week and

nullifies defendants' unlawful imposition of PRS, one would ordinarily expect that defendants

would comply with that ruling.  If they do, then plaintiffs' motion will be moot.  If instead, they

choose to ignore the Court of Appeals, as they have ignored the Supreme Court, the Second

Circuit and every appellate division in this State, then an order from this Court directing the

immediate release of all persons wrongly incarcerated will be amply justified.

-13-

## IV.    QUALIFIED IMMUNITY DOES NOT "BAR" THIS SUIT

Apropos of nothing, defendants devote nearly a quarter of their brief opposing plaintiffs' motion for a preliminary *injunction* to the argument that they are entitled to qualified immunity from a suit for *damages*. Defs.' Br. at 16-20. Defendants are wrong. They are wrong because qualified immunity for damages has nothing to do with whether plaintiffs' motion for injunctive relief under *Ex Parte Young*, 209 U.S. 123 (1908), should be granted. They are wrong because they are not entitled to qualified immunity on plaintiffs' claims for damages.

Defendants' entitlement to qualified immunity turns on whether plaintiffs' right to be free from the *ultra vires* imposition of post-release supervision is clearly established. "For a right to be clearly established for purposes of qualified immunity, it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity." *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000); *see also Iqbal v. Hasty*, 490 F.3d 143, 170 (2d Cir. 2007) ("it is this Circuit's law that determines whether a right is clearly established for purposes of a qualified immunity defense").

The qualified immunity analysis in this case begins and ends with *Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. 2006). In *Earley*, the Second Circuit held that "clearly established Supreme Court precedent renders [a] PRS term added to [an individual's] sentence by DOCS invalid." 451 F.3d at 76 (adverting to *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936)). The Supreme Court is the final authority on the federal constitution. U.S. const. art. VI, sec. 2 (Supremacy Clause). Nothing in a state court opinion on the topic matters. Nothing in a state court opinion can render defendants' decision to flout *Wampler* and *Earley* "objectively reasonable."

-14-

## **CONCLUSION**

For the foregoing reasons, plaintiffs motion should be granted.


Dated: April 25, 2008
        New York, New York



                              EMERY  CELLI  BRINCKERHOFF
                                  & ABADY LLP


                              By: _____/s/_____
                                  Matthew D. Brinckerhoff (MB-3552)
                                  Elora Mukherjee (EM-0921)

                              75 Rockefeller Plaza, 20th Floor
                              New York, NY 10019
                              (212)763-5000


                              LAW OFFICES OF JOSHUA L. DRATEL, P.C.

                              By:  Aaron Mysliwiec (AM-6258)

                              2 Wall Street, 3rd Floor
                              New York, NY 10005
                              (212) 792-5132

                              *Attorneys for Plaintiffs*

-15-