UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
LAWRENCE HARDY, RAMONE CROSS, and
SHAWN SMITH, individually and on behalf of all others          08 Civ. 2460 (SHS)
similarly situated,

                                  Plaintiffs,

      – against –

BRIAN FISCHER, in his capacity as Commissioner
of the New York State Department of Correctional
Services (DOCS), and in his individual capacity;
ANTHONY J. ANNUCCI, in his capacity as Deputy
Commissioner and Counsel for DOCS, and in his
individual capacity; LUCIEN J. LECLAIRE, JR., former
Acting Commissioner of DOCS, in his individual capacity;
GLENN S. GOORD, former Commissioner of DOCS,
in his individual capacity; and JOHN/JANE DOES 1-50
(DOCS Supervisory, Training, and Policy Personnel),

                                  Defendants.
------------------------------------------------------------------------x

**DECLARATION OF MATTHEW D. BRINCKERHOFF IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

      MATTHEW D. BRINCKERHOFF, an attorney admitted to practice before this

Court, declares under penalty of perjury as follows:

1.      I am a member of Emery Celli Brinckerhoff & Abady LLP ("ECBA"), co-counsel for

plaintiffs and the putative plaintiff class in this case.  I submit this declaration in support of

plaintiffs' motion for class certification.  This declaration is made upon personal knowledge,

except where otherwise noted.

2.      Plaintiffs are represented by ECBA and the Law Offices of Joshua L. Dratel, P.C. ("the

Dratel firm").  ECBA has substantial expertise in both civil rights litigation and class action

representation. ECBA has been named class counsel in numerous cases challenging government policies as unconstitutional.

3.      The Dratel firm is co-counsel with ECBA on this matter. Mr. Dratel is a preeminent criminal defense attorney and Aaron J. Mysliwiec, the primary attorney from the Dratel firm on this case, has approximately ten years of experience in civil and criminal matters.

4.      Together, ECBA and the Dratel firm have the resources, expertise and experience to prosecute this action. Counsel for the plaintiffs knows of no conflicts among members of the class or between ECBA or the Dratel firm and members of the class.

5.      Attached hereto as Exhibit 1 is a true and accurate copy of the Complaint for Declaratory Judgment filed by the New York State Department of Correctional Services in *New York v. Michael Myers, et al.*, Index No. 4834-08 (Sup. Ct. Albany County June 4, 2008).

6.      WHEREFORE, it is respectfully requested that plaintiffs' motion for class certification be granted in its entirety.

7.      I swear under penalty of perjury that the foregoing is true and correct.


Dated: June 25, 2008
       New York, New York



_____/s/_____
MATTHEW D. BRINCKERHOFF

2

# Exhibit 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ALBANY
------------------------------------------------------------------------X

THE STATE OF NEW YORK,                                      :
THE NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES, AND THE NEW YORK      :
STATE DIVISION OF PAROLE,                               Index  No.: 4834-08

                                              :

                      Plaintiffs,                       **COMPLAINT FOR**
                                       :  **DECLARATORY JUDGMENT**

Albany County Clerk
Document Number 10201599
Rcvd 06/04/2008 3:13:31 PM

           -against-                                 :

MICHAEL MYERS, ROGER SMALLS, JESUS      :
NEGRON, and MALCOLM CARTER,
*individually and on behalf of all others similarly situated,* :

                                       :

                     Defendants.
------------------------------------------------------------------------X

        Plaintiffs, the State of New York ("State"), the New York State Department of

Correctional Services ("DOCS" or the "Department"), and the New York State Division of

Parole ("Parole" or the "Division"), by their attorney, ANDREW M. CUOMO, the Attorney

General of the State of New York, allege as follows:

### PRELIMINARY STATEMENT

        The criminal justice system in the State of New York, to avoid a potentially disastrous

public safety crisis, must address in an orderly and uniform way, the reversal of nearly ten years

of sentencing practices by sentencing courts, prosecuting district attorneys, the defense bar, court

clerks and administrators and state, county, and city agencies, including plaintiffs herein.  Recent

decisions of the New York State Court of Appeals suggest that sentencing courts throughout the

State of New York may not have validly pronounced legislatively-mandated post-release

supervision ("PRS") as part of the determinate sentences of tens of thousands of criminal

defendants – violent felons and, in some cases, predicate felons.  PRS components calculated by

DOCS into these sentences may now be deemed legally unenforceable, rendering the underlying

determinate sentence illegal.  This pervasive problem needs careful attention and orderly

solution; an unthinking and precipitous response could result in a sudden and mass release into

the community of these tens of thousands of violent felons, without supervision, and with

potentially disastrous consequences for the people of the State of New York.

Accordingly, plaintiffs seek declaratory judgment relief in this proposed defendant class

action lawsuit to systematically refer each and every potentially illegally sentenced defendant

back to the sentencing courts, where all the necessary parties can be heard on the issues arising

out of the illegal sentences.  Systematic referral to the sentencing courts is appropriate where it

appears that mandatory PRS may not have been pronounced, in order to conduct a thorough

analysis and reconstruction, if necessary, based upon documents and records within the sole

control of the sentencing courts.  Because the sentencing court is best able to determine whether

mandatory PRS was properly pronounced and whether, if PRS was not so pronounced,

defendants should be resentenced to a term that includes PRS as mandated by statute.

Plaintiffs seek a declaration that this comprehensive approach protects the rights of the

general populace and defendants alike, consistent with the recent Court of Appeals' holdings in

Matter of Garner v. New York State Dept. Of Correctional Services, 2008 NY Slip Op 03947,

2008 N.Y. LEXIS 1051 (April 29, 2008), and People v. Sparber, 2008 NY Slip Op 3946, 2008

N.Y. LEXIS 1053  (April 29, 2008).  Plaintiffs believe that jurisdiction should be vested in the

sentencing courts to correct sentencing errors and thereby address the potential public safety

crisis inherent in releasing tens of thousands of violent felons to the community without

supervision. Only in the sentencing courts can the district attorneys, defense counsel and court personnel - the parties normally entrusted with the resolution of criminal justice matters - resolve the issues raising such significant issues of justice and public safety. Otherwise, the present proliferation of piecemeal, detached and inconsistent civil proceedings will push the criminal justice system to the brink of chaos, undermining public confidence in the judiciary, and subverting the clear intent of the Court of Appeals to resolve mandatory PRS issues in sentencing courts.

In sum, plaintiffs seek to maintain the status quo and maintain custody of the defendant class (and its subclasses) for the specified and reasonable periods of time set forth herein. The interim relief and injunctive relief should be granted, for the sake of the security of the people of New York, in order that the plaintiffs and all other affected parties to the current crisis may responsibly and deliberately execute the comprehensive and uniform resentencing initiatives clearly required by the Court of Appeals.

## Parties

1. Plaintiff DOCS is an agency of the State of New York which is responsible, inter alia, for the confinement and housing of approximately 63,000 inmates at correctional facilities located throughout New York State. DOCS' principal office is located at Building 2, 1220 Washington Avenue, Albany, New York 12226.

2. Plaintiff Parole is an agency of the State of New York which is responsible, inter alia, for the supervision of over 43,000 parolees, including those released through presumptive release, the discretionary grant of parole, conditional release, and release to post-release supervision ("PRS"). Parole's principal office is located at 97 Central Avenue, Albany, New York 12200.

3. Defendant Michael Myers ("Myers") is an inmate currently incarcerated at Livingston Correctional Facility. Myers was incarcerated for violating the terms of his PRS, which was mandated as part of his sentence by Penal Law § 70.45. Myers was convicted of Robbery in the 1st Degree in the Supreme Court, Erie County; his Department Identification Number ("DIN") is #00-B-1754.

4. Defendant Roger Smalls ("Smalls") is a parolee currently subject to supervision by Parole. Smalls served a determinate 7 year prison term and he is now serving a term of PRS, which was mandated as part of his sentence by Penal Law § 70.45. Smalls currently resides in Albany, New York. Smalls was convicted of Robbery in the 2nd Degree in the Supreme Court, Albany County; his DIN is #99-A-4921.

5. Defendant Jesus Negron ("Negron") is an inmate currently incarcerated at Washington Correctional Facility. Negron is currently serving an 8 year determinate prison term and, upon his release, will be subject to a term of PRS, which was mandated as part of his sentence by Penal Law § 70.45. The maximum expiration date of Negron's determinate sentence is currently calculated to be October 1, 2009, and he is currently scheduled to be conditionally released to PRS on August 9, 2008. Negron was convicted of Attempted Robbery in the 1st Degree and Assault in the 2nd Degree in the Supreme Court, Kings County; his DIN is #02-A-3818.

6. Defendant Malcolm Carter ("Carter") is a parolee currently subject to supervision by Parole. Carter has been conditionally released from DOCS custody and is currently serving a term of PRS, which was mandated as part of his sentence by Penal Law § 70.45. The maximum expiration date of Carter's determinate sentence is currently calculated to be September 18, 2009. Carter was convicted of Rape in the 1st Degree, Sodomy in the 1st Degree, and two other offenses in the Supreme Court, Kings County; his DIN is #00-A-2846

## Jurisdiction and Venue

7.  The Court has personal jurisdiction over the defendants under CPLR § 301 because defendants reside in New York State.

8.  Venue is proper in Albany County pursuant to CPLR § 503 as both DOCS and Parole maintain their executive offices within Albany, New York.

## Factual Background

9.  Plaintiffs bring this action against defendants as a class, seeking a declaratory judgment pursuant to CPLR §§ 901 and 3001.

10.  On August 6, 1998, the New York State Legislature enacted "Jenna's Law," which ended indeterminate sentences for criminal defendants convicted of violent felonies.[1] Jenna's Law also created a schedule of mandatory terms of PRS to be included as a part of the determinate sentences of violent felony offenders. See NY Penal Law §70.45.

11.  Jenna's Law was named for Jenna Grieshaber, a twenty-two-year-old nursing student who was murdered by a violent felon released from prison after serving only two-thirds of his sentence.

12.  Following these changes to the sentencing statutes, there were many instances in

---

[1]Until recently, all New York State prison sentences were "indeterminate" - they ran between a certain minimum and maximum amount of time set by the court at the time of sentencing. Beginning with the Sentencing Reform Act of 1995, the Legislature established determinate sentences for repeat offenders convicted of violent felonies, first-time violent felony offenders, drug offenders, and sex offenders. Determinate sentences have no minimum sentence. The inmate subject to a determinate sentence must serve at least 6/7 of the determinate term before he or she can be eligible for conditional release to Parole for the remaining 1/7 of the term which, in the event that PRS is imposed, will run concurrent with PRS.

which DOCS received prisoners for whom a term of PRS was required by law, but for whom the commitment order received from the court did not explicitly provide for such a term. In such instances, beginning in 1998, DOCS calculated terms of mandatory PRS as provided by statute and included those terms on the inmates' records.

13. Accordingly, when an inmate, sentenced to a determinate sentence as a violent felony offender under Penal Law §§70.02, 70.70, or 70.80, was received into DOCS' custody, DOCS would calculate the inmate's maximum expiration date and his term of PRS, by applying the mandates of Penal Law §70.45 to the information on the inmate's sentence and commitment order.

14. DOCS made such calculations of maximum expiration dates, conditional release dates, and PRS for thousands of inmates. As noted above, DOCS calculated the length of an inmate's sentence, and calculated the time that an inmate was to serve under Parole supervision after his or her release, whether at his maximum expiration date or an earlier conditional release date.

15. When inmates were received by DOCS, they were accompanied only by their presentence report, sentence and commitment sheet, and rap sheet; while the minutes of their sentencing proceedings were required by the Criminal Procedure Law to be sent to DOCS, the sentencing minutes did not always arrive. In some cases the sentence and commitment sheets would be silent as to PRS even though it was explicitly imposed at sentencing.

16. Courts around the state regularly sentenced violent felons and committed them to DOCS' custody with the apparent understanding that PRS arose automatically by operation of law. This interpretation of the law was endorsed by Appellate Division opinions. Upon information and belief, many defendants were informed by defense counsel at or prior to their

sentencing hearings that mandatory PRS would be a part of their sentences.  At the time Jenna's

Law was enacted, the Legal Aid Society directed their lawyers representing criminal defendants

to advise their clients (criminal defendants) of mandatory PRS.  Upon information and belief,

district attorneys were also aware of PRS and like defense counsel and courts understood PRS to

arise automatically by operation of law.

17.  Certain inmates serving determinate sentences were granted conditional release after

serving six-sevenths of their sentences.  Upon their release, these inmates began working off the

time on their PRS, with the last one-seventh of their sentences held in abeyance.  See Penal Law

§70.45(5).  If the PRS time was completed without any violations, then the PRS time was

credited against the sentence time held in abeyance.  Id.  Where any violations were incurred, the

inmates would be returned to DOCS custody to serve the sentence time in abeyance before the

PRS would begin running again.  Id.

18.  Upon an inmate's release from DOCS, Parole was charged with supervising such an

individual during his term of PRS, as mandated by statute.

19.  During the course of their PRS, certain individuals were found to have violated the

terms of their supervision.  Upon such violations, Parole issued warrants for the detention of the

offending parolees and conducted a parole revocation hearing process pursuant to Executive

Law§ 259-i(3).

20.  Upon the completion of the parole violation hearing process, where any parole

violation charges were sustained, some parolees serving term of PRS were returned to DOCS

custody for a certain period of time determined by Parole pursuant to 9 N.Y.C.R.R. §8005.20.

Other parolees serving terms of PRS were released again to continued supervision by Parole.

**The Garner And Sparber Decisions In The Court of Appeals**

21. Recently, the New York State Court of Appeals held that DOCS was prohibited from administratively calculating a period of PRS into an individual's sentence, even though PRS is mandated by statute. See Garner. Under the Court of Appeals' decision, PRS is a part of an individual's sentence only when expressly imposed by the sentencing judge. Id. at **6.

22. The Court of Appeals, however, in issuing its decision, noted that its holding was "without prejudice to any ability that either the People or DOCS may have to seek the appropriate re-sentencing of a defendant in the proper forum." Id. at **8, n. 4.

23. On the same day, the Court of Appeals issued a decision in a group of cases combined under the lead caption of People v. Sparber. See Sparber. In the Sparber cases, the Court dealt with the issue of the appropriate remedy for terms of PRS imposed on criminal defendants in violation of NY Criminal Procedure Law §§ 380.20 and 380.40.

24. Rejecting the claim that PRS could simply be struck from the sentences, the Court ruled in Sparber that, though "the procedure through which PRS was imposed upon these defendants was flawed as it did not comply with the statutory mandate. To remedy this error, rather than striking PRS from the sentences as urged by defendants, these matters must be remitted to Supreme Court for resentencing and the proper judicial pronouncement of the relevant PRS terms." Id. at **2.

### The Administrative Burden of Resolving PRS Errors In Sentencing

25. Because of the Court of Appeals' decisions, plaintiffs are faced with a vast number of individuals who are subject to statutorily-mandated terms of PRS, which may have not been lawfully imposed and must be corrected through the resentencing process.

26. The defendant class includes thousands of inmates and parolees who are subject to terms of PRS that were not correctly imposed by the sentencing courts. The specific

circumstances of each case may differ, and, as the <u>Sparber</u> and <u>Garner</u> cases demonstrate, there are a variety of flaws that can affect a term of PRS. However, the Court of Appeals has identified a single means of correcting the error: a resentencing proceeding before the original sentencing court. See e.g., <u>Garner</u>, at **8, n. 4; <u>Sparber</u>, at **2.

27. Sentences without PRS are illegal sentences. Therefore, if DOCS and Parole are to avoid: (a) releasing thousands of violent felons to the street without any further supervision, and (b) allowing thousands of illegal sentences to stand uncorrected, the State agencies must endeavor to return each member of the class to his or her sentencing court. The sentencing courts are the appropriate venues for making the individualized determinations that must be made if the deficiencies in the sentences of all the class members are to be corrected.

28. Thus, in order to implement the resentencing process indicated by <u>Garner</u> and <u>Sparber</u>, DOCS and Parole have commenced a Postrelease Resentencing Initiative ("PRSI"), described in paragraphs 28 through 40 below. This initiative has included the participation of DOCS, Parole, the Office of the Governor, the Office of Court Administration ("OCA"), and the Division of Criminal Justice Services ("DCJS").

29. The first step in the initiative is to identify every individual as to whom DOCS' calculation of a term of mandatory PRS may be affected by the Court of Appeals decisions. DOCS and Parole have each formed working groups dedicated to manually reviewing the files of all of the members of the defendant class (potentially numbering in the tens of thousands) .

30. This document review project is a massive task, and it is complicated by the fact that the sentence and commitment orders and the sentencing minutes of each class member must be inspected, and even further complicated by the fact that neither DOCS nor Parole has received the sentencing minutes of all class members.

31. When the review process discovers a term of PRS that appears not to have been correctly imposed by the courts, the plaintiffs must then enlist the cooperation of the sentencing court, as well as the prosecuting District Attorney's Office, in order to correct the PRS term through resentencing.

32. Plaintiffs are currently seeking out that cooperation by sending individualized letters and proposed orders to the sentencing courts and District Attorneys for each class member. As of the date of this Complaint, more than 500 letters have been sent to sentencing courts across the State.

33. In addition to the letters sent by DOCS and Parole to the sentencing courts, the Chief Executive of the OCA, Lawrence K. Marks, has written to every administrative judge in the State, drawing the attention of the entire court system to the need for resentencings in potentially thousands of cases.

34. Once the sentencing courts order the defendants produced for resentencing, the class members must be returned to local custody for the proceedings.

35. DOCS and Parole have undertaken this massive initiative in order to implement the remedies for sentencing errors outlined by the recent Court of Appeals decisions on mandatory PRS.

36. To this end, DOCS and Parole must be afforded the time to review the records of as many as 30,000 inmates and parolees carefully and deliberately.

37. Under the constraints imposed by Garner, the sentencing courts, rather than DOCS and Parole, must determine whether PRS was properly pronounced at defendants' sentencings. The records of all of the members of the defendant class must be reviewed. Some of the members will require resentencing proceedings and some will not. For example, where the

commitment sheet was silent as to PRS, but where PRS actually was properly pronounced at sentencing, there is no basis for resentencing; it is sufficient for DOCS to request an amended commitment sheet from the clerk of the sentencing court.

38.  For many defendants, however, the records plaintiffs have in their possession  may not sufficiently demonstrate whether PRS was or was not properly imposed.  In these cases, review by the sentencing court will be required to determine whether resentencing is appropriate.

39.  DOCS and Parole, in the interests of public safety, do not believe it appropriate to release any defendant without an appropriate judicial determination as to which defendants are entitled to such release.

40.  Only the sentencing court can hear from all necessary parties and compel a complete record of the underlying plea or trial and sentencing.

41.  The foreseeable actions by the courts and the District Attorneys' Offices will involve a range of individualized determinations.  In many cases, it can be anticipated that the District Attorney's Office will seek to have resentencings calendared.  In other cases, a District Attorney's Office may not recommend resentencing, and in any event, the sentencing court may exercise its discretion not to resentence a particular defendant to a term of PRS; in such cases involving defendants in subclass A, as defined below, release may be appropriate.

### The Burdens of Piecemeal Resolution of PRS Sentencing Errors On The Civil Courts

42.  Members of the defendant class may seek through civil proceedings to strike PRS from their criminal sentences.  In the last month, dozens of Article 78 proceedings and Article 70 habeas corpus proceedings have been commenced seeking relief from mandatory PRS across the State.  Courts have rendered a wide range of inconsistent decisions; some courts ordering petitioners to the sentencing courts, other courts prohibiting DOCS from calculating PRS, and

other courts purporting to "strike" PRS as a "nullity" from a criminal sentence. The inconsistent and even occasional anomalous results promise to clog the trial and appellate courts for years.

43. Plaintiffs' proposed plan for resolving PRS sentencing errors for thousands of members of the defendant class will relieve the courts across the State of hundreds or even thousands of actions. Plaintiff's proposed plan promises uniformity, and predictability, and the plan offers members of the defendant class an effective remedy that is a streamlined, more efficient and more expeditious resolution than piecemeal civil litigation.

44. The relief plaintiffs seek here will ultimately give all defendant class members, not only those who file lawsuits, an opportunity for resolution through the resentencing process, as the Court of Appeals decisions in <u>Garner</u> and <u>Sparber</u> contemplate.

45. Defendant class members who pursue actions in the civil courts cannot avoid the determinations of the sentencing courts, and whether or not civil actions are filed, resentencings with the mandatory PRS are within the discretion of the sentencing courts.

## The Threat To Public Safety Posed By Striking Mandatory PRS From Sentences

46. As the vast majority of the class members are violent felons, it is vital that as many class members as possible be resentenced to valid terms of PRS. Resentencing the class members to PRS is necessary in order to protect the public and to effectuate the Legislature's mandate regarding the sentencing of violent felons.

47. In light of the nature of the crimes committed by these individuals, it is in the interest of public safety for this Court to direct that the status quo be maintained until after DOCS and the New York State Division of Parole have had an appropriately time-limited opportunity to make referrals to the sentencing courts, and the sentencing courts have had a similarly time-limited opportunity to entertain resentencing in the proper forum.

48. Because the most of the affected inmates and parolees are violent felony offenders, and many of them repeat violent felony offenders, the impact of their wholesale (or en masse) release on public safety is manifest. Recently, a parolee who had successfully vacated his PRS retention, after prevailing on a habeas corpus petition in Bronx County Supreme Court, was released without further supervision, only to be arrested and charged on May 18, 2008 with the May 9, 2008 murder of woman running a dry cleaning store in Brooklyn.[2]

49. Releasing the members of the class to the street en masse may also severely impair any realistic ability to resentence many class members to the mandated supervision.

## Class Action Allegations

50. This class action is authorized pursuant to CPLR §901. The defendant class consists of all of the individuals in DOCS custody, Parole custody, or under Parole supervision, for whom it appears that the documents in the possession of DOCS and Parole do not record terms of PRS imposed by the sentencing courts, although the individuals were subject to mandatory PRS under the applicable sentencing statute. This class contains three subclasses ("subclass A," "subclass B," and "subclass C").

51. Through this action, plaintiffs are seeking a declaratory judgment authorizing an appropriately-time-limited opportunity for the plaintiffs to make referrals to the sentencing courts, and for the sentencing courts to have an opportunity to entertain resentencing in the proper forum. Plaintiffs respectfully submit that the timetable proposed below provides for a balance that takes into account: (1) the rights of the class members; (2) the administrative

---

[2]The suspect is currently being held at Rikers Island Correctional Facility pursuant to Docket #2008-KN-037388, indictment #05037/2008.

difficulties involved in the Postrelease Resentencing Initiative; (3) the recent Court of Appeals decisions; (4) the Legislative mandate of Penal Law §70.45; and (5) the plaintiffs' responsibilities to the people of the State of New York.

**Subclass A**

52.    Subclass A includes those defendants who currently are in custody of DOCS (in a State correctional facility) or Parole (in a city correctional facility or a local jail) within the State of New York held pursuant to a violation of PRS, where the PRS period is beyond the maximum expiration date of the class member's determinate sentence, and where it appears that the documents in the possession of DOCS and Parole do not record a court-imposed term of PRS, although the defendant was subject to mandatory PRS under the applicable sentencing statute.

53.    Upon information and belief, over 1,500 subclass A defendants are currently incarcerated throughout New York State as a result of violating PRS where it appears that the documents in the possession of DOCS and Parole do not record a term of court-imposed PRS even though the defendant was subject to mandatory PRS under the applicable sentencing statute. Accordingly, subclass A is so numerous that joinder of all members is impracticable.

54.    Defendant Myers is a member of subclass A.  Myers is currently incarcerated as a result of violating PRS, as are all members of subclass A, and will therefore possess defenses typical of the defenses of absent members of subclass A.  Myers has no interests which are antagonistic to, or in conflict with, the other members of subclass A.  Accordingly, Myers will fairly and adequately protect the interests of subclass A.

55.    The questions of law and fact common to subclass A predominate over any questions affecting only individual subclass A members including whether Plaintiffs can retain custody of subclass A members in light of the Garner and Sparber decisions.

56. Plaintiffs anticipate no difficulties in the management of this action as it relates to subclass A. Due to the number of and varied geographic locations of subclass A members, a class action is superior to other available methods for the fair and efficient adjudication of this action.

57. Plaintiffs are currently focused on subclass A as the top priority group and, as of the date of this filing, have already referred more than one-third of subclass A members to their sentencing courts.

**Subclass B**

58. Subclass B includes those defendants who currently are in custody of DOCS in a correctional facility within the State of New York or under the supervision of Parole and whose period of PRS will, on or before June 1, 2009, extend beyond the maximum expiration date of the class member's determinate sentence, and where it appears that the documents in the possession of DOCS and Parole do not record a term of court-imposed PRS, although the defendant was subject to mandatory PRS under the applicable sentencing statute.

59. There are thousands of individuals located throughout New York State who fit the definition of subclass B. Accordingly, subclass B is so numerous that joinder of all members is impracticable.

60. Defendant Smalls is a member of subclass B. Smalls is currently subject to PRS and is being supervised by the Division of Parole and will therefore possess defenses typical of the defenses of absent members of subclass B, as all members of subclass B will be subject to PRS prior to June 1, 2009. Smalls has no interests which are antagonistic to, or in conflict with, the members of subclass B. Accordingly, Smalls will fairly and adequately protect the interests of subclass B.

61. The questions of law and fact common to subclass B predominate over any questions affecting only individual subclass B members including whether Plaintiffs can effect the re-sentencing of subclass B members.

62. Plaintiffs anticipate no difficulties in the management of this action as it relates to subclass B. Due to the number of and varied geographic locations of subclass B members, a class action is superior to other available methods for the fair and efficient adjudication of this action.

**Subclass C**

63. Subclass C includes those defendants who currently are in custody of DOCS in a correctional facility within the State of New York or released to the supervision of Parole on conditional or other release (but not exclusively PRS) and whose period of PRS will, after June 1, 2009, extend beyond the maximum expiration date of the class member's determinate sentence, and it appears that the documents in the possession of DOCS and Parole do not record a term of court-imposed PRS, although the defendant was subject to mandatory PRS under the applicable sentencing statute.

64. There are thousands of individuals located throughout New York State who fit the definition of subclass C. Accordingly, subclass C is so numerous that joinder of all members is impracticable.

65. Defendant Negron is a member of subclass C. Negron is currently in DOCS custody and will be subject to PRS upon his release. The maximum expiration date of Carter's determinate sentence is currently calculated to be after June 1, 1999, as are the expiration dates for all members of subclass C. Negron will therefore possess defenses typical of the defenses of absent members of subclass C. Negron has no interests which are antagonistic to, or in conflict

with, the members of subclass C. Accordingly, Negron will fairly and adequately protect the interests of subclass C.

66. Defendant Carter is a member of subclass C. Carter has been conditionally released from DOCS custody and is currently serving a term of PRS. The maximum expiration date of Carter's determinate sentence is currently calculated to be after June 1, 1999, as are the expiration dates for all members of subclass C. Carter will therefore possess defenses typical of the defenses of absent members of subclass C. Carter has no interests which are antagonistic to, or in conflict with, the members of subclass C. Accordingly, Carter will fairly and adequately protect the interests of subclass C.

67. The questions of law and fact common to subclass C predominate over any questions affecting only individual subclass C members including whether Plaintiffs can effect the re-sentencing of subclass C members in light of the Garner decision.

68. Plaintiffs anticipate no difficulties in the management of this action as it relates to subclass C. Due to the number of and varied geographic locations of subclass C members, a class action is superior to other available methods for the fair and efficient adjudication of this action.

**Wherefore**, the State of New York, DOCS and Parole seek an order from this court:

(i) declaring that a class of defendants shall be certified consisting of all of the individuals in DOCS custody, Parole custody, or under Parole supervision, for whom it appears that the documents in the possession of DOCS and Parole do not record terms of post-release supervision ("PRS") imposed by the sentencing courts, although the individuals were subject to mandatory PRS under the applicable sentencing statute; and that said class shall consist of three subclasses whose members belong as of this date to one of the subclasses as defined in the complaint in this action and below;

(ii) declaring that any member of subclass A of defendants as defined in the complaint in this action shall be referred to the sentencing court, and shall be continued in custody by DOCS for up to 60 days from the date of this order, or by Parole, in a city correctional facility or local jail, for up to 90 days from the date of this order, pending action by the sentencing court, and shall be held in custody thereafter only if the sentencing court informs DOCS or Parole or otherwise provides notice, prior to the expiration of such period, that the sentencing court will either hold resentencing proceedings, or is obtaining records in order to determine whether to hold resentencing proceedings, in the case of said subclass A member;

(iii) declaring that any member of subclass B of defendants as defined in the complaint herein who has reached, or will reach on or before July 31, 2008, the maximum expiration date

of such class member's determinate sentence, shall be referred to the sentencing court within 60

days of this Order, and shall be continued in custody or supervision for up to 90 days following

such referral to the sentencing court, and shall be continued in custody or supervision thereafter

only if the sentencing court informs DOCS or Parole or otherwise provides notice, prior to the

expiration of such 90 day period, that the sentencing court will either hold resentencing

proceedings, or is obtaining records in order to determine whether to hold resentencing

proceedings, in the case of such subclass B member;

(iv)  declaring that any member of subclass B of defendants as defined in the complaint

herein who will reach, after July 31, 2008, the maximum expiration date of such class member's

determinate sentence, shall be referred to the sentencing court prior to said maximum expiration

date, and shall be continued in custody or supervision pending action by such court, for up to 90

days after such subclass B member's maximum expiration date, and shall be continued in custody

or supervision thereafter only if the sentencing court informs DOCS or Parole or otherwise

provides notice, prior to the expiration of such 90 day period, that the sentencing court will either

hold resentencing proceedings, or is obtaining records in order to determine whether to hold

resentencing proceedings, in the case of such subclass B member;

(v)  declaring that any member of subclass C of defendants as defined in the complaint in

this action shall be referred to the sentencing court within 12 months of the service of this order,

and that said subclass C member should be released from DOCS or Parole supervision into the

community without any further supervision by Parole upon the maximum expiration date of said

subclass C member, unless a sentencing court informs DOCS or Parole or otherwise provides

notice, prior to the maximum expiration date of said subclass C member, that the sentencing

court will either hold re-sentencing proceedings, or is obtaining records in order to determine

whether to hold resentencing proceedings, in the case of said subclass C member;

(vi)  declaring that for any member of the class whose release from custody or Parole supervision would be required by a specific date under this order, any party may apply to the Court, and a party to any resentencing proceedings may apply to the resentencing court, for a reconsideration of such date on the basis of particular circumstances applicable to that class member; and that for any members of the class whose continued custody or supervision is authorized by this order, DOCS or Parole shall maintain custody and supervision of such class members unless a court of competent jurisdiction orders their release or unless they are entitled to release under the law as their sentences are currently calculated; and

(vii)  granting such other and further relief as the Court may deem just and proper.

Dated: Albany, New York
      June 4, 2008

<div style="margin-left:40%">

ANDREW M. CUOMO
Attorney General of the State of New York

By:       _____

Michael J. Keane, Esq.
Assistant Attorney General
Attorney for Plaintiffs
120 Broadway
New York, NY 10271

_____

Andrew H. Meier, Esq.
Assistant Attorney General
Attorney for Plaintiffs
120 Broadway
New York, NY 10271

</div>

Thomas M. Biesty, Esq.
On the Brief