UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
LAWRENCE HARDY, RAMONE CROSS, and
SHAWN SMITH, individually and on behalf of all others          08 Civ. 2460 (SHS)
similarly situated,

                        Plaintiffs,                        **FIRST AMENDED**
                                                                  **COMPLAINT AND**
– against –                                                    **JURY DEMAND**

BRIAN FISCHER, in his capacity as Commissioner
of the New York State Department of Correctional
Services (DOCS), and in his individual capacity;
ANTHONY J. ANNUCCI, in his capacity as Deputy
Commissioner and Counsel for DOCS, and in his
individual capacity; LUCIEN J. LECLAIRE, JR., former
Acting Commissioner of DOCS, in his individual capacity;
GLENN S. GOORD, former Commissioner of DOCS,
in his individual capacity; and JOHN/JANE DOES 1-50
(DOCS Supervisory, Training, and Policy Personnel),

                        Defendants.
---------------------------------------------------------------x

       Plaintiffs Lawrence Hardy, Ramone Cross, and Shawn Smith, on behalf of themselves and others similarly situated, for their Complaint, allege as follows:

## INTRODUCTION

       1. More than seventy years ago, a unanimous Supreme Court held that only the judgment of a court establishes a defendant's sentence, and that imposition of an extra-judicial sentence violates a defendant's constitutional rights. *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936) (Cardozo, J.).

       2. Consistent with *Wampler*, the Court of Appeals for the Second Circuit has held that the imposition of an extra-judicial sentence of post-release supervision ("PRS") by the New York State Department of Correctional Services ("DOCS") violated clearly established law. *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006).

3. Notwithstanding the unambiguous command of *Wampler* and *Earley*, DOCS has continued to administratively impose and enforce PRS on individuals such as plaintiffs Hardy, Cross, and Smith, and thousands of others, whose sentences never included PRS (the "PRS Policy"). And, if imposing illegal and onerous supervision terms were not enough, DOCS has also imprisoned individuals, such as plaintiffs Hardy, Cross, and Smith, who are accused of violating PRS conditions, and continues to do so. This is inexcusable. It must be stopped.

4. This action seeks to end defendants' willful disregard for the law and outright contempt for the hundreds (perhaps thousands) of class members whose constitutional rights they persist in violating. It defies belief that defendants have chosen to continue to impose PRS, and to even re-imprison persons charged with violating PRS, when PRS was never part of a valid judicially imposed sentence in the first place.

5. Plaintiffs Hardy, Cross, and Smith bring this action for injunctive and declaratory relief, and for compensatory and punitive damages, on behalf of themselves and others similarly situated whose judicially imposed sentence(s) did not include a term of PRS, but whom nevertheless have been, or will be, subjected to PRS and/or incarcerated after the maximum expiration date of their determinate sentence(s).

## JURISDICTION AND VENUE

6. This action arises under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

7. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a) and 2201.

8. Venue is lodged in this Court pursuant to 28 U.S.C. 1391(b).

## JURY DEMAND

9. Plaintiffs demand trial by jury in this action

## THE PARTIES

**Plaintiffs**

10. Plaintiff Lawrence Hardy is a 26 years old citizen of the United States. Mr. Hardy was incarcerated by DOCS pursuant to a determinate sentence of four years. He was not sentenced to PRS. Although Mr. Hardy was never sentenced to PRS, DOCS administratively imposed a five year term of prison for PRS, upon his release from prison on February 10, 2006 after having served 6/7ths of his four year determinate sentence. Mr. Hardy's maximum determinate sentence expired on September 9, 2006. Thereafter, starting on or about October 15, 2007, DOCS re-imprisoned Mr. Hardy for six months for allegedly violating the conditions of his PRS. DOCS continues to impose PRS on Mr. Hardy to this day.

11. Plaintiff Ramone Cross is a 37 years old citizen of the United States. Mr. Cross was incarcerated by DOCS pursuant to a determinate sentence of four years. He was sentenced to PRS for only 1.5 years, but DOCS administratively imposed a five year term of PRS, upon his release from prison. Mr. Cross's determinate sentence expired on February 20, 2003. His 1.5 year PRS period expired no later than August 20, 2004. However, DOCS has issued an arrest warrant for Mr. Cross because he allegedly violated PRS in or about August 2007. That arrest warrant is pending to this day.

12. Plaintiff Shawn Smith is a 42 years old citizen of the United States. Mr. Smith was incarcerated by DOCS pursuant to a determinate sentence of seven years. He was not sentenced to PRS. Although Mr. Smith was never sentenced to PRS, DOCS administratively imposed a five year term of PRS, upon his release from prison on October 26, 2005 after having

served 6/7ths of his seven year determinate sentence. Mr. Smith's maximum determinate sentence expired on October 26, 2006. Thereafter, on or about January 16, 2007, DOCS re-imprisoned Mr. Smith for nearly a year for allegedly violating the conditions of his PRS.

**Defendants**

13. Defendant Brian Fischer is the Commissioner of DOCS. Since he was appointed to that position on January 1, 2007, he has been and continues to be responsible for the policy, practice, supervision, implementation, and conduct of all DOCS matters and responsible for the appointment, training, supervision, and conduct of all DOCS personnel. In addition, Commissioner Fischer has been and continues to be responsible for enforcing the rules of DOCS, and for ensuring that DOCS personnel obey the Constitution and laws of the United States. As Commissioner of DOCS, Fischer is a policy-maker with respect to DOCS's decisions to administratively impose PRS. Commissioner Fischer is sued in his individual and official capacities.

14. Defendant Anthony J. Annucci is a Deputy Commissioner of, and Counsel to, DOCS. At all times relevant to this action, defendant Annucci has been, and continues to be, responsible for the policy, practice, supervision, implementation, and conduct of all DOCS matters and responsible for the appointment, training, supervision, and conduct of all DOCS personnel. In addition, Deputy Commissioner Annucci has been and continues to be responsible for enforcing the rules of DOCS, and for ensuring that DOCS personnel obey the Constitution and laws of the United States. As a Deputy Commissioner of, and Counsel to, DOCS, Annucci is a policy-maker with respect to DOCS's decisions to administratively impose PRS. Defendant Annucci is sued in his individual and official capacities.

15. Defendant Lucien J. Leclaire, Jr., was Acting Commissioner of DOCS from August 30 to December 31, 2006. Throughout that time, Acting Commissioner LeClaire was responsible for the policy, practice, supervision, implementation, and conduct of all DOCS matters and responsible for the appointment, training, supervision, and conduct of all DOCS personnel. In addition, Commissioner Leclaire was responsible for enforcing the rules of DOCS, and for ensuring that DOCS personnel obey the Constitution and laws of the United States. As Acting Commissioner of DOCS, Leclaire was a policy-maker with respect to DOCS's decisions to administratively impose PRS. Former Acting Commissioner Leclaire is sued in his individual capacity.

16. Defendant Glenn S. Goord was the Commissioner of DOCS from 1996 to August 30, 2006. Throughout that time, Commissioner Goord was responsible for the policy, practice, supervision, implementation, and conduct of all DOCS matters and responsible for the appointment, training, supervision, and conduct of all DOCS personnel. In addition, Commissioner Goord was responsible for enforcing the rules of DOCS, and for ensuring that DOCS personnel obey the Constitution and laws of the United States. As a former Commissioner of DOCS, Goord was a policy-maker with respect to DOCS's decisions to administratively impose PRS. Former Commissioner Goord is sued in his individual capacity.

17. At all relevant times, defendants "Jane/John Does 1-50" were training, supervisory and policy making personnel within DOCS who implemented, enforced, perpetuated and/or allowed the unconscionable PRS Policy that is the subject of this action, acting in their capacity of agents, servants and employees of defendants Commissioners Fischer, Annucci, Leclaire and Goord and within the scope of their employment as such. Plaintiffs are unable to

determine the names of these DOCS supervisory defendants at this time and thus sue them under a fictitious designation. All are sued in their individual capacities.

18. During all times mentioned in this complaint, defendants, separately and in concert, engaged in acts and/or omissions which constituted deprivations of plaintiffs' constitutional rights, and the privileges and immunities of the plaintiffs, and while these acts were carried out under color of law, they had no justification or excuse, and were instead gratuitous, illegal and improper.

## CLASS ACTION ALLEGATIONS

19. Plaintiffs Hardy, Cross, and Smith bring this case as a class action under Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of all persons whose judicially imposed sentence(s) did not include a term of PRS, but whom nevertheless have been, or will be, subjected to PRS and/or incarcerated after the maximum expiration date of their determinate sentence(s).

20. This case is appropriate for treatment as an injunctive class under Rule 23(b)(2) because defendants have acted, or failed to act, on grounds generally applicable to the putative class, thereby making appropriate final injunctive relief with respect to the Rule (b)(2) Class as a whole.

21. This case is also appropriate for treatment as a damages class under Rule 23(b)(3) because common issues predominate over individual issues and a class action resolving the claims of this putative damages class is superior to any other method of fair and efficient adjudication.

22. On information and belief, the class includes hundreds of members. They are so numerous that joinder is impracticable.

23. On information and belief, joinder also is impracticable because many members of the class are low-income persons, may not speak English, and likely would have great difficulty in pursuing their rights individually.

24. The questions of law and fact presented by plaintiffs' claims are common to the absent class members they seek to represent. Among others, the questions of law and fact common to the Class are: (i) whether defendants enforced or failed to prevent the enforcement of the PRS Policy; (ii) the degree of acquiescence of supervisory personnel in DOCS to the known unlawful acts of subordinates, and the failure of supervisory defendants to train, supervise, and discipline DOCS subordinates; (iii) whether the PRS Policy violates due process; (iv) whether defendants actions were sufficiently wanton as to warrant the imposition of punitive damages; (v) whether defendants are immune from suit; and (vi) the nature of injunctive relief necessary to ameliorate the effects of the PRS Policy and protect the class from future harm.

25. Common issues of law and fact such as those set forth above (and many others) predominate over any individual issues.

26. The PRS Policy has resulted in the wrongful detention and confinement of, and the infliction of injuries upon, plaintiffs and the Class. The claims alleged and the practices challenged in this complaint are common to all members of the class.

27. The violations suffered by plaintiffs Hardy, Cross, and Smith are typical of those suffered by the class. The entire class will benefit from the remedial and monetary relief sought.

28. Plaintiffs Hardy, Cross, and Smith have no conflict of interest with each other or any Class members, and will fairly and adequately protect the interests of the class. Counsel competent and experienced in federal class actions, federal civil rights litigation and

criminal defense has been retained to represent the class. Emery Celli Brinckerhoff & Abady LLP is a law firm with offices in New York City with extensive experience in civil rights litigation and as class counsel in numerous lawsuits against state and local governments. The Law Offices of Joshua L. Dratel is a law firm with an extensive and complex criminal practice.

29. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the prosecution of hundreds of separate actions would be inefficient and wasteful of legal resources; (b) the members of the class are scattered throughout New York State and are not likely to be able to vindicate and enforce their Constitutional and statutory rights unless this action is maintained as a class action; (c) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal in many separate actions; (d) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (e) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against defendants which would establish incompatible standards of conduct for defendants; (f) defendants have acted and will act on grounds applicable to all class members, making final declaratory and injunctive relief on behalf of all members necessary and appropriate; and (g) questions of law and/or fact common to members of the class especially on issues of liability predominate over any question, such as that of individual damages, that affect individual members.

30. There will be no extraordinary difficulty in the management of the class action.

## FACTS

31. The United States Constitution prohibits public officials, such as the Commissioner of the State DOCS or any of his subordinates, from administratively imposing any term of detention on an individual beyond what a sentencing court has authorized.

32. Defendants know that they may not institute, enforce, or permit the imposition of PRS absent an express statement or judgment from a sentencing court to that effect.

33. Defendants' policy, practice, and custom mandating the imposition and enforcement of PRS on individuals not sentenced to PRS has been promulgated, effectuated, and/or enforced in bad faith and contrary to clearly established law.

34. In 1936, a unanimous Supreme Court held that the judgment of a court establishes a defendant's sentence, and that imposition of an additional sentence by an administrator violates a defendant's constitutional rights. *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936) (Cardozo, J.). "The only sentence known to the law is the sentence or judgment entered upon the records of the court." *Id.* at 464. Any administratively added provision prolonging that sentence is void. *Id.* at 467.

35. In 2006, the Court of Appeals for the Second Circuit, relying on *Wampler*, held unconstitutional DOCS's administrative addition of a PRS term to the sentence of an individual whose sentence did not include PRS. *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006). Describing *Wampler* as "clearly established Supreme Court precedent," the Second Circuit declared: "The only cognizable sentence is the one imposed by the judge." 451 F.3d at 75. "Only the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty." *Id.* Thus, "[t]he additional provision for post-release supervision added by DOCS is a nullity. The imposition of a sentence is a judicial act; only a

judge can do it. The penalty [of PRS] administratively added by the Department of Corrections was, quite simply, never a part of the sentence." *Id.* at 76. DOCS's imposition of PRS violated the individual's due process rights. *Id.* at 76.

36. In flat defiance of the clear constitutional commands of *Wampler* and *Earley*, defendants have promulgated, implemented, enforced, and/or failed to rectify a policy, practice, and custom mandating the administrative imposition and enforcement of PRS on persons without authorization from a sentencing court.

37. On information and belief, hundreds (perhaps thousands) of individuals have been and continue to be subject to PRS pursuant to defendants' PRS Policy.

38. Each member of the class, including plaintiffs Hardy, Cross, and Smith, was a victim of the PRS Policy.

39. As a direct result of the unlawful imposition and enforcement of PRS pursuant to the PRS Policy, each member of the Class has suffered or will suffer actual damages in forms involving, without limitation, mental anguish, pain and suffering.

### The Experiences of the Named Plaintiffs

**(1) Lawrence Hardy**

40. Plaintiff Lawrence Hardy's experience is representative.

41. On October 2, 2002, plaintiff Lawrence Hardy received a four year determinate sentence.

42. The Court did not impose a period of PRS as part of either sentence. Nor was PRS mentioned on the sentencing commitment sheet.

43. Due to credit for time served awaiting trial, Mr. Hardy's maximum determinate sentence expiration date was September 9, 2006.

44. Due to a 1/7th reduction for good time, Mr. Hardy was released from prison on February 10, 2006 and subjected to a five year term of PRS imposed by DOCS.

45. In October 2007, Mr. Hardy was arrested for alleged violations of PRS.

46. On October 15, 2007, after the expiration of his maximum determinate sentence, DOCS re-incarcerated Mr. Hardy for alleged violations of PRS.

47. On or about March 11, 2008, after serving six months in jail without justification, Mr. Hardy was released.

48. Although Mr. Hardy was released in March 2008, he is still subject to illegal PRS as imposed by DOCS. Among other things, the terms and conditions of Mr. Hardy's PRS prohibit him from traveling outside of New York City. This condition has forced Mr. Hardy to be confined to a nursing home in Queens, where he is recovering from serious infections caused by the denial of medical care during his incarceration from October 2007 to March 2008 for alleged PRS violations, even though he and his doctors believe that the best place for him to recover is at home with his family in Stroudsburg, Pennsylvania.

49. As a direct and proximate result of defendants' unlawful imposition and enforcement of PRS on Mr. Hardy pursuant to the PRS Policy, and the unlawful period of imprisonment of six months pursuant to the same Policy, Mr. Hardy has suffered and continues to suffer loss of wages, psychological pain, suffering, and mental anguish.

(2) **Ramone Cross**

50. Plaintiff Ramone Cross's experience is representative.

51. On May 24, 2002, plaintiff Ramone Cross received a four year determinate sentence, in addition to a 1.5 year period of PRS.

52. Due to credit for time served awaiting trial, Mr. Cross's determinate sentence expiration date was February 20, 2003.

53. Thereafter, the 1.5 year period of PRS should have expired no later than August 20, 2004.

54. Instead, DOCS subjected Mr. Cross to a five year period of PRS, which was to expire on February 20, 2008.

55. In or about August 2007, Mr. Cross was arrested and charged with promoting prison contraband. He pleaded guilty to disorderly conduct and was sentenced to 15 days in jail. He served that time and then was released in August or September 2007.

56. After his release, Mr. Cross received a phone call from his parole officer indicating that the August 2007 arrest constituted a violation of the terms and conditions of PRS.

57. An arrest warrant was issued for Mr. Cross on the grounds that he allegedly violated PRS.

58. Mr. Cross currently lives in fear of being arrested on the parole warrant.

59. If Mr. Cross is rearrested, he will be imprisoned for approximately six months.

60. As a direct and proximate result of defendants' unlawful imposition and enforcement of PRS on Mr. Cross pursuant to the PRS Policy, Mr. Cross has suffered and continues to suffer loss of wages, psychological pain, suffering, and mental anguish.

(3)    **Shawn Smith**

61. Plaintiff Shawn Smith's experience is representative.

62. In July 2000, plaintiff Shawn Smith received a determinate sentence of seven years for two counts of burglary in the second degree. At the same time, he also received an

indeterminate sentence of two to four years for two counts of burglary in the third degree. The two sentences were ordered to run concurrently. Thus, the seven year determinate sentence controlled the calculation of the maximum expiration date of his sentence.

63. The Court did not impose a period of PRS as part of either sentence. Nor was PRS mentioned on the sentencing commitment sheet.

64. Due to credit for time served awaiting trial, Mr. Smith's maximum determinate sentence expiration date was October 26, 2006.

65. Due to a 1/7th reduction for good time, Mr. Smith was released from prison on October 26, 2005 and subjected to a five year term of PRS imposed by DOCS.

66. Consistent with its imposition of a five year term of PRS, DOCS continued to subject Mr. Smith to PRS after his maximum determinate sentence expired on October 26, 2006.

67. On or about January 16, 2007, DOCS re-incarcerated Mr. Smith for allegedly violating the terms of his PRS, by moving to a new home, missing a home visit with his parole officer, and skipping meetings of a drug program.

68. While re-imprisoned, Mr. Smith filed a petition for writ of habeas corpus in state court.

69. On December 21, 2007, the Bronx County Supreme Court granted Mr. Smith's petition, finding that DOCS's imposition of PRS was illegal. *Smith v. New York State Division of Parole*, Index No. 75043-07 (Bronx Co. Sup. Ct. Dec. 21, 2007).

70. After spending over eleven months in prison unlawfully, Mr. Smith was finally released on Christmas Eve, December 24, 2007.

71. As a direct and proximate result of the unlawful imposition and enforcement of PRS on Mr. Smith pursuant to the PRS Policy, and the unlawful eleven-month imprisonment

of Mr. Smith pursuant to the same Policy, Mr. Smith has suffered and continues to suffer loss of wages, psychological pain, suffering, and mental anguish.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983; Fourteenth Amendment

72. Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

73. By implementing, promulgating, and enforcing and/or effectuating a policy, practice and custom pursuant to which the named plaintiffs and other members of the plaintiff class were or will be subject to PRS when imposition of PRS on them was never authorized by any sentencing court, defendants have deprived and will continue to deprive each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourteenth Amendment of the United States Constitution. Defendants also conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and/or failed to prevent one another from doing so.

74. Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment.

75. Defendants acted beyond the scope of their jurisdiction, without authority of law, and abused their powers.

76. Defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourteenth Amendment to the United States Constitution.

77. As a direct and proximate result of the misconduct and abuse of authority detailed above, each and every plaintiff and members of the plaintiff class suffered and continues to suffer the damages hereinbefore alleged.

## **RELIEF REQUESTED**

WHEREFORE, plaintiffs and members of the putative Class request the following relief:

1. A judgment declaring that defendants have committed the violations of law alleged in this action;

2. An order preliminary and permanently enjoining and directing defendants Fisher and Annucci to cease imposing PRS upon members of the plaintiff class and to lift all effects of PRS, including without limitation:

   A. Directing defendants Fisher and Annucci to immediately vacate all terms of PRS currently being imposed upon members of the class who by definition are being subjected to PRS absent being sentenced to PRS by a court and after the maximum expiration date of their determinate sentence(s); and

   B. Directing defendants Fisher and Annucci to immediately vacate all warrants for the arrest of members of the class based on alleged violations of PRS who have reached the maximum expiration date of their determinate sentence(s);

   C. Directing defendants Fisher and Annucci to immediately release all members of the class currently incarcerated after the maximum expiration date of their determinate sentence(s).

4. Compensatory damages against all defendants in an amount to be proven at trial;

5. Punitive damages against all defendants in an amount to be proven at trial;

6. An order awarding disbursements, costs, and attorneys' fees; and

7. Such other and further relief that may be just and proper.


Dated: June 26, 2008
    New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

By: _____
Matthew D. Brinckerhoff (MB 3552)
Elora Mukherjee (EM 0921)

75 Rockefeller Plaza, 20th Floor
New York, NY 10019
(212) 763-5000


LAW OFFICES OF JOSHUA L. DRATEL, P.C.

By: Aaron Mysliwiec (AM 6258)

2 Wall Street, 3rd Floor
New York, NY 10005
(212) 792-5132