UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LAWRENCE HARDY, RAMONE CROSS, and         :
SHAWN SMITH, individually and on behalf of all others
similarly situated,                                          :
                              Plaintiffs,

            -against-                                          :            08 Civ. 2460 (SHS)


BRIAN FISCHER, in his capacity as Commissioner of the  :
New York State Department of Correctional Services
(DOCS), and in his individual capacity; ANTHONY J.      :
ANNUCCI, in his capacity as Deputy Commissioner and
Counsel for DOCS, and in his individual capacity;        :
LUCIEN J. LECLAIRE, JR., former Acting Commissioner
of DOCS in his individual capacity; GLENN S. GOORD,   :
FORMER Commissioner of DOCS, in his individual
capacity; and JOHN/JANE DOES 1-50  (DOCS               :
Supervisory, Training, and Policy Personnel),

                          Defendants.
------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN FURTHER SUPPORT OF ABSTENTION AND DEFENDANTS' MOTION TO DISMISS THE COMPLAINT



                                ANDREW CUOMO
                                Attorney General of the
                                 State of New York
                                Attorney for Defendants
                                120 Broadway - 24th Floor
                                New York, New York 10271
                                (212) 416-8550


Michael Keane
Andrew Meier
        Assistant Attorneys General


Damian Noto
        On the Brief

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT I        THIS COURT SHOULD ABSTAIN FROM DECIDING THIS CASE
               UNDER APPLICABLE DOCTRINES OF ABSTENTION . . . . . . . . . . . . . . . . 12

A.       *Younger* Abstention Applies To Require Dismissal of This Action . . . . . . . . . . . . . . . . 12

B.       *Pullman* Abstention Should Apply To Permit Dismissal Of This Action . . . . . . . . . . . 17

C.       Abstention Under *Colorado River v. U.S.* Warrants Dismissal of this Action . . . . . . . . 18

POINT II       PLAINTIFFS' CLAIM IS NOT COGNIZABLE UNDER §1983 . . . . . . . . . . . 20

POINT III      SUIT IS BARRED BY QUALIFIED IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

Anderson v. Creighton,
    483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Bad Frog Brewery, Inc. v. New York State Liquor Authority,
    134 F.3d 87 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Batts v. Artuz,
    254 Fed. Appx. 855 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Burford v. Sun Oil Co.,
    319 U.S. 315 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Burnett v. Physician's Online, Inc.,
    99 F.3d 72 (2d Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Colorado River v. U.S.,
    424 U.S. 800 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Davis v. Cotov,
    214 F. Supp. 2d 310 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Deal v. Goord,
    8 A.D.3d 769 (3rd Dep't 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

DeCisneros v. Younger,
    871 F.2d 305 (2d Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

DePompei v. Ohio Adult Parole Authority,
    999 F.2d 138 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198-99 (2d Cir. 2002) . . . . . . . . . 16-17

Doe v. Connecticut,
    75 F.3d 81 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Earley v. Murray,
    462 F.3d 147 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Edwards v. Balisok,
    520 U.S. 641 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Erdmann v. Stevens,
    458 F.2d 1205 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Gibson v. Berryhill,
    411 U.S. 564 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Greater New York Metropolitan Food Council v. McGuire,
    6 F.3d 75 (2d Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Heck v. Humphrey,
    512 U.S. 477 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Huffman v. Pursue, Ltd.,
    420 U.S. 592 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

Jenkins v. Haubert,
    179 F.3d 19 (2d  Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Jones v. Cunningham,
    371 U.S. 236, 9 L. Ed. 2d 285, 83 S. Ct. 373 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

Kowalski v. Tesner,
    543 U.S. 125 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Maleng v. Cook,
    490 U.S. 488, 104 L. Ed. 2d 540, 109 S. Ct. 1923 (1989) . . . . . . . . . . . . . . . . . . . . . . .  21

Matter of Dreher v. Goord,
    46 A.D.3d 1261, 848 N.Y.S.2d 758 (3rd Dept. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . .  22

    Matter of Garner v. New York State Department Of Correctional
    Services,
    2008 NY S 2008 N.Y. LEXIS 1051 (April 29, 2008) . . . . . . . . . . . . . . . . . . . . . . . passim

Matter of Grant v. Fischer,
    2007 NY Slip Op 52312U . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Matter of Quinones v. New York State Department of Correctional Services,
    46 A.D.3d 1268, 848 N.Y.S.2d 757 (3rd Dept. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Middlesex County Ethics Committee v. Garden State Bar Association,
    457 U.S. 423 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

Moore v. Sims,
    442 U.S. 415 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Moore v. Vega,
    371 F.3d 110 (2d Cir. 2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Morano v. Dillon,
    746 F.2d 942 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Moses H. Cone v. Mercury,
    460 U.S. 1 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Murphy v. Travis,
    36 Fed. Appx. 679 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Ohio Civil Rights Commission v. Dayton Christian School, Inc.,
    477 U.S. 619 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

People v. Bloom,
    269 A.D.2d 838 (4th Dep't 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

People v. Boyer,
    36 A.D.3d 1084 (3rd Dep't 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

People v. Catu,
    4 N.Y.3d 242 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22

People v. Crump,
    302 A.D.2d 901 (4th Dep't 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

People v. Dale,
    19 A.D.3d 712 (2d Dep't 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

People v. Feng,
    15 A.D.3d 862  (4th Dept. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

People v.Hazen,
    308 A.D.2d 637 (3rd Dep't 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

People v. Hill,
    9 N.Y.3d 189 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 22

People v. Hill,
    39 A.D.3d 1 (1st Dep't 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v. Kin Kan,
    78 N.Y.2d 54 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

People v. Louree,
    8 N.Y.3d 541 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 22

People v. Lindsey,
    302 A.D.2d128 (3rd Dep't 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

People v. Lingle,
    No. 8143/06, 2006 N.Y. App. Div. LEXIS 13419 (1st Dep't Nov. 14, 2006) . . . . . . 10, 11

People v. Munck,
    4 A.D.3d 627 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

People v. Noble,
    37 A.D.3d 622 (2nd Dep't 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v. Sparber,
    2008 NY S 2008 N.Y. LEXIS 1053 (April 29, 2008) . . . . . . . . . . . . . . . . . . . . . . . passim

People v. Sparber,
    No. 9509, 2006 N.Y. App. Div. LEXIS 13267 (1st Dep't 2006) . . . . . . . . . . . . . . . . . 10

People v. Thomas,
    No. 9750, 2006 N.Y. App. Div. LEXIS 14489 (1st Dep't Dec. 7, 2006) . . . . . . . . 10, 11

People v. Thweatt,
    300 A.D.2d 1100 (4th Dep't 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

People v. Van Deusen,
    7 N.Y.3d 744 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22

People v. White,
    296 A.D.2d 867 (4th Dep't 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Peralta v. Vasquez,
    467 F.3d 98 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Preiser v. Rodriguez
    411 U.S. 475, 36 L. Ed. 2d 439, 93 S. Ct. 1827 (1973) . . . . . . . . . . . . . . . . . . . . . . 20, 21

Railroad Commission of Texas v. Pullman Co.,
    312 U.S. 496 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Samuels v. Mackell,
    401 U.S. 66 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Scanio v. United States,
    37 F.3d 858 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Trainor v. Hernandez,
    431 U.S. 434 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

University Club v. City of New York,
    842 F.2d 37 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Velez v. New York,
    941 F. Supp. 300 (EDNY 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Wallace v. Kato,
    127 S. Ct. 1091 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Younger v. Harris,
    401 U.S. 37 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-17

**Federal Statutes**
28 U.S.C.S. § 2244(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**State Statutes**
Correction Law §601-d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23
Criminal Procedure Law § 380.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24
Executive Law §259-i . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
NY Penal Law §70.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6
NY Penal Law §70.45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
NY Penal Law §70.85 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Article 70 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 9, 13
Article 78 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 13

**State Rules and Regulations**
9 N.Y.C.R.R. §8005.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## PRELIMINARY STATEMENT

Defendants Brian Fischer, Anthony J. Annucci, Lucien J. LeClaire, Jr., and Glenn S. Goord (collectively "defendants") submit this Memorandum of Law in Further Support of their application for abstention by this Court. Abstention is appropriate on grounds that ongoing New York State court proceedings at this time are resolving issues of paramount State interest which are raised by named plaintiffs and members of the putative plaintiff class in this action.[1] All relief that plaintiffs seek here can be obtained in State court proceedings. Plaintiffs' issues here arise out of the same issues litigated there – whether procedural errors were committed in sentencing courts when those courts may not have expressly stated that a period of post-release supervision ("PRS") was a mandatory portion of every sentence that included a determinate term. The State courts are in the process of correcting the errors for all plaintiffs herein, and the myriad ongoing State court proceedings compel abstention:

- First, for each plaintiff, there is a resentencing proceeding (now mandated by legislation signed into law by Governor Paterson on June 30, 2008[2]), either commenced or to be commenced. Plaintiffs and the putative plaintiff class, **_all_** – without exception – must be referred to their sentencing courts to have PRS errors corrected where those errors were committed. The sentencing courts are the **_only_** courts where the errors can be corrected. Neither this federal Court, nor any New York State Article 78 or Article 70 court is capable of resolving PRS issues with any finality. The sentencing courts themselves must correct the errors, as any criminal sentence of any plaintiff herein

---

[1] Plaintiff Wesley Gabriel has been withdrawn as a named plaintiff, and dropped from the caption; plaintiffs Lawrence Hardy and Ramone Cross have been added as named plaintiffs to the First Amended Complaint. The plaintiff class is defined inaccurately in the First Amended Complaint as convicted felons "whose judicially imposed sentence(s) did not include a term of PRS [post-release supervision], but" who "have been, or will be, subjected to PRS and/or incarcerated after the maximum expiration date of their determinate sentence(s)." A more careful definition of the class would explain that whatever "judicially imposed sentence" was meted out, is illegal because it did not contain a period of PRS.

[2] On June 30, 2008, Governor Paterson signed into law Senate Bill Number 8714, which passed the Assembly unanimously, and the Senate with only one dissenting vote on June 25, 2008. The Bill (and its supporting memorandum and revised summary) is attached to the Declaration of Michael J. Keane ("Keane Dec.") dated July 7, 2008 as Exhibit A.

which does not contain a term of PRS as mandated by the Legislature is an illegal sentence.[3]  That the entire plaintiff class must be referred to their sentencing courts for possible resentencing is now more than simply the logical application of the decisions of the Court of Appeals in Matter of Garner v. New York State Dept. Of Correctional Services, 2008 NY Slip Op 03947, 2008 N.Y. LEXIS 1051 (April 29, 2008) and a group of cases combined under People v. Sparber, 2008 NY Slip Op 3946, 2008 N.Y. LEXIS 1053  (April 29, 2008).  The June 30, 2008 legislation requires the New York State Department of Correctional Services ("DOCS") or the New York State Division of Parole ("Parole") to refer all named plaintiffs and all members of the putative plaintiff class to their sentencing courts so that the criminal courts may consider them for resentencing.[4]  Many resentencing proceedings have commenced, some have been concluded, and many more, ultimately to number in the thousands, will be commenced pursuant to statute and the Post-release Supervision Resentencing Initiatives of DOCS and Parole.

● Second, there are pending for numerous members of the plaintiff class State court Article 70 and Article 78 proceedings challenging enforcement of PRS by DOCS or Parole, as well as motions in the sentencing courts challenging PRS sentences pursuant to provisions of Criminal Procedure Law 440 and even money damages actions against the State in the Court of Claims arising out of State agencies' calculation of PRS into the sentences of members of the putative class.  Not only are these State court actions now pending in the trial courts or on appeal, but also many have been concluded and must be renewed, based upon the changes in the State law enunciated in  Garner and Sparber.  Many more such proceedings, motions, actions and claims are likely to be brought by

_____

[3]  Indeed, even Earley v. Murray, 451 F. 3d 71, rearg. denied 462 F. 3d 147 (2d Cir. 2006), so emphasized in plaintiffs' argument, recognized that resort to the State sentencing court was required before the issues before the federal court could be decided.

[4]  The relief plaintiffs seek here, particularly their application for preliminary injunctive relief, would nullify the June 30 legislation by replacing – overriding – the State statutory remedy and subverting the resentencing initiatives pursued by the State of New York, DOCS, Parole, the Office of Court Administration and District Attorneys throughout the State.

members of the putative class in the State courts.[5]

      ● Third, there is pending a State court declaratory judgment defendant class action in which the State, DOCS and Parole are plaintiffs, which seeks in the Albany County Supreme Court a declaration of the respective rights of criminal defendants and the citizens and agencies of the State on issues related to PRS resentencing.[6]  This lawsuit entertained argument and testimony on PRS issues in a hearing on plaintiff's application for a preliminary injunction on June 20, 2008.  The rights of DOCS and Parole and the State and the criminal defendants mandated to be subject to PRS, including all of the plaintiffs herein, are at issue in the declaratory judgment action.[7]

      The pending proceedings in the courts of the State of New York involve every named and putative plaintiff in this class action, and the proceedings are sufficiently numerous and of such gravity to warrant abstention.  This Court should defer to the New York State courts and permit the parties concerned to resolve PRS problems as the judicial, executive and legislative branches of the State government – including the Court of Appeals, the Legislature, several State agencies and the Office of Court Administration – have devised.  Plaintiffs herein should simply give the system a chance to work.  Defendants in this lawsuit, like the plaintiffs in the Albany Supreme Court declaratory judgment defendants' class action seek "to mend, not end" PRS: PRS protects the citizens of the State of New York, and provides vital support for plaintiffs in this action as they seek to transition successfully back into the community.  Those dual goals are best achieved if the

---

     [5]  The relief plaintiffs seek in this putative class action lawsuit would nullify the pending State litigation, frustrate the correction of errors made in past litigation and impede future litigation on PRS issues.

     [6]  Because the June 30 legislation encompassed what the State of New York, DOCS and Parole (plaintiffs in a declaratory judgment defendant class action in the Supreme Court of the State of New York, County of Albany) were seeking through an application to the Albany County Court for a preliminary injunction, plaintiffs therein are withdrawing the pending application for preliminary injunctive relief.

     [7]  The relief plaintiffs seek in this putative class action lawsuit would impede the declaratory judgment litigation and subvert the resentencing initiatives pursued by the State of New York, DOCS, Parole, the Office of Court Administration and District Attorneys throughout the State.

federal courts abstain from determining issues arising out of State court resentencings.

## FACTS

PRS is a mandatory part of the criminal sentences of the named and putative class of plaintiffs herein, who were sentenced to determinate sentences for certain felonies (many violent felonies) after "Jenna's Law" was enacted on September 1, 1998. See NY Penal Law §70.45.[8] For almost ten years, sentencing practices by criminal sentencing courts, prosecuting district attorneys, the defense bar, court administrators and clerks, and state, county and city agencies, concurred in the judgment of the New York State Court of Appeals that PRS was a direct consequence of a criminal conviction as it had a "definite, immediate and largely automatic effect on [a] defendant's punishment." See People v. Catu, 4 N.Y.3d 242 (2005); see also People v. Van Deusen, 7 N.Y.3d 744 (2006) (PRS "is a direct consequence of ... a determinate sentence"); People v. Louree, 8 N.Y.3d 541 (2007) (PRS is a *component* of a determinate sentence); People v. Hill, 9 N.Y.3d 189 (2007) (PRS is a direct consequence of pleading guilty, and any defect is "in the plea itself, and not in the resulting sentence.") Through November of 2007, when the Court of Appeals decided Hill, the State's highest court – the ultimate authority on state sentencing law[9] – characterized the errors in

---

[8] On August 6, 1998, the New York State Legislature enacted "Jenna's Law," which ended indeterminate sentences for criminal defendants convicted of violent felonies. See NY Penal Law §70.02. Jenna's Law was named for Jenna Grieshaber, a twenty-two-year-old nursing student who was murdered by a violent felon released from prison after serving only two-thirds of his sentence. The law also created a schedule of mandatory terms of PRS to be included as a part of the sentences of violent felony offenders. See NY Penal Law §70.45. Until recently, all New York State prison sentences were "indeterminate" - the sentences ran between a certain minimum and maximum amount of time set by the court at the time of sentencing. Beginning with the Sentencing Reform Act of 1995, the Legislature has established determinate sentences for repeat offenders convicted of violent felonies, first-time violent felony offenders, drug offenders, and sex offenders. Determinate sentences have no minimum sentence. Instead, the inmate is ineligible for Parole and must serve at least 6/7 of the determinate term before he or she can be eligible for release.

[9] State courts, not federal are the sentencing authorities. In the federal habeas corpus context, for example, "federal courts must defer to state court determinations on issues of state procedural law." Merriweather v. Mitchell, 1993 U.S. Dist. LEXIS 5213, *3 (S.D.N.Y. Apr. 21, 1993) (citing Maula v. Freckleton, 972 F.2d 27, 28 (2d Cir. 1992)). The Second Circuit itself has held that "[i]n determining whether a petitioner was entitled to a defense under state law,

the sentencing courts as affecting pleas, and not the resulting sentences to the mandatory PRS components.

DOCS concurred in that prevailing view until <u>Garner</u> and <u>Sparber</u>, as did the Legal Aid Society of New York (and, upon information and belief, the entire defense bar) for at least eight years after the enactment of Jenna's Law. Indeed, Legal Aid, which represented thousands of defendants at criminal sentencings, did not raise objections at the pleas or sentencings of their clients where the sentencing court failed to orally pronounce mandatory PRS. Moreover, Legal Aid had circulated, in August of 1998, a memorandum to its criminal defense attorneys informing them of the PRS provisions of Jenna's Law, obviously intending that criminal defendants be advised to expect the mandatory PRS terms as part of their determinate sentences. <u>See</u> Memorandum of August 1998 attached to Keane Dec. as Ex. B. Apparently, all parties to criminal sentencings for at least eight years after 1998 believed that PRS was "automatic" and was definitely incorporated

---

federal courts must of course defer to state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional." <u>Davis v. Strack</u>, 270 F.3d 111 (2d Cir. 2001) . The State courts for years concurred in DOCS' practice of calculating PRS into sentences (<u>see</u> <u>Garner v. NY State Dept. Of Correctional Services</u>, 39 A.D.3d 1019 (3rd Dep't 2007) (as DOCS was "only enforcing, not imposing, a part of petitioner's sentence which was automatically included by statute, they have not performed any judicial function, making prohibition an unavailable remedy"); <u>People v. Boyer</u>, 36 A.D.3d 1084 (3rd Dep't 2007); <u>People v. Feng</u>, 15 A.D.3d 862 (4th Dept. 2005) ("there is no need for the court to specify a period of postrelease supervision at sentencing"), <u>lv. denied</u> 5 N.Y. 809 (2005); <u>People v. Dale</u>, 19 A.D.3d 712 (2d Dep't 2005) ("the failure of the County Court to specify the term of post-release supervision at the time of sentence does not warrant vacatur of the plea"); <u>Deal v. Goord</u>, 8 A.D.3d 769, 770 (3rd Dep't 2004) ("[s]ince respondents are enforcing a statutorily-required part of petitioner's sentence, they have not performed any judicial function, making prohibition an unavailable remedy"), <u>lv. denied</u> 3 N.Y.3d 737 (2004) ("[a]ppeal dismissed without costs, by the Court sua sponte, upon the ground that no substantial constitutional question is directly involved"); <u>People v. White</u>, 296 A.D.2d 867 (4th Dep't 2002) ("[p]ostrelease supervision is mandatory for determinate sentences and is automatically included in the sentence"), <u>lv. denied</u> 99 N.Y.2d 540 (2002); <u>People v. Bloom</u>, 269 A.D.2d 838 (4th Dep't 2000), <u>lv. denied</u> 94 N.Y.2d 945 (2000); <u>People v. Crump</u>, 302 A.D.2d 901 (4th Dep't 2003) <u>lv. denied</u> 100 N.Y.2d 537 (2003); <u>People v. Thweatt</u>, 300 A.D.2d 1100 (4th Dep't 2002); <u>People v. Lindsey</u>, 302 A.D.2d128, 129 (3rd Dep't 2003), <u>lv. denied</u>, 100 N.Y.2d 583 (2003); <u>People v. Munck</u>, 4 A.D.3d 627, 628-69 (2004); and <u>People v.Hazen</u>, 308 A.D.2d 637, 637-638 (3rd Dep't 2003)).

into a sentence by operation of law.

Beginning in 1998, therefore, DOCS, in compliance with Penal Law § 70.45, calculated PRS as mandated by statute into certain inmates' sentences when those inmates were received into DOCS custody.[10]  When an inmate, sentenced to a determinate sentence as a violent felony offender under Penal Law §§70.02, 70.70, or 70.80, was received into DOCS custody, DOCS would calculate the inmate's maximum expiration date, including the PRS component of the sentence, by applying the mandates of Penal Law §70.45 to the information on the inmate's sentence and commitment order. When inmates were received by DOCS, they came with only their presentence report, sentence and commitment sheet, and rap sheet; while the minutes of their sentencing proceedings were required by the Criminal Procedure Law to be sent to DOCS, the minutes were not consistently forwarded to DOCS.  Based upon the applicable law and the universal practice in the criminal justice system, DOCS calculated the length of an inmate's sentence, and calculated the time that an inmate was to serve under PRS after release.[11]

After inmates subject to mandatory PRS are released from DOCS, Parole is charged with supervising the released individuals.  PRS serves in part to facilitate an incarcerated individual's readjustment to the community and is an integral part of the transition from prison to liberty.  PRS was formulated by criminal justice experts and policymakers in part to ensure that incarcerated inmates are not suddenly and precipitously released into the community after periods of incarceration.  As the criminal justice system has, since the 1950s, moved away from promoting sentencing discretion (as advocated by the Model Penal Code) to imposing determinate sentences,

_____

[10]  Defense counsel for criminal defendants did not challenge this practice until some time in 2006, even though an earlier challenge in 2005, in <u>Catu</u>, was to the voluntariness of a plea.

[11]  Certain inmates serving determinate sentences were granted conditional release after serving six sevenths of their sentences.  These inmates have been released to Parole supervision in which their PRS terms run concurrently with the unexpired fractions of their sentences as long as they do not incur any sustained declarations of delinquency (violations of the terms and conditions of their parole).

so too has discretion to release on parole been limited, and determinacy has been imposed on parole terms as well.  <u>See</u> Affirmation of Anthony J. Annucci, dated June 4, 2008, attached to Keane Dec. as Ex.C, ¶¶ 20-27.  The transitional period from prison to the street is vitally important for public safety.  As Denise O'Donnell, the Commissioner of the New York State Division of Criminal Justice Services ("DCJS") and Chair of the New York State Commission on Sentencing Reform, testified at a hearing in Albany Supreme Court on June 20, 2008, "[after 1995] when New York moved from a purely indeterminate sentencing structure to a partially determinate sentencing structure," the State effectively abolished "'parole as we knew it'" for certain violent felony offenders.  Thus, the legislature "recognized with the passage of Jenna's Law in 1998," that with any determinate sentencing scheme, "it was imperative that [the Legislature] impose a period of post-release supervision in the community afterwards." <u>See</u> Transcript of June 20, 2008 Preliminary Injunction Hearing, at p. 40, attached to Keane Dec. as Ex. D.  The policy of the State of New York is to ensure, for obvious reasons of public safety, that violent felons are not returned to the community unsupervised.  <u>Id.</u>, at p. 42.

Legal Aid itself has recognized the importance of transitional services like PRS.  In a class action complaint filed in the United States District Court for the Southern District of New York, Legal Aid has asserted that parole "is intended to support prisoners' successful reintegration into their home community while at the same time protecting community safety." <u>See</u> <u>Messiah S., et al. v. Alexander</u>, 07-CV-1327 (MGC) (FM), Class Action Complaint, at 1, attached to Keane Dec. As Ex. E.  Moreover, Legal Aid expresses concern over the "revolving door" of recidivism that is exacerbated by the "abrupt and unprepared entry into parole supervision," and thus must have even graver concerns over the abrupt and unprepared entry into the community where no opportunity for parole supervision exists.  In spite of their support of PRS, and in apparent resistance (like the plaintiffs' resistance herein) to the State's resentencing initiatives, Legal Aid has been seeking the commutation of sentences, seeking to have courts "excise" PRS from sentences or to have courts declare PRS a "nullity."  Nevertheless, it is the policy of the State of New York, as well as the record

(although contradictory) of Legal Aid to advocate for PRS. Public safety and uniformity in sentencing require that the Legislative mandate be carried out and that PRS be corrected as part of the terms of the criminal sentences of plaintiffs herein.

The adjustment from prison to the street is difficult. During the course of their PRS, certain plaintiffs were found to have violated the terms of their supervision. Upon such violations, Parole issued warrants for the detention of the offending parolees and conducted a parole revocation hearing process pursuant to Executive Law§ 259-i. Upon the completion of the parole violation hearing process, whenever any parole violation charges were sustained, some parolees were returned to DOCS custody for a certain duration of time determined by Parole pursuant to 9 N.Y.C.R.R. §8005.20. Other parolees were released again to continued supervision by Parole. See Tracy Aff., attached to Keane Dec. as Ex. F, at ¶¶ 12-19. The record indicates that recidivism rates are greatest in the first three years of PRS (most occurring in the first year), and that after that point, the rates decline dramatically. See Annucci Aff., Keane Dec., Ex. C. See also Testimony of Denise O'Donnell, Keane Dec., Ex. D, at pp. 68-69. The State therefore has a vital, paramount interest in resentencing so that PRS supervision is not severed from the sentences of releasees.

Returning plaintiffs to the sentencing courts to correct sentencing errors is now the clear mandate of the State courts and Legislature. This lawsuit should not stand in the way. In Garner, even though the Court of Appeals reversed its view that PRS was "largely automatic," and held that DOCS could be prohibited from administratively calculating a period of mandatory PRS into an individual's sentence unless pronounced by the sentencing judge, the Court noted that its holding was "without prejudice to any ability that either the People or DOCS may have to seek the appropriate re-sentencing of a defendant in the proper forum." Id. at **8, n. 4. The State court has made clear that the State should not be prejudiced in resentencing. The relief plaintiffs seek herein and by way of injunction would interfere with the resentencing initiatives.

Plaintiffs herein, in fact, are not – either on their own or with the aid of their counsel – seeking relief in their sentencing courts. Instead, they merely seek a declaration from this Court that

PRS does not apply to them, and thus an injunction against DOCS requiring DOCS, in contravention of the June 30, 2008 legislation, to remove PRS from calculations of plaintiffs' sentences. Plaintiffs ask this Court to craft an injunction that will effectively nullify the New York State Legislature's attempt to implement a solution to the present crisis. Indeed, the very purpose of the legislation is to create "a framework for a prompt, fair, and careful response to recent decisions in which the Court of Appeals struck down longstanding practices for determining the supervision terms of violent felons." See Keane Dec., Ex. A, at 1. Instead, relying on Earley v. Murray,[12] which, given the developments in New York State decisional and statutory law, is of questionable application here,[13] plaintiffs argue that mandatory PRS violates their due process rights.

But no due process rights are violated where the State of New York provides plaintiffs with processes through which to challenge their mandatory PRS. Plaintiffs herein have all the due process they could ask for: for example, they may return to their sentencing courts, they may file Article 70 or 78 proceedings, and they may appeal any rulings they believe adverse to their interests. This is process that the federal habeas corpus petitioner in Earley did not have available to him when his petition was finally decided in the federal court.[14] At that time, the New York State Court of

---

[12] Eight years after the passage of Jenna's Law, in Earley v. Murray, 451 F.3d 71, rearg. denied 462 F.3d 147 (2nd Cir. 2006), the United States Court of Appeals for the Second Circuit ruled in a federal habeas corpus proceeding that, regardless of Penal Law §70.45, "[t]he only cognizable sentence is the one imposed by the judge." Therefore, the Court stated, "[t]he additional provision for post-release supervision added by DOCS is a nullity." Earley, 451 F.3d, at 76. The Court of Appeals did not declare PRS a nullity in Garner or Sparber.

[13] Earley v. Murray did not establish the unconstitutionality of PRS and, in any event, is not controlling precedent in the New York State courts (see People v. Kin Kan, 78 N.Y.2d 54, 60 (1991) (holding that the interpretation of federal constitutional law by a lower federal court is persuasive, but not binding authority on New York courts)).

[14] Even after Earley, and before Garner and Sparber, courts in New York denied challenges to post-release supervision, reaffirming that post-release supervision is imposed automatically by operation of law, thus emphasizing that no clear legal right exists for the relief petitioner seeks. See People v. Thomas, No. 9750, 2006 N.Y. App. Div. LEXIS 14489, at *1 (1st Dep't Dec. 7, 2006); People v. Lingle, No. 8143/06, 2006 N.Y. App. Div. LEXIS 13419 at *1 (1st Dep't Nov. 14, 2006); and People v. Sparber, No. 9509, 2006 N.Y. App. Div. LEXIS 13267, at *1 (1st Dep't 2006).

Appeals had not decided Garner and Sparber, which clearly grant relief in the form of resort to the

sentencing courts to correct errors consisting of the failure to pronounce a term of mandatory PRS.

The Court of Appeals decisions would compel a different result were Earley decided today.  On

remand from the Second Circuit, in fact, the District Court recognized the axiomatic principle that

the federal courts must defer to the state courts on matters of state sentencing law; Judge Korman

noted that the state courts were in the best position to resolve the sentencing issues the Second

Circuit identified.[15]     And the Second Circuit recognized that resentencing was appropriate for the

petitioner in Earley.  See Earley v. Murray, 451 F.3d 71, at 76 (2nd Cir. 2006), rearg. denied 462 F.3d

147, ("when DOCS discovered the oversight made by Earley's sentencing judge, the proper course

would have been to inform the state of the problem . . . [t]he state then could have moved to correct

---

[15]  New York State courts interpreted the Earley ruling in different ways. Some trial
courts followed the Appellate Division, Second Department, which held that where, "[n]either
the sentencing minutes, nor the court's order of commitment, mentioned the imposition of any
period of post-release supervision . . ., the sentence actually imposed by the court never included,
and does not now include, any period of post-release supervision." People v. Noble, 37 A.D.3d
622 (2nd Dep't 2007).  Other courts followed the guidance of the Appellate Division, First
Department, which drew a distinction between first-time and predicate felony offenders, ruling
that DOCS was barred from administratively imposing PRS on first-time violent felony
offenders.  See People v. Hill, 39 A.D.3d 1 (1st Dep't 2007).  Others continued to follow
pre-Earley Third and Fourth Department precedents holding that there was no need for the
sentencing court to expressly impose PRS.  See Matter of Grant v. Fischer, 2007 NY Slip Op
52312U (Sup. Ct. Albany Cty. December 5, 2007).  In two post-Earley decisions, the New York
State Court of Appeals once again signaled  that PRS was imposed by operation of law.  In
People v. Louree, 8 N.Y.3d 541 (2007), and in People v. Hill, 9 N.Y.3d 189 (2007), the Court
held that the criminal courts were required to inform defendants that their sentences would
include PRS prior to accepting the defendants' guilty pleas.  The Court ruled that the sole remedy
for failing to so advise a defendant was vacatur of the guilty plea because, "the constitutional
defect lies in the plea itself and not in the resulting sentence, [and thus] vacatur of the plea is the
remedy for a Catu error since it returns a defendant to his or her status before the constitutional
infirmity occurred."  Hill, at 191.  Nowhere has the Court of Appeals suggested that mandatory
PRS is a nullity if not pronounced by a sentencing court or that the technical failure of the
sentencing court to impose mandatory PRS at sentencing cannot be remedied through
resentencing.  DOCS understood the Court of Appeals and Appellate Division precedents to
mean that Penal Law §70.45 required the automatic imposition of PRS and thus there would be
no "Earley" problem as long as the defendant's guilty plea was knowing.

the sentence through a judicial proceeding, in the defendant's presence, before a court of competent jurisdiction"). The constitutional principle announced in Earley applies only where a criminal defendant is denied process in the state courts, and plaintiffs herein cannot claim to have been denied due process. If the petitioner in Earley were to file his petition in federal court today, his petition would have to be dismissed in light of Garner and Sparber, since he would be compelled to return to his sentencing court and thereafter exhaust his appeals were he not satisfied with resentencing. Earley, therefore, cannot stand for any right to have terms of mandatory PRS calculated out of their sentences until they exhaust the process available through remedies in the State courts. Their claims are unexhausted, both for claims seeking injunctive relief and for claims seeking money damages. Plaintiffs should not obtain any relief herein without exhausting state remedies, including resentencing.

Plaintiffs herein, by pursuing this action in federal court, seek to have this Court help them avoid resentencing, the very consequence of ongoing litigation in the State sentencing and other courts. Plaintiffs have no clear right to a sentence without mandatory PRS. In Sparber, the Court of Appeals ruled explicitly that a determinate sentence must include PRS, rejecting the notion that the defendants were entitled to retain their determinate terms without the required periods of PRS.[16] The Court of Appeals' decisions in Garner and Sparber have not called into question the fundamental point that certain convicted felons are required by law to have mandatory PRS imposed upon them. Attempts to avoid the corrective pronouncement of the PRS portion of their criminal sentences by demanding immediate and unconditional release frustrates the the direction the Court

---

[16] While every plaintiff herein has a PRS problem, each case will present different circumstances to the sentencing court, as the Court of Appeals held in the different cases consolidated in Sparber. If the defendant specifically declined giving back a plea, as in Sparber, or if the defendant was advised of PRS at plea, as in Thomas, the Court of Appeals ruled the failure to address PRS at sentencing constituted nothing more than a procedural error which the sentencing court could remedy easily by returning the defendant before it for pronouncement of the required PRS. When the sentence follows conviction at trial, as in Lingle, Rodriguez and Ware, the issue is simpler because there are no Catu considerations: "The sole remedy for a procedural error such as this is to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement." See Sparber.

of Appeals made clear in <u>Sparber</u>, that ten years of sentencing errors should not be remedied by "striking PRS from the sentences as urged by defendants." <u>Sparber</u>, at **6. It is clear "these matters must be remitted to Supreme Court for resentencing and the proper judicial pronouncement of the relevant PRS terms." <u>Sparber</u>, at **6. The June 30, 2008 Legislation reinforces that clear direction by mandating all plaintiffs herein to return to their sentencing courts. The State's aims to effect comprehensive, uniform resentencing initiatives should not be frustrated by parallel federal litigation. This Court should abstain, and dismiss the amended complaint in this action.

<u>**ARGUMENT**</u>

**POINT I**

**THIS COURT SHOULD ABSTAIN FROM DECIDING THIS CASE
<u>UNDER APPLICABLE DOCTRINES OF ABSTENTION</u>**

A.      ***<u>Younger</u> Abstention Applies To Require Dismissal of This Action***

The United States Supreme Court has held that federal courts should refrain from interfering with pending state court proceedings, even where federal constitutional rights may be implicated. <u>See</u> <u>Younger v. Harris</u>, 401 U.S. 37 (1971). Abstention is warranted as a matter of comity where ongoing state proceedings give rise to a strong state interest in their outcome, and where the state court action provides the party asserting a federal right an opportunity to vindicate that right. Comity extends to "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." <u>Id.</u>, at 44. Abstention under <u>Younger</u> applies to federal actions raising issues that are also raised not only in pending state criminal, but also in pending state civil and administrative proceedings. <u>See</u> <u>Middlesex County Ethics Committee v. Garden State Bar Association</u>, 457 U.S. 423, 432 (1982) ("[t]he policies underlying <u>Younger</u> are fully applicable to noncriminal proceedings when important state issues are involved"); and <u>Doe v. Connecticut</u>, 75 F.3d 81, 85 (2d Cir. 1996) ( "<u>Younger</u> involved a criminal judicial proceeding, but

subsequent decisions have made clear that the same concerns of federalism and comity warrant abstention where state administrative disciplinary proceedings (like the one at issue here) are ongoing"). See also Kowalski v. Tesner, 543 U.S. 125 (2004); and Batts v. Artuz, 254 Fed. Appx. 855 (2d Cir. 2007). In this case, all putative plaintiffs have pending or will face future criminal proceedings addressing their possible resentencings. Abstention in this case will permit those proceedings to run their course.

The federal courts in this Circuit have approved of abstention when federal actions have been filed as challenges to sentencing proceedings. See Morano v. Dillon, 746 F. 2d 942 (2d Cir. 1984). More than an exhaustion requirement, Younger requires allowing a state court proceeding to go forward without interference from a federal court. See Huffman v. Pursue, Ltd., 420 U.S. 592, 600-601, 608 (1975) (there ha[s] also long existed a strong judicial policy against federal interference with state criminal proceedings . . . this judicial policy is based in part on the traditional doctrine that a court of equity should stay its hand when a movant has an adequate remedy at law, and that it particularly should not act to restrain a criminal prosecution) (internal citations and quotations omitted) . Even if the constitutional issue that is the subject of the federal proceeding is not the direct subject of a state court proceeding, or if the plaintiff in the federal action may not be vindicated on the particular constitutional claim raised in federal court, the federal action is not rendered viable when parallel state court proceedings are ongoing. See Ohio Civil Rights Comm'n v. Dayton Christian School, Inc., 477 U.S. 619, 629 (1986). Plaintiffs and the putative class of plaintiffs in this action seek to have this Court declare what their State court criminal sentences were (or are, or should be), which declaration would amount to a federal collateral review of State sentencing courts at the same time that those State sentencing courts are entertaining resentencing proceedings to correct procedural errors.[17] This case presents a classic model for application of

---

[17] It should be noted that the principles of comity and federalism in a federal declaratory judgment action are applicable to parallel litigations concerning the June 30 State legislation that dictates consideration of resentencings for plaintiffs and the putative class of plaintiffs. See Samuels v. Mackell, 401 U.S. 66 (1971).

<u>Younger</u> abstention.

In addition, even if resentencing proceedings in the State courts were not and would not be ongoing, numerous members of the putative plaintiff class have filed proceedings that are ongoing in State courts, through CPLR Article 70 and Article 78 (challenging their custody or supervision pursuant to the PRS terms of their sentences) as well as through CPL 440 (challenging the PRS terms of their sentences) and even through the Court of Claims Act (seeking money damages arising out the PRS terms of their sentences).    Indeed, these noncriminal proceedings, like those in <u>Middlesex County</u>, "bear a close relationship to proceedings criminal in nature," which help demonstrate the "importance of the state interest" in the State proceedings.  <u>See</u> <u>Middlesex County</u>, 457 U.S. 423 at 437-38.  <u>See</u> <u>also</u> <u>Moore v. Sims</u>, 442 U.S. 415, 423, 426 (1979); and <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 604-605 (1975).  In addition, the State itself has filed a declaratory judgment action against a defendant class of inmates and parolees who are subject to PRS, and that action is ongoing in the State Supreme Court and will affect the rights of the citizens of the State, State agencies, and the defendant class, which includes as a subset the named plaintiffs and the putative plaintiff class herein.  The ongoing State court proceedings – even apart from those in the sentencing courts – amount to independent bases for application of the <u>Younger</u> abstention doctrine.


The principles of <u>Younger</u> abstention apply to suits for injunctive relief.[18]  <u>See</u> <u>Samuels v. Mackell</u>, 401 U.S. 66 (1971); <u>Tex. Ass'n of Bus. v. Earle</u>, 388 F.3d 515 (5th Cir. 2004); <u>Moore v. Sims</u>, 442 U.S. 415, 425 (U.S. 1979) ("Under established principles of equity, the exercise of equitable powers is inappropriate if there is an adequate remedy at law.")  Indeed, "The seriousness of federal judicial interference with state civil functions has long been recognized by this Court. We have consistently required that when federal courts are confronted with requests for such relief, they

---

[18]Also, "The Anti-Injunction Act, subject to some exceptions, prohibits injunctive relief that would interfere, directly or indirectly, with pending state proceedings, or that would prohibit use of results of a completed state proceeding." <u>Pathways, Inc. v. Dunne</u>, 329 F.3d 108, (2nd Cir. 2003); 28 U.S.C.S. §2283.

should abide by standards of restraint that go well beyond those of private equity jurisprudence." Moore, at 429.  Further, "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." Atlantic C. L. R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 297 (U.S. 1970). Younger and its progeny "espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Mirka United, Inc. v. Cuomo, 2007 WL 4225487 (S.D.N.Y. 2007).

All three prerequisites for Younger abstention are present in this case.  First, there are "ongoing" State proceedings.  See Younger; Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, at 433-34 (applying Younger to State non-criminal proceedings); see also Hicks v. Miranda, 422 U.S. 332, 349 (1975) (holding that the state proceedings do not need to be commenced prior to the filing of the federal complaint to satisfy Younger's requirements).  Second, the State has a substantial interest in the outcome of the State court proceedings, whether in the criminal courts or the civil courts.  The State has an interest in ensuring that its legislative mandates be carried out, and the salutary goals of promoting public safety through supervision of violent felons as well as achieving uniformity in sentencing cannot be seriously questioned.  And third, the State courts afford named plaintiffs and the putative plaintiff class an opportunity to vindicate the rights they raise herein as well.  In  Garner and Sparber, the Court of Appeals made clear that challenges to PRS may be brought in the State sentencing courts and through special proceedings. The Court of Appeals has removed any impediment to relief through the State courts that an individual aggrieved by mandatory PRS may have faced prior to Garner, Sparber, Hill and Louree. Plaintiffs thus have ample protections in State court and the federal due process issues implicated by Earley v. Murray are no longer applicable to the present controversy.  There is no evidence that the New York State Courts will not address plaintiffs in a fair manner.  Notions of comity and federalism compel the conclusion that the state courts are competent to hear and fully resolve plaintiffs' challenges to PRS, and "there is no reason to assume that .. [plaintiffs'] constitutional

rights will not be protected by the Appellate Division ..., or, if further review becomes necessary, by the New York Court of Appeals." Erdmann v. Stevens, 458 F. 2d 1205, 1211 (2d Cir. 1972).[19] Accordingly, this Court should abstain under Younger. See, e. g., University Club v. City of New York, 842 F. 2d 37, 40 (2d Cir. 1988) (where the three-part test is met, abstention is required).

Plaintiffs have not in any responsive papers made the argument that abstention in this case is not warranted because of defendants' alleged bad faith. The record fails to establish any bad faith exception to Younger abstention. The burden of establishing such an exception is on plaintiffs herein, the party seeking to avoid application of the abstention doctrine. See Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198-99 (2d Cir. 2002). For bad faith to exist, "the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome." Cullen, 18 F. 3d at 103. "To invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." Diamond "D", 282 F. 3d at 199.

Because abstention under Younger is appropriate here, this action should be dismissed. "Younger v. Harris contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." Gibson v. Berryhill, 411 U.S. 564, 577 (1973). "[W]hen Younger applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." Diamond "D", 282 F.3d at 197. Accordingly, Younger abstention should apply, and the case should be dismissed.

**B.    _Pullman_ Abstention Should Apply To Permit Dismissal Of This Action**

---

[19] Under Younger, a plaintiff subjected to a state court proceedings must exhaust all available state appellate remedies before resorting to federal court. Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975). The fact that a constitutional issue may not be the direct subject of a state court proceeding, or that a plaintiff may not be vindicated on the particular constitutional claim that he raises in federal court, does not provide a plaintiff with independent grounds to pursue a separate federal case: "it is sufficient under [Supreme Court precedent] that constitutional claims may be raised in state-court judicial review" of the state proceeding. Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, at 629. See also Trainor v. Hernandez, 431 U.S. 434 (1977) (constitutionality of state lien may be raised in state court proceeding).

Even if the Court determines that <u>Younger</u> abstention does not apply to dismiss this case, the Court should apply the <u>Pullman</u> abstention doctrine and require plaintiffs to litigate their claim in State court in the first instance in order to afford the State courts and opportunity to pass on questions of State law and the constitutionality of State legislation. Under the <u>Pullman</u> doctrine, a federal court may abstain from deciding a case "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." <u>Railroad Commission of Texas v. Pullman Co.</u>, 312 U.S. 496 (1941). The Supreme Court held that "[f]ederal courts should not adjudicate the Constitutionality of State enactments fairly open to interpretation until the State courts have been afforded a reasonable opportunity to pass on them." <u>Pullman</u> abstention may be invoked when, as here, the State law issues are potentially dispositive, the State law is unclear, and the disposition of the State law issues could avoid the constitutional question. In the Second Circuit, <u>Pullman</u> abstention may be appropriate when (1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible "to an interpretation by a state court that would avoid or modify the federal constitutional issue." <u>Greater New York Metro. Food Council v. McGuire</u>, 6 F.3d 75, 77 (2d Cir.1993). Here, as demonstrated in <u>Garner</u> and <u>Sparber</u>, the constitutional questions will be avoided if plaintiffs' claims are decided on the basis of State procedural law, which was clearly the case in the <u>Sparber</u> cases, but remains unclear, apparently, in this case, as plaintiffs attempt to pursue this action even though the Court of Appeals has ruled on the PRS issues, and the June 30, 2008 legislation has provided the procedural framework for resolving PRS issues.

This case satisfies all three requirements for <u>Pullman</u> abstention. Plaintiffs complain that the statutory mandates are unclear. Indeed, the new legislation is clear that resentencing is the answer, but the parties disagree and the statute of the State is at issue and best resolved in the State courts. And finally, the resolution by the State courts might avoid the constitutional issue, as did <u>Garner</u> and <u>Sparber</u> avoid the constitutional issues. This is not a case in which plaintiffs raise an arguable facial challenge to the State's statute. Instead, plaintiffs complain about the very fact of resentencing. <u>See</u>

Bad Frog Brewery, Inc. v. New York State Liquor Auth., 134 F.3d 87, 93-94 (2d Cir. 1998) (district courts must exercise caution before abstaining where a plaintiff has raised a facial constitutional challenge to a statute and the attendant delay would inhibit exercise of the First Amendment freedoms injured by the statute's existence).

The "paradigm case for abstention" arises when the challenged state statute is susceptible of "a construction by the state courts that would avoid or modify the [federal] constitutional question." Beavers v. Arkansas State Bd. of Dental Exam'rs, 151 F.3d 838 (8th Cir. 1998). Before the Garner and Sparber decisions were issued, defendants argued that the Court of Appeals could very well issue decisions that would make the instant litigation unnecessary and indeed that prediction has been borne out. The Court of Appeals ruled that "administratively imposed" PRS is a violation of State procedural law, thus this Court should defer to further State proceedings for a solution to the controversy.

Pullman abstention is warranted because the Court of Appeals decisions, and the subsequent State legislation, have made Constitutional adjudication unnecessary.

C.    **Abstention Under *Colorado River v. U.S.* Warrants Dismissal of this Action**

Notwithstanding Younger, the Supreme Court has held that abstention still may be appropriate in cases that do not fit neatly within the traditional abstention doctrines set forth above. See Colorado River v. U.S., 424 U.S. 800, 817-18 (1976); DeCisneros v. Younger, 871 F.2d 305, 307 (2d Cir.1989). Abstention under Colorado River applies where, as here, "state and federal courts exercise concurrent jurisdiction simultaneously." Burnett v. Physician's Online, Inc., 99 F.3d 72, 76 (2d Cir.1996). To determine the propriety of abstention under Colorado River, a district court is required to weigh six factors:

(1)    the assumption of jurisdiction by either court over any res or property;

(2)    the inconvenience of the federal forum;

(3)    the avoidance of piecemeal litigation;

(4)    the order in which jurisdiction was obtained;

(5)     whether state or federal law supplies the rule of decision; and

(6)     whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

See Burnett, 99 F.3d at 76.  No single factor is necessarily decisive, see DeCisneros, 871 F.2d at 307, and the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." Moses H. Cone v. Mercury, 460 U.S. 1, 16 (1983).  Review of these factors compels the conclusion that this Court should abstain from hearing this case under Colorado River, either by dismissing it or staying it pending the outcome of State court proceedings on the grounds that judicial economy is best served by avoiding piecemeal litigation, determinations of state law are required before reaching any federal issues, and state court proceedings more than adequately protect the rights of plaintiffs here.

After the Garner and Sparber decisions were issued, defendants voluntarily commenced a resentencing initiative.  The means and goals of that initiative have now been codified by the New York State Legislature.  Plaintiffs, in making their request for injunctive relief, are asking this Court to supersede the judgment of defendants and the authority of the Legislature.  Granting the plaintiffs injunctive relief would therefore "be disruptive of state efforts to establish coherent policy," and abstention may also be appropriate under Burford v. Sun Oil Co., 319 U.S. 315, 63 S. Ct. 1098, 87 L. Ed. 1424 (1943).  See Levy v. Lewis, 635 F.2d 960, 963 (2d Cir. 1980) ("in keeping with Burford's concern with noninterruption of state administrative programs, the federal courts have abstained in numerous areas where state regulation involved matters of substantial state concern and where state policies were carried out in a statutorily established regulatory program by state officials.")

## POINT II

## PLAINTIFFS' CLAIM IS NOT COGNIZABLE UNDER §1983

Even if the Court should refrain from abstaining in this action and dismissing the amended complaint on Younger, Pullman, Colorado River or Burford grounds, the action should be dismissed

on grounds that Heck v. Humphrey, 512 U.S. 477 (1994), requires that a "plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus," which plaintiffs cannot concededly demonstrate here.  Indeed, "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck, 512 U.S. at 486 – 487.  Because all plaintiffs must return to the sentencing courts, none of their sentences can be deemed to have been invalidated as required by Heck.  See also Wallace v. Kato, 127 S. Ct. 1091 (2007).[20]        The new legslation, as well as the mandates of Garner and Sparber establish even more obligations on the part of plaintiffs to exhaust their State remedies.  Clearly, plaintiffs' action is s not cognizable and should be dismissed.  Edwards v. Balisok, 520 U.S. 641, 649 (1997); See Heck, 512 U.S. at 481, 483.  The rationale (which plaintiffs do not even attempt to address) is that "prisoners [may not use] §1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of their confinement, and that punishments related to their term of imprisonment, or the procedures that led to them (if the procedural defect at issue was critical to the imposition of the punishment), must be attacked through a habeas petition." Peralta v. Vasquez, 467 F.3d 98 (2d Cir. 2006).

As defendants herein have argued in their original brief, any injunctive relief "tantamount to seeking relief from confinement" is barred by the Supreme Court's decision in Preiser v.

---

[20]  The Heck Court further that, "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." Heck, at 482 (quoting Preiser v. Rodriguez, 411 U.S. 475, 490, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973)).

Rodriguez. See 411 U.S. 475, 487-90, 500 (1973) (holding that a state prisoner challenging a state conviction or sentence, or the fact or duration of confinement and seeking immediate or speedier release, must do so by petition for writ of habeas corpus after exhausting state remedies); see also Jenkins v. Haubert, 179 F.3d 19, 24 (2d Cir. 1999); and Murphy v. Travis, 36 Fed. Appx. 679 (2d Cir. 2002).[21]

**POINT III**

**THIS LAWSUIT IS BARRED BY QUALIFIED IMMUNITY**

Additional bases for qualified immunity have arisen since defendants first briefed this application for the Court's abstention.  As the June 30, 2008 Legislation and its clarifying and explanatory memoranda and summaries indicate, the State of New York, its agencies, its courts, its administrators, its defense bar and even Legal Aid consistently viewed mandatory PRS as an automatically-imposed portion of a legal sentence.  A sentence without PRS was illegal after Jenna's Law, and it still is illegal until a resentencing proceeding pursuant to Penal Law § 70.85 pronounces such a sentence without PRS to be legal, upon consent of the relevant District Attorney.  Given the legislation, Garner, Sparber, and the ongoing uncertainty in the courts as to how best to effect uniform legal sentences that include mandatory PRS, qualified immunity for defendants herein must be granted.  See Anderson v. Creighton, 483 U.S. 635, 638 (1987) (holding that "permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigations will unduly inhibit officials in the discharge of

---

[21]  To the extent that plaintiffs herein are parolees and not inmates is immaterial.  A habeas petitioner need not be confined physically to satisfy the "in custody" requirement. Maleng v. Cook, 490 U.S. 488, 491 (1989)(per curiam).  Parole has long been held to constitute a restraint subject to this analysis. See Jones v. Cunningham, 371 U.S. 236, 242-43 (1963); Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994); DePompei v. Ohio Adult Parole Auth., 999 F.2d 138, 140 (6th Cir. 1993); Velez v. New York, 941 F. Supp. 300 (EDNY 1996) ("As Velez remains on parole for the burglary convictions, he is 'in custody' for those convictions under § 2254(a)"); see also Davis v. Cotov, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002); and Earley v. Murray, 451 F.3d 71, 75 (2d Cir. N.Y. 2006) ("Post-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody.'")

Case 1:08-cv-02460-SHS    Document 31    Filed 07/07/2008    Page 29 of 32

their duties," which in this case, means pursuing resentencing initiatives with the paramount interests of public safety in mind.  It cannot be argued persuasively  that defendants' actions here were or are inconsistent "with the rights they are alleged to have violated.."  Obviously, defendants have not violated any " 'clearly established' statutory or constitutional rights the existence of which a reasonable person would have known."  Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004) and it was at least reasonable for defendants to believe that no such clearly established case law prohibited their actions at the relevant times.'"  Id. (citing Anderson, 483 U.S. at 638).[22]  Therefore, relying on precedent from the New York State courts, defendants are entitled to qualified immunity.

## CONCLUSION

Defendants argued, pre-Garner and Sparber, that this Court should abstain.  In Garner and Sparber, the New York State Court of Appeals ruled that the "administrative" imposition of PRS is a violation of State procedural law.  The New York State Legislature has subsequently acted to

---

[22]  It was reasonable for defendants to have understood that the New York State Court of Appeals repeatedly held that postrelease supervision is a direct consequence of a criminal conviction as it has a "definite, immediate and largely automatic effect on [a] defendant's punishment."  See People v. Catu, 4 N.Y.3d 242 (2005); People v. Van Deusen, 7 N.Y.3d 744 (2006); People v. Louree, 8 N.Y.3d 541 (2007); People v. Hill, 9 N.Y.3d 189 (2007).  In both Catu and Hill the defendants' sentencing courts were silent regarding postrelease supervision and so DOCS calculated the terms of postrelease by following Penal Law §70.45.  Indeed, up until December 2007, caselaw in the Third Department held that when a defendant was "sentenced to a determinate sentence for his commission of a violent felony . . . 'a period of postrelease supervision [was] automatically included' in his sentence by statute.  Matter of Deal v Goord (8 A.D.3d 769, 778 N.Y.S.2d 319 [2004], appeal dismissed 3 N.Y.3d 737, 820 N.E.2d 293, 786 N.Y.S.2d 814 [2004]) (internal citations omitted); Matter of Garner v. New York State Dept. of Correctional Servs., 39 A.D.3d 1019, 831 N.Y.S.2d 923 (3rd Dept. 2007) ("respondents are only enforcing, not imposing, a part of petitioner's sentence which was automatically included by statute").  Therefore, since DOCS was merely  "enforcing a statutorily-required part of petitioner's sentence, they ha[d] not performed any judicial function, making prohibition an unavailable remedy."  Id.  Garner and Deal were not overturned by the Third Department until December 27, 2007.  See Matter of Quinones v. New York State Dept. of Correctional Servs., 46 A.D.3d 1268, 848 N.Y.S.2d 757 (3rd Dept. 2007); and Matter of Dreher v. Goord, 46 A.D.3d 1261, 848 N.Y.S.2d 758 (3rd Dept. 2007).

remedy the conflict between Penal Law § 70.45 and Criminal Procedure Law § 380.20.  Therefore there is no need for this Court to inquire into whether the plaintiffs' constitutional rights have been violated, as the New York State Court of Appeals has already ruled that their state procedureal rights have been violated.   Further, the Legislature has now codified the remedial procedure that defendants had voluntarily commenced post-Garner and Sparber, namely, referring all of the individuals with defective terms of PRS back to their sentencing courts for further proceedings.  Plaintiffs have already threatened that this procedure will expose defendants to additional liability, and thus they have effectively conceded that the function of the instant lawsuit is to interfere with the State's ability to conduct further criminal proceedings (the resentencings of the members of plaintiff class).  See Email from Matthew D. Brinckerhoff, dated June 4, 2008 ("Should defendants go through with this plan, as you said they intended to do, we believe that this will expose defendants to additional liability and damages"), attached to Keane Dec. as Ex G.

The Legislature has amended the Criminal Procedure Law, the Penal Law, the Correction Law, and the County Law in order to create an orderly procedure for remedying the current crisis.  Penal Law §70.45 has been amended to strike the words "also includes, as a part thereof," which is the language that created the current controversy, and has replaced it with language that requires sentencing Courts to orally impose the required periods of PRS.

The Correction Law has been amended to add a new section, §601-d, which requires DOCS and Parole to identify an individual as a "designated person," when they become aware that the individual's commitment order does not mention any term of PRS, where such term is required under Penal Law §70.45.  DOCS and Parole are then required to inform the individual's sentencing court about the error and the court has a limited time in which to correct the error.  If the court determines that PRS actually was properly imposed, it may simply issue a superseding commitment order.   If the court determines that PRS was not imposed, it can hold resentencing proceedings.  The court may also, pursuant to newly-enacted Penal Law §70.85, allow for a sentence without a term of PRS where the District Attorney's Office consents.

Plaintiffs are attempting to use this litigation to prevent the State from remedying the situation through state court proceedings: (A) they have warned defendants that seeking the resentencings of class members would result in "additional liability and damages"; and (B) they have complained to this Court that informing class members about the Albany Supreme Court declaratory judgment action is illegal and unethical. Defendants are obligated to follow Correction Law §601-d, which requires them to refer the class members' cases back to their sentencing courts. Defendants also have an obligation to communicate with class members about day-to-day matters as well as about the ongoing litigation. As plaintiffs have asserted that their lawsuit is a barrier to the mandatory resentencings and to communication with the purported class members, they have essentially conceded that their suit must be dismissed.

New York's highest State court has clarified that the present controversy was created by the conflict of two State laws (Penal Law §70.45 and Criminal Procedure Law §380.20) and the State legislature has now acted to eliminate the conflict and to provide for relief for all parties. Defendants respectfully submit that their primary allegiance must be to the State Legislature and thus they are constrained to obey the procedure that has been created by the Legislature as a solution to this controversy. Defendants further submit that the creation of that procedure has made the instant litigation unnecessary.

The new legislation requires DOCS and Parole to inform the sentencing courts about every defective period of PRS and the courts are then required to act. It is not mere speculation that there are thousands of potential state criminal court proceedings; it is mandatory that said proceedings take place. Plaintiffs are attempting to frustrate those proceedings, and thus this is a textbook case for abstention.

For the foregoing reasons, and without waiving defendants' rights to seek to dismiss the amended complaint pursuant to the Federal Rules of Civil Procedure, defendants respectfully request that this Court abstain, and dismiss the amended complaint.

Dated: New York, New York
         July 7, 2008

                              Respectfully submitted,

                              ANDREW CUOMO
                              Attorney General of the
                               State of New York
                              Attorney for Defendants


By:     _____/s_____

                              Michael J. Keane
                              Andrew H. Meier
                              Assistant Attorneys General
                              120 Broadway - 24th Floor
                              New York, New York 10271
                              (212) 416-8550