## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted on behalf of defendants Fischer, Annucci, LeClaire, and Goord ("defendants"), in opposition to plaintiffs' motion for certification of a class, and in support of their motion to dismiss the First Amended Complaint dated June 26, 2008 ("Complaint") against them. Plaintiffs seek to have this Court, for purposes of certain specific injunctive relief only,[1] "certify a class of 'all persons sentenced to a determinate term of incarceration in the State of New York, whose judicially imposed sentence(s) did not include a term of post-release supervision ("PRS"), but whom [sic] nevertheless have been, or will be, subjected to PRS after the maximum date of their determinate sentence(s)," and to certify named plaintiffs Lawrence Hardy and Ramone Cross as representatives of the class. Plaintiffs' motion to certify a class at this point in the litigation should be denied.

First, plaintiffs' class definition is conclusory, overbroad and functionally and practically unlike that of the State's proposed class in the State court declaratory judgment action.

Second, plaintiffs' stated purpose for class certification at this time is to grant relief to a class of individuals whose PRS was not correctly pronounced, but the composition of this proposed class cannot be determined until a court of competent jurisdiction decides whether PRS was or was not court-imposed. The relief sought is for a class (even if it were capable of definition) of individuals each of whom is subject to a resentencing process mandated by the New York State Legislature in legislation (which passed the Senate and Assembly on June 24, 2008, two days before plaintiffs' motion for class certification was filed) signed by Governor David Paterson on June 30, 2008.

---

[1] Plaintiffs note (footnote 1 on page one of plaintiffs' Memorandum of Law in Support of Class Certification Pursuant to Fed. R. Civ. P. 23(b)(2)) that this motion for class certification is limited for purposes of "securing immediate injunctive relief for themselves and others" that is sought in their application for a preliminary injunction.

Certification of the proposed class and the requested grant of injunctive relief would intrude on this legislative mandate and the hundreds of resentencing proceedings now ongoing in the State's criminal courts.  Clearly, abstention is appropriate.  The issues raised by plaintiffs exclusively involve the State's criminal justice system and the role of the State's courts in that system. Class certification is futile because defendants' motion to dismiss should be granted for the reasons set forth below.  Class certification at this time, in any event, is premature.

Third, certification of a class (and the grant of the requested injunctive relief) before the State courts have had the opportunity to resolve the issues raised herein, would be counterproductive.  The state of the law as to PRS was so unsettled in the two years after Earley v. Murray, 451 F.3d 71 (2d Cir. 2006), that the Court of Appeals of New York had to clarify the law in its decisions in Matter of Garner v. NY State Dept. of Correctional Services, 10 N.Y.3d 358 (2008) and People v. Sparber, 10 N.Y.3d 457 (2008), only to have those clarifications raise yet more issues, so that legislation was required to mandate an orderly process through which to resolve the issues.  Certification of a plaintiffs' proposed class in this action would further complicate, rather than help resolve, the PRS issues facing the State, its courts, its agencies and its criminal defendants, inmates or parolees.

Defendants request that if the Complaint is not dismissed in its entirety, this Court should deny plaintiffs' motion for class certification. Defendants, at the request of the Court, have briefed issues of abstention, and have asked the Court to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1), 12(h)(3), or 12(b)(6) because the claims are barred, inter alia, by: (1) the lack of subject matter jurisdiction; by (2) qualified immunity; (3) the applicable statutes of limitations; (4) Heck v. Humphrey; (5) the failure to exhaust state and administrative remedies, including those required by the Prisoner Litigation Reform Act; and (6) the Eleventh Amendment.

**ARGUMENT**

**POINT I**

**CLASS CERTIFICATION SHOULD BE DENIED ON GROUNDS THAT
CERTIFICATION OF THE CLASS IS FUTILE AND PREMATURE**

Class certification should be denied as futile. As discussed herein and in defendants' other filings in this action, it would be futile to grant class certification: principles of abstention bar plaintiffs' claims for injunctive relief, and qualified immunity and other defenses bar their claims for monetary relief.  Moreover, while defendants concede that resolving certain specific and well-defined issues arising out of PRS are best resolved by pursuing class action relief in the proper forum, plaintiffs here have neither the appropriately focused issues or the right forum for their claims, including their claims for injunctive relief.  The members of the proposed class are not readily ascertainable, and even if such a class were certified, the Court would be required to serve as State sentencing court over thousands of matters as well as the federal court in this one action.  The fact-finding required to certify plaintiffs' proposed class (which could unnecessarily consume this Court's time, but which will necessarily duplicate the efforts of the State courts) leads to the conclusion that certification would be futile.

While a party seeking class certification need not demonstrate ultimate success on the merits, "district courts are now required to make such factual determinations as are necessary to deciding whether all of Rule 23's requirements have been met, even if 'that means making factual determinations on Rule 23 issues that overlap with the merits.'"  Wright v. Stern, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) (internal citation omitted).  In order for class certification to be granted, the party seeking class certification must meet the burden of demonstrating the Rule 23 prerequisites.  An action "may only

3

be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." General Telephone Co. v. Falcon, 457 U.S. 147, 161 (1982). "[T]he district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." In re Initial Public Offering Securities Litigation, 471 F.3d 24, 41 (2d Cir. 2006), reh'g. den., 483 F.3d 70 (2d Cir. 2007); Sirota v. Solitron Devices, Inc., 673 F.2d 566, 571-572 (2nd Cir. 1982) ("there can be no doubt that it is proper for a district court, prior to certification, to allow discovery and conduct hearings to determine whether the prerequisites of Rule 23 are satisfied," reversing the district court for failing to do so); Johnston v. HBO Film Management Co., 265 F.3d 178, 188-89 (3rd Cir. 2001) ("the district court [must] examine the factual record underlying plaintiffs' allegations in making its certification decision.")

At the present time plaintiffs have offered only bare and unsupported allegations in support of their claims. When ruling on a Rule 23 motion, the Court "must probe beyond the surface of plaintiff's allegations." Newton v. Merrill Lynch, Pierce, Fenner & Smith Inc., 259 F.3d 154, 168,169 (3rd Cir. 2001). Courts must "look beneath the surface of a complaint to conduct inquiries identified in [Rule 23] and exercise the discretion it confers." Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996). Indeed, "[t]he proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it." Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 675 (7th Cir. 2001); See Johnston, at 188 ("[c]ertifying classes on the basis of incontestible allegations in the complaint moves the court's discretion to the plaintiff's attorneys - who may use it in ways injurious to other class members as well as injurious to defendants") (internal quotations omitted). Plaintiffs are

required to present sufficient evidence to warrant certification of the proposed class. In re Visa Check/Master Money Antitrust Litigation, 280 F.3d 124, 135 (2nd Cir. 2001).

Plaintiffs assert without sufficient evidentiary support that they belong to a class of criminal defendants "whose judicially imposed sentence(s) did not include a term of" PRS. Neither plaintiff Hardy nor plaintiff Cross substantiates his membership in that class, except by assertion. Neither attaches to the complaint the complete court records of his sentencing, his plea or any post-conviction appeal or other challenge to his PRS which could proffer a presumption of membership in such class. Neither plaintiff has shown sufficiently his adequacy as a class representative. Adequately determining the fitness of the named class representatives in this case requires discovery. See Chin v. Chrysler Corp., 182 F.R.D. 448, 452 (D.N.J. 1998) ("the court may find it necessary to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied"). There has been no discovery in this case to probe the plaintiffs' factual allegations. In support of their motion for class certification, the plaintiffs have offered only declarations from two of the named plaintiffs and a copy of a complaint filed in state court by the State of New York, DOCS, and the Division of Parole. See Declaration of Matthew D. Brinckerhoff in Support of Motion for Class Certification, dated June 26, 2008. This slim showing does not satisfy plaintiffs' burden; the State court complaint, on the other hand, has an entirely distinct class definition, is not filed under Rule 23, does not refer to any of the named plaintiffs, and is therefore of no evidentiary value for the purposes of supporting certification of plaintiffs' proposed class.[2] Plaintiffs offer no competent evidence in the Complaint or in the

---

[2] The State declaratory judgment complaint defines the class as "all of the individuals in DOCS custody, Parole custody, or under Parole supervision, for whom it appears that the documents in the possession of DOCS and Parole do not record terms of PRS imposed by the

motion for class certification to suggest that they are actually members of the class. They are asking this Court to assume that they are. This Court should not so assume, as Rule 23, unlike Rule 12, does not allow a court to accept the plaintiff's allegations as true. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002). And most significantly, as revealed in Court submissions on named plaintiffs' renewed application for emergency relief, plaintiff Cross does not even belong to the class, at least as far as the proposed class is tailored to individuals entitled to the injunctive relief (immediate cessation of enforcement of parole warrants against parolees by the Division of Parole). Plaintiff Cross, even if his PRS was not "judicially imposed" as plaintiffs might define it, is nevertheless <u>not</u> entitled to immediate relief from PRS. Because his sentence and commitment sheet (attached to the Declaration of Andrew H. Meier, dated August 1, 2008 ("Meier Dec.," Exhibit A) plaintiff Cross, under New York law, to the extent that he objects to PRS, has the burden of returning to his sentencing court to have any error corrected. Plaintiff Cross is entitled to no relief other than the correction of the error and the issuance of another amended sentence and commitment.[3]

Moreover, as the defendants are currently seeking to dismiss the entire complaint, the plaintiffs' motion for class certification maybe rendered moot. Because no class discovery has taken

---

sentencing courts, although the individuals were subject to mandatory PRS under the applicable sentencing statute." <u>See</u> court docket for this action, ECF Document 26, p. 16 of 23.

[3] New York case law holds that DOCS is bound by the terms of commitments received from the courts; <u>see</u> <u>Murray v. Goord,</u> 1 N.Y. 3d 29, 32 (2003); <u>Middleton v. State</u>, 54 A.D. 2d 450 (3rd Dep't 1976), <u>aff'd</u> 43 N.Y. 2d 678 (1977) and <u>Matter of Woodward v. Coughlin</u>, 165 A.D. 2d 968 (3d Dep't 1990), <u>app. denied</u>, 76 N.Y. 2d 715 (1990). If an inmate or parolee believes the commitment does not reflect the sentencing court's intent, it is his obligation (in this case, plaintiff Cross'), not the obligation of DOCS or the Division of Parole, to seek clarification from the sentencing court. <u>See</u> <u>People ex rel. McLeod v. Parole</u>, 193 A.D. 2d 942 (3rd Dep't 1993) and <u>People ex rel. Green v. Smith</u>, 34 A.D. 3d 910 (3d Dep't 2006), <u>lv. Denied</u>, 8 N.Y. 3d 806 (2007), <u>rearg. denied</u>, 8 N.Y. 3d 958 (2007).

place – necessary for a fair analysis of certification – the class certification motion should either be

denied outright or deferred in lieu of a decision on defendants' motions for abstention and dismissal.

## POINT II

### CLASS CERTIFICATION SHOULD BE DENIED ON GROUNDS THAT PLAINTIFFS DO NOT MEET RULE 23(a) REQUIREMENTS

Fed. R. Civ. P. 23(a) contains four prerequisites:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs must satisfy all of these prerequisites. Marisol A. v. Giuliani, 126 F.3d 372, 375-76 (2d

Cir. 1997). These requirements not only ensure that Rule 23 is employed only where it will result

in the presentation of a focused case, but also ensure that the rights of the class members are

adequately protected since they will be bound by a judgment against defendants in the case. See

General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982) (cautioning against "unfairness to class

members bound by the judgment if the framing of the class is overbroad"). In Falcon, the Supreme

Court emphasized that a class action can only be certified if the trial court is satisfied, after a

"rigorous" analysis, that the prerequisites of Rule 23(a) have been satisfied. Id. It is the

responsibility of a district court, faced with a motion for class certification, to conduct "a rigorous

inquiry" and to "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper

class representative under Rule 23(a)." Id., at 160-61 (1982). "In the wake of Falcon, courts have

been generally strict in their application of the Rule 23(a) criteria." Bishop v. New York City Dep't

of Housing Preservation and Dev., 141 F.R.D. 229, 234 (S.D.N.Y. 1992) (citation omitted)) (denying

motion for class certification); <u>see</u> <u>Sheehan v. Purolator, Inc.</u>, 839 F.2d 99, 103 (2d Cir.) (district court properly denied class certification because there was insufficient evidence to show that the claims were susceptible of class-wide proof), <u>cert.</u> <u>denied</u>, 488 U.S. 891 (1988). The parties seeking certification as class representatives must demonstrate that all of Rule 23(a)'s criteria are met. <u>Salsitz v. Peltz</u>, 210 F.R.D. 95, 97 (S.D.N.Y. 2002); <u>In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.</u>, 209 F.R.D. 323, 336 (S.D.N.Y. 2002).

The district court must therefore conduct "a rigorous inquiry" of a class certification motion and to "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." <u>General Tel.</u>, 457 U.S. at 160-61. Typicality and commonality may not be presumed to exist. If plaintiffs are not able to demonstrate these elements, class status should be denied. <u>See</u> <u>Sheehan</u>, 839 F.2d at 103-04 (affirming denial of class status where plaintiffs' claims were not susceptible of class wide proof); <u>Salsitz</u>, 210 F.R.D. at 98 (denying class certification because putative class representatives could show neither typicality nor adequacy); <u>MTBE Products Liability Litig.</u>, 209 F.R.D. at 337-40 (denying class certification because plaintiffs failed to establish typicality, adequacy of representation, availability of class-wide relief; and commonality); <u>Bishop</u>, 141 F.R.D. at 238-39 (denying motion for class certification because evidence was insufficient to establish that joinder of other putative class members was impracticable, and expressing concern, that like the issues in this case, "the remedial issues will require individualized determinations, and the benefits of class certification over joinder are [therefore] less apparent"); <u>see</u> <u>also</u> <u>Weissman v. ABC Fin. Servs.</u>, 203 F.R.D. 81, 84 (E.D.N.Y. 2002) (denying class certification because "the plaintiff's assertion of numerosity is pure speculation or bare

allegations," and is not supported by "one shred of evidence that would help her provide a reasonable estimate [of the number of potential class members], much less provide that estimate herself").

**A. Ascertainability:**  In addition to the delineated statutory requirements of Rule 23, the Courts have also applied a "threshold requirement of ascertainability."  See Dunnigan v. Metro. Life Ins. Co., 214 F.R.D. 125, 135 (S.D.N.Y. 2003); and Miles v. Merrill Lynch & Co.  (In re Initial Pub. Offering Sec. Litig.), 471 F.3d 24 (2nd Cir. 2006). This threshold requirement requires that, for a class to be certified, "plaintiffs must demonstrate that the aggrieved class can be readily identified." Dunnigan, at 135.  As defined by plaintiffs, the class proposed by plaintiffs is in no way readily ascertainable.  Judicial economy will not be served by certifying this case, because in order to identify the members of the class (and grant them injunctive relief), the commitment papers and sentencing transcripts of every single person "sentenced to a determinate term of incarceration in the State of New York . . . who ha[s] been, or will be, subjected to PRS after the maximum expiration date of [his or her] determinate sentence," will have to be inspected in order to determine whether or not mandatory PRS was legally imposed at sentencing. See Cert. Memo., at p. 1.  And this determination is properly within the jurisdiction of a court.  Indeed, as DOCS, in conformity with the PRS resentencing intitiative, referred matters to sentencing courts, DOCS learned that its own determinations that PRS had not been properly pronounced in the sentencing courts, were unreliable: in one set of referrals of 28 matters to the sentencing courts where DOCS believed that PRS had not been correctly pronounced, 4 of those 28 matters came back to DOCS with the courts having indicated that PRS had indeed been judicially imposed.  See testimony of Anthony J. Annucci, Transcript of June 20, 2008 hearing on the Preliminary Injunction in People v. Myers, Supreme Court, Albany County, at pp.95-99.  Plaintiffs' class definition is unwieldy and overbroad, the class

9

is not ascertainable, and class certification should be denied.  See Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981) (denying class certification because it would have been a "Sisyphean task" to identify those individuals with viable claims).  The task plaintiffs would put the Court to is no less Herculean.

B. Numerosity:  Plaintiffs seek to represent a class of "all persons sentenced to a determinate term of incarceration in the State of New York, whose judicially imposed sentence(s) did not include a term of post-release supervision ("PRS"), but whom [sic] nevertheless have been, or will be, subjected to PRS after the maximum expiration date of their determinate sentence(s)." Cert. Memo., at 1.  While that overbroad definition certainly encompasses thousands of individuals, the "numerosity" requirement is not met.  "Numerosity" does not just mean "numerous," but must mean something capable of enumerating.  Because plaintiffs' definition of the class is overbroad, the numerosity test is met so well that the threshold requirement of ascertainability cannot be met.

Further, district courts must make factual findings as to the approximate size of the class based on the parties' evidentiary proffers.  Vengurlekar v. HSBC Bank, 03 Civ. 0243(LTS)(DFE), 2007 WL 1498326, at *4.  Plaintiffs have not begun to meet their burden of demonstrating numerosity, as instead they merely quote defendants' counsel out of context and refer to a complaint filed in New York State Supreme Court by the State of New York, DOCS, and the Division of Parole. Cert. Memo., at pp. 4-5, 8.  In order to satisfy the requirement of numerosity plaintiffs must provide a reasonable estimate of the number of the relevant group of persons.  See, e.g., Pecere v. Empire Blue Cross and Blue Shield, 194 F.R.D. 66, 69 (E.D.N.Y. 2000).  They must supply evidence from which an inference of that estimate can be drawn. Wilner v. OSI Collection Services, Inc., 198 F.R.D. 393, 396 (S.D.N.Y. 2001).  Plaintiffs have not met this modest burden and thus, this Court

10

should determine that plaintiffs have not satisfied the Rule 23(a) numerosity prerequisite to certification of this action as a class action.

### C. Commonality and Typicality:

**Typicality:**  Rule 23 (a)(3-4) provides that "[o]ne or more members of a class may sue . . . as representative parties on behalf of all members only if . . . the claims or defenses of the representative parties are typical of the claims or defenses of the class; and the representative parties will fairly and adequately protect the interest of the class."  The typicality requirement focuses on the individual plaintiffs, and if they cannot show that their claims are typical of the proposed class, then resolution by class action is inappropriate.  The Supreme Court held that it was error to allow an employee, with only a claim of wrongful denial of a promotion by his  employer, to represent a class of individuals of the same nationality who claimed discrimination in hiring, reasoning that:

> We have repeatedly held that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.  East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403 (quoting Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 216. In East Texas Motor Freight . . . [w]e held that the Court of Appeals had "plainly erred in declaring a class action." 431 U.S. at 403. Because at the time the class was certified it was clear that the named plaintiffs were not qualified to line-driver positions, "they could have suffered no injury as a result of the allegedly discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury." Id. at 403-04.

Falcon, 457 U.S. at 157.  See also Stewart v. Winter, 669 F.2d 328, 335 (5th Cir. 1982) (error to certify all prisoners in State correctional system as a class when the individual claims involved conditions at different jails).  The rationale for employing Rule 23 involves a threshold determination by the trial court that the individual plaintiffs before the court possess claims which are typical.

Here, like the putative named plaintiff in Falcon, plaintiff Cross cannot have suffered any injury as a result of the error in the sentencing court.  New York State law provides that his remedy

is a corrected commitment sheet, not cessation of execution of warrants against him for absconding or immediate release from parole – unlike other members of the potential class who are alleged to have suffered injury. Plaintiff Cross has not established that he is actually a member of the class and has provided no evidentiary support whatsoever to satisfy his evidentiary burden; merely claiming that he is a member of the class does not make him a viable representative of the class. Falcon, at 157-158. Plaintiff Cross' Sentence and Commitment document clearly states that he is subject to a 5 year term of PRS. See Meier Dec., Exhibit A. Defendants are bound by the Sentence and Commitment document and cannot be accused of violating the law by following it. See Murray v. Goord, 1 N.Y.3d 29, 32 (2003) ("prison officials are conclusively bound by the contents of commitment papers accompanying a prisoner"). Plaintiff Cross is also currently a fugitive from justice and, as such, has unclean hands and cannot prevail upon a court of equity for relief. See Cert. Memo., at 4; Complaint, at ¶¶57-58. Plaintiff Cross' claims are also barred by all other defenses raised herein. Plaintiff Cross does not meet the typicality requirement, nor does plaintiff Smith, who is not currently subject to PRS because the New York State Supreme Court, Bronx County, struck his term of PRS on December 21, 2007. See Complaint, at ¶69; see also Meier Dec., Exhibit B. Therefore, plaintiff Smith cannot benefit from any injunctive relief and thus cannot be a class representative. Plaintiff Smith's claims are barred by all other defenses herein. Indeed, the very fact that the motion for a class is not brought on behalf of plaintiff Smith indicates that the purported class is splintering even before the Court has had a chance to consider whether class certification would be appropriate. See Cert. Memo., at p. 1. Plaintiff Hardy also has failed to establish that he is actually a member of the class. He has provided no evidentiary support whatsoever to satisfy his evidentiary burden; merely claiming that he is a member of the class does not make him a viable

representative of the class. <u>Falcon</u>, at 157-158. Plaintiff Hardy's claims are also barred by all other defenses raised herein. No named plaintiff has established a viable claim or actual membership in the proposed class, and thus plaintiffs have not satisfied the Rule 23(a) typicality requirement.

**Commonality**

In <u>Falcon</u>, 457 U.S. at 157 n.13, the Supreme Court noted that the "commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether, under the particular circumstances, maintenance of a class action is economical and whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." While certainly there are common legal issues raised by members of the putative plaintiff class, the purposes of class certification at this point – to seek a grant injunctive relief – do not support a finding of commonality. While the general issues arising out of the PRS problems are common, the issues arising out solutions to the PRS problems require individualized focus on each putative plaintiff. It is not as if PRS were created by a DOCS policy that is challenged in its entirety. Rather, PRS was created by the New York State Legislature and is perfectly legal. Moreover, it was created 10 years ago and has been imposed upon tens of thousands of individuals. Therefore it will be constructively impossible to determine membership of the class as defined by the plaintiffs. <u>See</u> <u>Pinkard v. Pullman-Standard</u>, 678 F.2d 1211, 1215 (5th' Cir. 1982), <u>cert.</u> <u>denied</u>, 459 U.S. 1105 (1983) ("it is well settled that, where a case requires detailed investigations of the circumstances surrounding the claims of individual class members, that case does not lend itself to treatment as a class action"). The plaintiffs have not so much defined a class, as they have vaguely described an enormous group of people. Thus they have not satisfied the Rule 23(a) commonality prerequisite.

13

**POINT III**

**CLASS CERTIFICATION OF A RULE 23(b)(2) CLASS
SHOULD BE DENIED AS UNNECESSARY**

Plaintiffs have limited their motion, asking the Court at this time only to certify a class as provided in Rule 23(b)(2) (although in the Complaint, they also gave notice of their intention to move under Rule 23 (b)(3). Complaint, at 119-21). Because plaintiffs are not currently moving for Rule 23(b)(3) certification, defendants respond herein only to the plaintiffs' Rule 23(b)(2) allegations, and reserve all rights to oppose Rule 23(b)(3) certification if it is sought by the plaintiffs at another time. See Cert. Memo., at 1, n. 1.

Under the Federal Rules, "[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2). The Second Circuit has long recognized, however, that certification of a Rule 23(b)(2) class seeking injunctive and declaratory relief is not necessary where the government defendants have given no indication that they will not apply a Court judgment made in an individual case to all similarly situated persons. See Galvan v. Levine, 490 F.2d 1255 (2d Cir. 1973); Davis v. Smith, 431 F. Supp. 1206 (S.D.N.Y. 1977), aff'd, 607 F.2d 535 (2d Cir. 1978). In Davis, the district court found that "although plaintiffs satisfy the requirements of [Rule 23], certification of class action status is unnecessary and would not provide a superior method of adjudicating the issues . . .." 431 F. Supp. at 1209. "The doctrine that class certification is unnecessary in these circumstances arises out of the presumption that the State and its agents will not act to enforce against any person a regulation which has been found and declared to violate the Constitution, whether or not that person participated in

14

the action which resulted in such declaration." Langer v. New York State Office of Court Admin., 98 Civ. 413, 1998 U.S. Dist. LEXIS 18153, 1998 WL 799153, at *6 (W.D.N.Y. 1998); see also Brown v. Kelly, 244 F.R.D. 222, 236, N. 92 (S.D.N.Y. 2007) (collecting cases); Green v. Borg-Warner Protective Servs. Corp., 95 Civ. 10419, 1998 U.S. Dist. LEXIS 292, 1998 WL 17719, at *4 (S.D.N.Y. 1998) ("[t]he declaratory and injunctive relief sought against the State and Municipal defendants would make class action designation largely a formality since the relief sought, if warranted, would confer a benefit on all persons similarly situated without any class designation"); Feld v. Berger, 424 F. Supp. 1356, 1363 (S.D.N.Y. 1986) (finding class certification superfluous because the court"assumes these public officials, mindful of their responsibilities, will apply the determination here made equally to all persons similarly situated").

Defendants herein are public officials who are extremely mindful of their obligations under applicable law and they have already demonstrated that they will adjust their policies to conform to changes in the law and, as such, it can be assumed that they would apply any Court judgment to all similarly situated persons by adopting a policy that would extend any final judgment granted to the named plaintiffs to all similarly situated persons. Indeed, when Garner and Sparber reversed nearly ten years of precedent that considered PRS to have been not only mandatory, but also automatically imposed by operation of law,[4] defendants followed by reversing policies accepted by courts, court

---

[4] The New York State Court of Appeals had repeatedly held – as recently as November of 2007 – that PRS was a direct consequence of a criminal conviction as it has a "definite, immediate and largely automatic effect on [a] defendant's punishment." See People v. Catu, 4 N.Y.3d 242 (2005); People v. Van Deusen, 7 N.Y.3d 744 (2006); People v. Louree, 8 N.Y.3d 541 (2007); People v. Hill, 9 N.Y.3d 189 (2007). The State's appellate divisions had also so held. See Garner v. Dep't. Of Correctional Services, 39 A.D.3d 1019 (3d Dept. 2007), lv. granted, 9 N.Y.3d 809 (2007); People v. Thomas, 35 A.D.3d 192 (1st Dept. 2006), lv. granted 9 N.Y.3d 882 (2007); People v. Sparber, 34 A.D.3d 265 (1st Dept. 2006), lv. granted, 9 N.Y.3d 882 (2007); People v. Lingle, 34 A.D.3d 287 (1st Dept. 2006), lv. granted, 9 N.Y.3d 877 (2007).

administrators, prosecutors and the defense bar and conformed PRS policies to the courts' directives. Defendants[5] who remain policymakers in DOCS not only conformed PRS policy to the Court of Appeals directives, but affirmatively launched a massive PRS resentencing initiative,[6] seeking expedited, orderly and consistent resolution of PRS issues, and joined a declaratory judgment action in State Supreme Court, Albany County, against a class of defendants whose sentencing records may indicate that mandatory PRS was not correctly pronounced by the criminal courts, seeking to ensure that the rights of criminal defendants and the State are protected in resolving the issues.  State legislation enacted on June 30, 2008 essentially granted the injunctive relief the State sought in that action.  Defendants herein have conformed policy to the judicial and legislative mandates.  Thus, class certification is unnecessary and would not provide a superior method of adjudicating the issues.

Moreover, as set forth above, the determination of which individuals subjected (or who will be subjected) to mandatory PRS that was not "judicially imposed" is a legal determination to be made by a court.  Garner prohibits DOCS from administratively "adding" mandatory PRS because the administrative calculation of PRS where the sentencing court did not correctly pronounce that portion of the sentence would amount to an act in excess of DOCS' jurisdiction as an executive agency.   DOCS can no more make the determination, with any ultimate authority, that the commitment papers and sentencing minutes of any criminal defendant do not indicate correctly pronounced PRS.  Any act of "subtracting" PRS from a sentencing calculation would equally exceed

---

[5]  Defendant Goord was retired from DOCS at the time the Court of Appeals reversed its precedents as to the automatic imposition of PRS by operation of law.

[6]  See, e. g., the testimony of Commissioner Denise O'Donnell of the Division of Criminal Justice Services of the State of New York, Transcript of the June 20, 2008 preliminary injunction hearing in State v. Myers, et al., pp. 42-55.

the jurisdiction of the executive agency, an act that must by the same token be prohibited under the mandate of Garner.  Plaintiffs' proposed class, to be certified for the practical purpose of granting the injunctive relief sought, requires this Court to engage in a sweeping and extremely individualized inquiry into the court records of thousands of inmates to determine which inmates had terms of PRS that were "judicially" imposed at sentencing as opposed to "administratively imposed" upon the criminal defendant's intake as an inmate in DOCS.  Therefore, although DOCS certainly applied Penal Law §70.45 "on grounds generally applicable" to the purported class, what plaintiffs ask this Court to do – identify which members of the purported class actually had PRS imposed on them at sentencing – turns the Herculean task of resolving PRS issues into a Sisyphean task.  This Court need not take on that task, as each individual member of the purported class has an incentive to bring and control his or her own litigation. For the foregoing reasons, certification should be denied.

### POINT IV

### NEW STATE LEGISLATION PRESCRIBES THE REMEDY FOR PLAINTIFFS' CLAIMS, AND MOOTS THE COMPLAINT, COMPELLING DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION

The June 30, 2008 legislation prescribes an orderly process through which the errors made in imposing mandatory PRS at sentencings are to be corrected.  The legislation applies to all members of the proposed class, and specifically authorizes, for a "transitional period," continued custody of "inmates in the custody of the commissioner [of DOCS], and releasees under the supervision of the division of parole" (Corrections Law § 601-d) pending the courts' performance of their obligations to obtain sentencing records (Corrections Law § 601-d (1)-(4).[7]  DOCS is

---

[7]  The new legislation does "not affect the power of any court to hear... any petition, motion or proceeding pursuant to" CPL 440, CPLR Article 78 or 70, "or any authorized proceeding" (Corrections Law § 601-d (8)).

required to re-calculate PRS terms in erroneous sentences (and thus, in some cases, authorize release from DOCS or Parole) only after the sentencing courts have notified DOCS that the "designated person" (an inmate or parolee) has been resentenced "to a sentence that includes a term of" PRS or is not to be resentenced to such a term of PRS (Corrections Law § 601-d (5)(a)-(b)) (provided that, where the original sentence is reimposed without the PRS term as required by law, such is a legal sentence "only on the consent of the district attorney" (CPL § 70.45). In the pending application for injunctive relief, plaintiffs ask this Court to assume the roles of Article 70, 78 and sentencing courts and supersede the State's process. This Court need not assume such jurisdiction. Plaintiffs have available State remedies, clearly set forth in the June 30 legislation. Plaintiffs face no injury if they follow the Legislature's procedures for resolving PRS issues, and until that process fails them, plaintiffs should have no case or controversy in federal court.

Article III of the Constitution limits the jurisdiction of the federal courts to actual cases and controversies. O'Shea v. Littlejohn, 414 U.S. 488, 493 (1974). As the Supreme Court has stated:

> [t]he actual-injury requirement [of Article III] would hardly serve the purpose ... of preventing courts from undertaking tasks assigned to the political branches ... if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy <u>all</u> inadequacies in that administration. The remedy [is] ... limited to the inadequacy that produced the injury in fact that the plaintiff has established.

Lewis v. Casey, 518 U.S. 343, 357 (1996). McConnell v. Federal Election Commission, 540 U.S. 93, 225 (2003). Absent an actual case or controversy, this court lacks subject matter jurisdiction. United States Parole Commission v. Geraghty, 445 U.S. 388, 395 (1980); Jones v. The CBE Group, Inc., 215 F.R.D. 558, 562 (D. Minn 2003).[8] A matter may be rendered moot where subject-matter

---

[8] Subject-matter jurisdiction is of such importance that it is referred to twice in Rule 12. Rule 12(b)(1) and Rule 12(h)(3) emphasize the restraints suggested for jurisdiction.

jurisdiction once might have existed when a complaint was filed but where subsequent events have deprived the Court of subject-matter jurisdiction.[9]    The plaintiffs here challenge DOCS' practice of "administratively impos[ing] and enforc[ing] PRS on individuals. . .  whose sentences never included PRS (the 'PRS Policy')."  Complaint, at ¶3.  That policy was based on the requirements of NY Penal Law §70.45 as it stood from September 1998 until June 2008.  As a result of a change in state law brought on by the New York State Court of Appeals decisions in Garner and Sparber, there is no longer any doubt that PRS does not arise by operation of law and, thus, the "PRS Policy" of which the plaintiffs complain is no longer extant. Current DOCS policy is controlled by newly-enacted Penal Law §70.85 and amendments to Correction Law §601 and Penal Law §70.45.  The amendments to the statute moot the case or controversy in this Court.  Catanzano v. Wing, 277 F. 3d 99 (2d Cir. 2001).[10]    In this case, the parties agree that DOCS is not authorized to "administratively impose" PRS, and thus the new legislation moots plaintiffs' claims.

_____

[9]  "When the parties lack a legally cognizable interest in the outcome of an action, the action becomes moot, and, accordingly, the court no longer has jurisdiction over the action." Louisdor v. American Telecommunications, Inc., 540 F.Supp.2d 368, 371-2 (E.D.N.Y. 2008) (citation omitted).  See also, Harriman v. I.R.S., 233 F.Supp.2d 451, 457 (E.D.N.Y. 2002); and California v. LaRue, 409 U.S. 109, 113  n. 3 (1972).  The Rooker-Feldman also bars federal review of state court decisions. See  Moccio v. New York State Office of Court Administration, 95 F.3d 195, 197 (2d Cir. 1996).

[10]  In Catanzano, also a class action, the Second Circuit held that the expiration of New York's "fiscal assessment" amendments to its Social Services Law rendered the claim regarding the State's implementation of those fiscal assessments moot, and vacated the district court's permanent injunction and final judgment: "[s]ince both Plaintiffs and Defendants agree that the State is no longer implementing the fiscal assessment laws, and there is no reason to expect that fiscal assessments are now occurring or that the legislature will reenact the law, no controversy now exists with respect to this claim and it is therefore moot." Id. at 107.  See also, Lamar Advertising of Penn, LLC v. Town of Orchard Park, 356 F. 3d 365, 377 (2d Cir. 2004) (holding that amendments to local ordinance mooted some of plaintiff's claims).

## POINT V

### QUALIFIED IMMUNITY COMPELS DISMISSAL OF PLAINTIFFS' DAMAGES CLAIMS BASED ON TEN YEARS OF PRECEDENT AND PRACTICE

Until June 30, 2008, Penal Law §70.45(1) provided that "[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision," but now has been amended to read, "[w]hen a court imposes a determinate sentence it shall in each case state not only the term of imprisonment, but also an additional period of post-release supervision as determined pursuant to this article." The Governor's Program Bill Memorandum explains that the new language "replaces a provision that such sentences automatically include supervision terms with one that requires courts to state such terms explicitly in the course of pronouncing sentence." As a part of a sentence that is essentially parole, PRS was not considered for years to be a term the sentencing court was required to pronounce. The statute, framed in language unique in the Penal Law, defined PRS as an automatic corollary of the determinate sentence: "[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision." No clearly established precedent prohibited defendants presuming the validity of the statute (Vives v. The City of New York, 405 F.3d 115, 117 (2d Cir. 2005) (citing Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 102-03 (2d Cir. 2003)), and from reasonably believing that PRS did not have to be pronounced by the sentencing court. Defendants reasonably believed that the State Court of Appeals sanctioned DOCS' understanding that mandatory PRS was automatically imposed by operation of law.

Qualified immunity protects government officials from civil liability in the performance of their discretionary functions "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987);

see also Poe v. Leonard, 282 F.3d 123, 132-33 (2d Cir. 2002).[11]  At the time that DOCS calculated

PRS into inmates' sentences, it was not clearly established, and reasonable officials in the

defendants' positions would not have known, that DOCS was violating "clearly established law,"

(plaintiffs cite Hill v. United States ex. Rel. Wampler, 298 U.S. 460 (1936) and Earley v. Murray).

Indeed, Garner and Sparber did not reach the constitutional issue, as the PRS issues could be

resolved as a matter of State procedural law.  While DOCS was relying on a presumptively valid

statute before Earley was decided,[12] even now Earley is of dubious value for the avenue of relief

plaintiffs seek through this Court.  Earley was decided on appeal from the denial of a federal habeas

corpus petition.  State courts had erroneously denied the federal petitioner any remedy to challenge

his sentence in the State courts, his only resort being federal habeas.  Unlike the petitioner in Earley,

---

[11]  Defendants briefed qualified immunity in the submissions addressing abstention requested by the Court, and the discussion herein tries to avoid repetition.  In addition, defendants contend that damages claims against defendants not personally involved in alleged constitutional deprivations must be dismissed.  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). See also Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir.), cert. denied, 414 U.S. 1033 (1973). There is no allegation in the complaint that the defendants who did not create policy directly participated in the "administrative imposition" of PRS upon the plaintiffs' sentences, or were aware of and did not remedy a wrong. Williams v.Smith,781 F.2d 319, 323-24 (2d Cir. 1986). Indeed, defendants should be deemed to have followed the law.  Prior to Earley, the New York State Court of Appeals interpreted Penal Law §70.45 to effectuate PRS by operation of law. See People v. Catu, 4 N.Y. 3d 242, 244 (2005) ( PRS is a "consequence" of a conviction with "largely automatic" effect).  The "PRS Policy" was not created by the defendants.  Accordingly, plaintiff cannot show personal involvement of defendants in the alleged constitutional deprivation.

[12]  "[O]fficials performing discretionary functions are not subject to suit when such questions are resolved against them only after they have acted.... The decisive fact is not that [defendant's] position turned out to be incorrect, but that the question was open at the time he acted." Mitchell v. Forsyth, 472 U.S. 511, 535 (1985). Qualified immunity is analyzed from the perspective of the defendant at the time of the challenged conduct. Hanrahan v. Doling, 331 F.3d93, 98 (2d Cir. 2003). See also Sutton v. Village of Valley Stream, 96 F.Supp.2d 189, 194 (E.D.N.Y. 2000) ("[i]n light of the fact that Plaintiffs claim is based upon a case not decided in this circuit until 1999, ... acknowledged by the court to present a close question, ... the right claimed was not so 'clearly established' so as to defeat a claim for qualified immunity").

plaintiffs herein are no longer so foreclosed. The Court of Appeals in Garner and Sparber have clarified the law to permit a remedy (as the district judge in Earley thought should have been available). The constitutional principle identified by the Second Circuit[13] should be applied only where, unlike here, plaintiffs can obtain no State court relief. There is no constitutional right implicated until the State remedies have been exhausted, as they were in Earley at the time. Now, two years later, the petitioner in Earley would have his petition dismissed for failure to exhaust; plaintiffs likewise must exhaust their State remedies before coming to this Court for relief.

In Earley, the Second Circuit applied the Antiterrorism and Effective Death Penalty Act ("AEDPA"), standard that a writ of habeas corpus may not be granted unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), Earley,451 F.3d at 74, a different standard from that which applies for a grant of qualified immunity. The "clearly established" test found in AEDPA has absolutely no bearing on whether defendants' conduct, when committed, violated clearly established statutory or constitutional rights of which a reasonable person would have known. Although both AEDPA and the doctrine of qualified immunity employ the term "clearly established," all appellate federal courts addressing the issue have held that AEDPA and qualified immunity further two completely different purposes, and the term "clearly established" has two different applications. See Williams v. Ballard, 466 F.3d 330, 334 (5thCir. 2006) ("AEDPA and qualified immunity standards differ[], despite using the same terms...,[as] [t]he former ensures respect for state court judgments, mandating that we defer

---

[13] Hill did not clearly establish, for purposes of qualified immunity, that the "administrative imposition" of PRS violated a constitutional right. Wampler involved discretionary action of a clerk; here, defendants were complying with a mandatory statute.

to judicial decisions by trained lawyers; the latter shields state officials..., for their discretionary acts."[14]  The Supreme Court so holds:

> we are not persuaded by the argument that because Congress used the words "clearly established law" and not "new rule", it meant in this section to codify an aspect of the doctrine of executive qualified immunity.... We will not assume that in a single subsection of an amendment entirely devoted to the law of habeas corpus, Congress made the anomalous choice of reaching into the doctrinally distinct law of qualified immunity, for a single phrase that just so happens to be the conceptual twin of a dominant principle in habeas law of which Congress was fully aware.

Williams v. Taylor, 529 U.S. 362, 380 n. 12 (2000). Cf. Bell v. Jarvis, 236 F.3d 149, 161 n. 8 (4th Cir. 2000) ("unlike in the doctrinally distinct area of qualified immunity, our decisions in federal habeas cases do not create "clearly established" law for state courts deciding future cases. Only the Supreme Court can create "clearly established" law.  See Williams, 120 S.Ct. at 1523; and United States v. Brown, 352 F.3d 654, 665 n. 9 (2d Cir. 2003).  Even if Earley could somehow still permit a grant of habeas corpus relief to a petitioner who had not exhausted now-available State remedies, it is clear that the Second Circuit decision cannot limit a grant of qualified immunity to defendants for whom "clearly established precedent" lies outside of AEDPA case law.

---

   [14]  See also O'Brien v. Dubois, 145 F.3d 16, 24 (1st Cir. 1998): " [t]he judge-made qualified immunity doctrine strikes a balance between remedying constitutional violations and unduly hindering state actors' abilities to perform their jobs on a day-to-day basis by shielding them from liability for money damages unless their conduct transgresses the most firmly settled constitutional norms. In contrast, state judges do not face personal liability for erroneous constitutional decisions -- a bruised ego is not the functional equivalent of a monetary award. More importantly, the legislatively enacted AEDPA standard is not designed to strike a balance between such values, but to provide a means for testing the conformity of a state court's decision to the requirements of federal law."  Thus, for AEDPA, precedent need not be as clear or specific as it must be for § 1983 damages actions.  See Van Tran v. Lindsey, 212 F.3d 1143, 1152 (9th Cir.), cert. denied, 531 U.S. 944 (2000); Coleman v. Dretke, 409 F.3d 665, 668 (5th Cir. 2005).

**POINT VI**

**PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO EXHAUST UNDER AEDPA, PLRA, 28 U.S.C. 2254, <u>HECK</u>, AND COMMON LAW**

To the extent that plaintiffs' claims for injunctive relief (and claims for money damages) on grounds that they are entitled to release from DOCS' custody or Parole's supervision, plaintiffs essentially seek habeas corpus relief. Pursuant to 28 U.S.C. 2254, such a plaintiff may not in general seek relief in a federal court unless the available State remedies have been exhausted. <u>See</u> <u>Granberry v. Greer</u>, 481 U.S. 129 (1987).[15] Similarly, to the extent that plaintiffs' claims are asserted by class members subject to the PLRA, those claims must be dismissed as unexhausted. <u>See</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). Further, and as argued in the briefing on abstention, <u>Heck v. Humphrey</u> 512 U.S. 477, 481-82 (1994), applies to bar claims of convicted persons whose underlying convictions or sentences have not been overturned. The "favorable termination rule" has not been satisfied here, where the named plaintiffs, as well as the potential members of the class, though required to be returned to their sentencing courts for corrections of their sentences, have not demonstrated that or that their sentences or convictions have terminated with any finality. Plaintiff Smith can show that the Supreme Court, Bronx County, issued a decision on December 21, 2007 (reversing its prior decision of May 8, 2007), granting his writ of habeas corpus (<u>see</u> Meier Dec., Exhibit C), but that determination was, under <u>Garner</u>, without prejudice to the State's resentencing.[16]

_____

[15]  A habeas petitioner need not be confined physically to satisfy the "in custody" requirement. <u>Maleng v. Cook</u>, 490 U.S. 488, 491 (1989)(per curiam); and <u>Jones v. Cunningham</u>, 371 U.S. 236, 242-43 (1963) .

[16]  Plaintiffs have represented that they do not dispute that the Eleventh Amendment bars claims against official acts of State defendants. Thus, it need only be noted that the Constitution "does not permit judgments against state officers declaring that they violated federal law in the past." <u>Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 146

## POINT VII

## PLAINTIFFS' CLAIMS ARE TIME-BARRED

For §1983 actions arising in New York, the statute of limitations is three years (<u>Eagleston v. Guido</u>, 41 F.3d 865, 871 (2d Cir. 1994); <u>Pinaud v. County of Suffolk</u>, 52 F.3d 1139, 1156 (2d Cir. 1995); <u>Owens v. Okure</u>, 488 U.S. 235, 250-51 (1989)), which accrues when a plaintiff "knows or has reason to know of the injury which is the basis of his action." <u>Pearls v. The City of Long Beach</u>, 296 F.3d 76, 80 (2d Cir. 2002); <u>Cornwell v. Robinson</u>, 23 F.3d 694,703 (2d Cir. 1994). The time-bar applies equally to damages and injunctive relief claims. <u>Levine v. McCabe</u>, 357 F.Supp.2d 608, 614 (E.D.N.Y. 2005). Plaintiffs do not identify the time at which they were aware that PRS was "administratively imposed," but the public availability of NY Penal Law §70.45 ensures that plaintiffs are held to have had knowledge of the statute. As explained in <u>Grayden v. Rhodes</u>, 345 F.3d 1225, 1239 (11th Cir. 2003), the Supreme Court for 100 years has declared that a publicly available statute may be sufficient to provide such notice because individuals are presumptively charged with knowledge of such information. <u>Reetz v. Michigan</u>, 188 U.S. 505, 509 (1903); <u>North Laramie Land Co. v. Hoffman</u>, 268 U.S. 276, 283 (1925) ("[a]ll persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them . . . ."); <u>Texaco, Inc. v. Short</u>, 454 U.S. 516, 532 (1982) ("[i]t is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or

_____

(1993) <u>quoting</u> <u>Green v. Mansour</u>, 474 U.S. 64, 73 (1985), and likewise, to the extent that plaintiffs seek any monetary award against defendants in their official capacities (<u>see</u> Complaint's Request for Relief, clause 4), such is also prohibited by the Eleventh Amendment. <u>Edelman v. Jordan</u>, 415 U.S. 651, 677 (1974); <u>New York City Health & Hospitals Corporation v. Perales</u>, 50 F.3d 129, 135 (2d Cir. 1995); <u>Tekkno Laboratories, Inc. v. Perales</u>, 933 F.2d 1093, 1098 (2d Cir. 1991); <u>McAuliffe v. Carlson</u>, 520 F.2d 1305, 1308 (2d Cir. 1975).

disposition of such property"). This principle of statutory notice was reiterated in <u>Atkins v. Parker</u>, 472 U.S. 115 (1985): "[a]ll citizens are presumptively charges with knowledge of the law....The entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny." Id. at 130-31. Accordingly, plaintiffs had knowledge of the imposition of PRS as statutorily required by Penal Law §70.45 at the time of their sentencing. This action, commenced more than three years after the plaintiffs had reason to know of their alleged injuries, has exceeded the appropriate statute of limitations and should be dismissed.

## CONCLUSION

For the foregoing reasons, the defendants respectfully request that the Court grant the instant motion to dismiss the Complaint and deny the plaintiffs' motion for class certification.

Dated: New York, New York
August 1, 2008

Respectfully submitted,

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendants

By:
 S/Michael J. Keane 
Michael J. Keane
Andrew H. Meier
Assistant Attorneys General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8550

26