UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
LAWRENCE HARDY, RAMONE CROSS, and
SHAWN SMITH, individually and on behalf of all others
similarly situated,

                                  Plaintiffs,                    08 Civ. 2460 (SHS)

      – against –

BRIAN FISCHER, et al.,

                                  Defendants.
------------------------------------------------------------------------x
MICHAEL COLEMAN,

                                  Plaintiff,                    07 Civ. 7790 (SHS)

      – against –

BRIAN FISCHER, et al.,

                                  Defendants.
------------------------------------------------------------------------x


# PLAINTIFFS' JOINT MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS


**EMERY CELLI BRINCKERHOFF & ABADY LLP**
**75 Rockefeller Plaza, 20th Floor**
**New York, New York 10019**
***Attorneys for All Plaintiffs***


**LAW OFFICES OF JOSHUA L. DRATEL, P.C.**
**2 Wall Street, 3rd Floor**
**New York, New York 10005**
***Attorneys for Plaintiffs Hardy, Cross and Smith***

## **TABLE OF CONTENTS**

**PAGE NO(s)**:

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY . . . . . . . 1

    A.  *Wampler* Bars Any Qualified Immunity Defense . . . . . . . . . . . . . . . . . . 2

    B.  *Earley* Bars Any Qualified Immunity Defense . . . . . . . . . . . . . . . . . . . . 5

II.  THIS COURT HAS SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . 8

III.  *HECK V. HUMPHREY* IS NOT A BASIS FOR DISMISSAL . . . . . . . . . . . . . 10

IV.  THE STATUTE OF LIMITATION DOES NOT BAR PLAINTIFFS'
    CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.  ABSTENTION IS NOT WARRANTED IN MR. COLEMAN'S
    CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    A.  Abstention Under *Pullman* Is Improper . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    B.  The *Younger* Doctrine Does Not Apply . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VI.  DEFENDANTS WERE PERSONALLY INVOLVED IN VIOLATING MR.
    COLEMAN'S CONSTITUTIONAL RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII.  THE ELEVENTH AMENDMENT DOES NOT BAR MR. COLEMAN'S
    RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Lawrence Hardy, Ramone Cross, and Shawn Smith, named plaintiffs in No. 08 Civ. 2460 (the putative class action), together with Michael Coleman, plaintiff in No. 07 Civ. 7790, respectfully submit this memorandum of law in opposition to defendants' motions to dismiss both cases filed on August 2 and July 29, 2008, respectively.  Plaintiffs submit their opposition jointly because the two cases have been designated as related, and defendants' arguments for dismissal in both are substantially similar.

## ARGUMENT

## I.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Defendants expend considerable energy arguing that they are entitled to qualified immunity and thus the dismissal of plaintiffs' claims for damages.[1]  *See* Defs.' Coleman Br. at 7-19; Defs.' Hardy Br. at 20-23.  The task is impossible.

First, and tellingly, defendants do not even address whether their conduct was constitutional in the first instance.  This is a glaring omission given that the Supreme Court has expressly held that courts "must" first decide whether an officials' "conduct violated a constitutional right" before considering whether the right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Defendants glide by the first step in the analysis because it forces them to either (i) argue that *Wampler*[2] and *Earley*[3] were wrongly decided and must be overruled (to state the argument is to refute it) or (ii) acknowledge that *Wampler* and *Earley* control and thus establish the constitutional violation.  Dissatisfied with the options, defendants

---

[1]  Qualified immunity has nothing to do with whether plaintiffs are entitled to injunctive relief under *Ex Parte Young*, 209 U.S. 123 (1908).

[2]  *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936) (Cardozo, J.).

[3]  *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006).

instead choose to silently (and impliedly) acknowledge that *Wampler* and *Earley* control by hurrying to step two of the qualified immunity analysis; a step that cannot be reached without first acknowledging that plaintiffs' constitutional rights were violated.

Defendants' step two argument – that their administrative imposition and enforcement of PRS is not prohibited by clearly established constitutional law – faces two insurmountable hurdles; *Wampler* and *Earley*.

"For a right to be clearly established for purposes of qualified immunity, it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity." *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000); *see also Iqbal v. Hasty*, 490 F.3d 143, 170 (2d Cir. 2007) ("it is this Circuit's law that determines whether a right is clearly established for purposes of a qualified immunity defense").

The Supreme Court long ago established that the only constitutionally enforceable criminal sentence is that imposed by a sentencing judge. *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936) (Cardozo, J.). *Wampler* is the beginning and the end of the inquiry, but there is more. The Court of Appeals for the Second Circuit, in a decision that binds this Court, determined that defendants' extra-judicial imposition of PRS violated "clearly established Supreme Court precedent." *Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. 2006) (citing *Wampler*).

A.      ***Wampler* Bars Any Qualified Immunity Defense**

In *Wampler*, the Supreme Court unanimously held that only the judgment of a court can establish a defendant's sentence, and that imposition of an extra-judicial sentence violates a defendant's constitutional rights. "The only sentence known to the law is the sentence or judgment entered upon the records of the court . . . . Until corrected in a direct proceeding, it

-2-

says what it was meant to say, and this by an irrebuttable presumption." *Wampler*, 298 U.S. at 464.

The Supreme Court could not have been more clear: "A warrant of commitment departing in matter of substance from the judgment back of it is *void*." *Id.* at 465 (emphasis supplied). The Court in *Wampler* flatly rejected the argument that a sentence could ever be made more severe than that imposed by the sentencing judge:

> The argument is made that there is a practice the Maryland District to make the commitment broader than the judgment, and that the practice should be given the quality of law. There is no such overriding virtue in usage or tradition. The court speaks through its judgment, and not through any other medium.

*Id.* at 465. The Supreme Court in *Wampler* condemned any practice where the sentenced pronounced by the judge would not control; such a practice, explained the Court, would "lack[] in the formal safeguards that protect against mistake and perhaps against oppression." *Id.* at 465.[4]

---

[4]  The legal principle that informed *Wampler* was clearly established long before 1936.  Indeed, the state supreme court that granted Mr. Coleman's petition challenging illegally imposed PRS acknowledged as much:

> [T]he concept that a bureaucrat, rather than a judge, can impose sentence is such a radical departure from our jurisprudence that such a departure cannot be taken implicitly or by inference.  The very core of due process of law, since the Magna Carta banned the King's sheriffs from trying cases, is that a person cannot be subject to legal judgment or punishment except through the Courts. . . . To allow an agency of the executive branch to impose a sentence is to usurp the authority of the judicial branch and breaches the separation of powers set forth in the United States Constitution.

*Coleman v. New York State DOCS*, No. 36119/2007, 2008 WL 711730, *3-*4 (N.Y. Sup. Mar. 14, 2008).

Defendants only response to *Wampler* is to suggest that "a 70 year old Supreme Court decision" is too old to be followed by modern day government officials.  *See* Defs.' Coleman Br. at 12; *see also* Defs. Hardy Br. at 21, 22 n.13 (failing to distinguish *Wampler* from these facts and mentioning the case only once in the text of the brief and once in a footnote). Plaintiffs are aware of no authority (defendants cite none) for the proposition that Supreme Court opinions expire or become rancid over time.  Precisely the opposite is, of course, true.  Consider the doctrine of *stare decisis* and the fact that a unanimous Supreme Court opinion authored by one of the most widely revered American jurists of all time has stood for over 70 years.  The law established by *Wampler* is not just clear – although it is that – it is nearly inviolate.  Defendants' violated it.  They must be held accountable.

Defendants attempt to confuse the issue by pointing to state practices as justification for their *ultra vires* conduct.  Defs.' Coleman Br. at 15-19; Defs.' Hardy Br. at 17-22.  These arguments are fundamentally at odds with well-settled law and the Constitution itself, which expressly provides that the Supreme Court is the final arbiter of its meaning.  U.S. const. art. VI, sec. 2 (Supremacy Clause).  Nothing in a state statute or a state court opinion or state court practice can overrule the Supreme Court.  Nothing in a state statute, court opinion or practice can render defendants' decision to flout *Wampler* "objectively reasonable."

Defendants contend that it "cannot be seriously suggested that" *Wampler* should have "led the defendants to reasonably believe that the 'administrative imposition' of . . . post-release supervision was unconstitutional" because the facts of *Wampler* differ from those here. Defs.' Coleman Br. at 12.  That argument fails for two independent reasons: first, *Wampler* squarely applies to the facts in this case; and, second, even if the facts here were different in

-4-

some material way (they are not), defendants were nonetheless on notice that their conduct violated plaintiffs' constitutional rights.

Defendants' practice, challenged in this action, is precisely what the *Wampler* Court held unconstitutional: "The prisoner is detained, not by virtue of the warrant of commitment, but on account of the judgment and sentence. If the judgment and sentence do not authorize his detention, no 'mittimus' will avail to make detention lawful." 298 U.S. at 465. "Mittimus" in this context means a warrant for confinement or its equivalent, *i.e.*, a sentencing commitment sheet.

Even if the facts here differed materially from those in *Wampler* (they do not), this would not give rise to a qualified immunity defense. In *Hope v. Pelzer*, 536 U.S. 730 (2002), the Supreme Court reaffirmed the long-established principle of qualified immunity: "officials can . . . be on notice that their conduct violates established law *even in novel factual circumstances*." *Id.* at 741 (emphasis supplied). The Supreme Court examined existing precedent to determine whether defendants were on fair notice that their conduct violated the Constitution, and concluded that such precedent provided a "fair and clear warning" that "was sufficient to preclude the defense of qualified immunity at the summary judgment stage." *Id.* at 741-46. Applying that rule of decision here, there is no doubt that defendants are not entitled to qualified immunity – and certainly not at the motion to dismiss stage.

**B.**   ***Earley* Bars Any Qualified Immunity Defense**

In *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) ("*Earley I*"), the Court of Appeals for the Second Circuit followed the holding of *Wampler*: "Only the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's

liberty." *Id.* at 75 (citing *Wampler*, 298 U.S. at 464). The *Earley I* Court left no room for doubt as to *Wampler*'s applicability to the situation here: "clearly established Supreme Court precedent renders [a] PRS term added to [an individual's] sentence by DOCS invalid." 451 F.3d at 76 (referencing *Wampler*). Based on this holding, the Second Circuit granted a writ of habeas corpus because the denial of petitioner Earley's claim by the New York courts was contrary to clearly established United States Supreme Court precedent. *See* 28 U.S.C. §2254(d)(1).

　　　　The Second Circuit subsequently adhered to its decision in *Earley I*, when it denied a petition for rehearing. *Earley v. Murray*, 462 F.3d 147 (2d Cir. 2006) ("*Earley II*"). The Court repeated, "*Wampler* undeniably stands for the proposition that the only valid terms of a defendant's sentence are the terms imposed by the judge." *Id.* at 149. The Court rejected the argument that PRS was mandated by New York law as part of a determinate sentence and did not have to be imposed by the sentencing court. "[W]hatever conceptualization [the State of New York] has about the function of New York Penal Law sections 70.00 and 70.45, they cannot operate to undermine the protections contained in the Federal Constitution. And as *Wampler* requires the custodial terms of sentences to be explicitly imposed by a judge, any practice to the contrary is simply unconstitutional and cannot be upheld." 462 F.3d at 150.

　　　　Faced with the unambiguous commands of the *Wampler* and *Earley*, defendants point out that *Earley* was a federal habeas case and not a qualified immunity case and that the concept of "clearly established Supreme Court precedent" sufficient to reverse a state court judgment is doctrinally distinct from "clearly established" federal law sufficient to preclude qualified immunity. Defs.' Hardy Br. at 23. True, they are doctrinally and analytically distinct. It is not true, however, as defendants speciously claim, that "clearly established" for habeas

purposes "has absolutely no bearing" on whether federal law was "clearly established" in the qualified immunity context. *Id.*

Indeed, the only Second Circuit case comparing the two explains that in the habeas context, a writ may only be granted if the state court's adjudication was inconsistent with "clearly established Federal law, as determined by the Supreme Court," which includes "'only holdings of Supreme Court decisions and does not include dicta.'" *United States v. Brown*, 352 F.3d 654, 665 n.9 (2d Cir. 2003) (citing *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003)). By contrast, a qualified immunity defense can be defeated if federal law is clearly established by either the Supreme Court *or* the Second Circuit and "even under that standard rights can be clearly established in dicta." *Id.* (citing *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 56 (2d Cir. 2003)).

Thus, the standard for determining whether federal law is clearly established so as to defeat qualified immunity is significantly more relaxed than the habeas standard because the former (1) includes decisional law from the Supreme Court *and* the Second Circuit, and (2) includes the holdings of such cases *and* dicta. *Id.* Given these two distinctions, it is difficult to imagine how there could ever be a circumstance where federal law could be clearly established by the holding of a Supreme Court opinion sufficient to justify habeas relief, and yet not defeat a qualified immunity defense on the same facts.[5] Whether it can be imagined or not, such a circumstance is not presented here.

---

[5] *Cf. Wesley v. City of New York*, No. 05 Civ. 9227, 2006 WL 2882972 at *4 (S.D.N.Y. Oct. 10, 2006) (right not clearly established for qualified immunity purposes in part because not clearly established for habeas relief).

The Second Circuit has held that conduct alleged in plaintiffs' complaint violates clearly established Supreme Court precedent that has existed for over 70 years.  This Court is bound by that holding.  Defendants' motions to dismiss plaintiffs' cases on qualified immunity grounds should be denied.

## II.    THIS COURT HAS SUBJECT MATTER JURISDICTION

Defendants assert that this Court lacks subject matter jurisdiction over the putative class action.  Defs.' Hardy Br. at 17-19.

Defendants proclaim that the state legislation enacted on June 20, 2008 prompted them to stop their illegal DOCS Policy of imposing PRS on individuals who were never sentenced to PRS.[6]  *Id.*  As a result of this change, defendants argue, plaintiffs' putative class action is "no longer extant" and should be dismissed for lack of subject matter jurisdiction.  *Id.* at 19.  Defendants' argument is misleading and wrong.

It is true that "federal judicial power extends only to actual cases and controversies."  *Ross v. Bank of America, N.A.*, 542 F.3d 217, 222 (2d Cir. 2008) (internal quotations omitted); *see* U.S. Const. Art. III, § 2.  "To establish constitutional standing under Article III, [] plaintiff[s] must have suffered [1] an injury in fact that is distinct and palpable; [2] the injury must be fairly traceable to the challenged action; and [3] the injury must be likely redressable by a favorable decision."  *Ross*, 524 F.3d at 222.

Each requirement of Article III standing is easily met.  First, plaintiffs and the putative class have suffered distinct and palpable injuries in fact because each has been subject to *ultra vires* punishment: the imposition of PRS by defendants which was never authorized by any

---

[6] As set forth below, defendants' representation that they have ended their illegal DOCS Policy is misleading at best.

sentencing judge.  Plaintiffs and many of putative class members have even been incarcerated for allegedly violating the illegal PRS conditions.  Second, there is no question that these injuries were directly caused by the challenged action here, namely the extra-judicial DOCS PRS Policy. Third, it is appropriate for plaintiffs to seek redress for these violations of their federal constitutional rights in this Court.

Plaintiffs' injuries can be redressed by a favorable decision that, among other things: (1) enjoins and directs defendants Fisher and Annucci to cease imposing PRS upon members of the plaintiff class; (2) requires defendants Fisher and Annucci to lift all effects of PRS, including without limitation: (a) vacating all terms of PRS currently being imposed upon members of the class, and (b) vacating all warrants for the arrest of members of the class based on alleged violations of PRS; (3) directs the equitable disgorgement of the monthly fees plaintiffs have been required to pay for years of unconstitutionally imposed PRS; and (4) awards compensatory and punitive damages against defendants in their individual capacities.

Contrary to defendants' argument, the enactment of the June 30, 2008 legislation does not "moot[]" plaintiffs' claims.  Defs.' Hardy Br. at 19.  This is particularly so because defendants *continue to enforce the illegal DOCS PRS Policy.*  Plaintiff Hardy and many other members of the putative class who were never sentenced to PRS are forced to abide by the terms and conditions of PRS.  Plaintiffs have been unjustifiably denied the right to vote and will continue to be denied that right until the unlawful imposition of PRS is enjoined.  If an individual fails to meet the PRS conditions, he is violated, an arrest warrant is issued, and he is imprisoned for allegedly violating PRS.

Imprisonment results even where an individual's sentencing minutes – which clearly reflect that he was never sentenced to PRS – are available at the parole revocation proceeding.  Defendants' conduct is unacceptable.  Their claim, that the illegal DOCS PRS Policy "is no longer extant," is as false as it is opaque.  Defs.' Hardy Br. at 19.

Moreover, even if defendants voluntarily ceased enforcing PRS altogether tomorrow, these actions would not be moot because plaintiffs seek damages and various types of equitable relief, such as disgorgement, that do no turn on defendants' steadfast refusal to follow the law.

The violations of plaintiffs' federal constitutional rights, and those of the putative class, are redressable in this Court.  Defendants' attempt to have the case dismissed on mootness grounds should be denied.

## III.    *HECK V. HUMPHREY* IS NOT A BASIS FOR DISMISSAL

Defendants seek to dismiss both cases on *Heck v. Humphrey* grounds.  Defs.' Coleman Br. at 21-23; Defs.' Hardy Br. at 24.  The argument has not merit.  The Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) is unambiguous:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . . A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the

-10-

> plaintiff can demonstrate that the conviction or sentence has
> already been invalidated. *But if the district court determines that
> the plaintiff's action, even if successful, will **not** demonstrate the
> invalidity of any outstanding criminal judgment against the
> plaintiff, the action should be allowed to proceed . . . .*

*Id.* (emphasis in italics supplied, emphasis in bold in original, footnotes omitted).

These cases are the antithesis of *Heck*. Plaintiffs do not challenge the validity of

their convictions. They do not challenge the validity of their judicially imposed sentences. They

do not challenge the validity of the criminal court's judgments against them.

Plaintiffs' challenge the extra-judicial imposition and enforcement of PRS. The

very point of plaintiffs' claim is that PRS was not imposed by the judge or court that presided

over plaintiffs' criminal cases, convictions and sentences. Seeking redress for the misconduct of

state executive branch administrators in violation of the Constitution is at the core of 42 U.S.C. §

1983.

Plaintiffs' liberty has been restricted by the terms and conditions of PRS.

Plaintiffs, and many of the absent class members they seek to represent, have even been

incarcerated for allegedly violating the unlawful conditions of PRS. They are entitled to seek

damages for their injuries. The success of plaintiffs' claims "will *not* demonstrate [or even

imply] the invalidity of any outstanding criminal judgment" against them. *Heck*, 512 U.S. at 487.

These "action[s] should be allowed to proceed." *Id.*

## IV.    THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFFS' CLAIMS

Defendants argue that these cases should be dismissed because neither Mr.

Coleman nor the plaintiffs in the putative class action timely filed their claims within the three-

year statute of limitations for 42 U.S.C. § 1983.  Defs.' Coleman Br. at 26-27; Defs.' Hardy Br. at 25-26.  Defendants are wrong.

        As an initial matter, it is important to note that the statute of limitations has no bearing on the injunctive relief that plaintiffs seek in the putative class action.  Defendants' argument to the contrary suggests that after an unconstitutional state statute has been enforced against an individual for more than three years, that individual cannot ever challenge the statute even though it continues to violate his rights.  This argument is at odds with the principles of *Ex Parte Young*, § 1983, and the Supremacy Clause.  *See, e.g.*, *Kuhnle Bros. Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) ("A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within [three] years of its enactment.  The continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations.") (collecting cases).  It should be rejected.

        The next issue is whether plaintiffs' claims for damages under § 1983 were filed within the statute of limitations.  They were.

        A § 1983 claim does not accrue until a plaintiff actually suffers an injury.  In the Second Circuit, "the crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." *Eagleston v. Guido*, 41 F.3d 865, 871 (1994) (internal quotations and citation omitted).  This is when the plaintiff "knows or has reason to know of the harm." *Id.* (internal quotations omitted).  *Accord Wallace v. City of Chicago*, 440 F.3d 421, 427 (7th Cir. 2006) (in most § 1983 cases, "claims . . .

-12-

accrue at the time of injury"); *Venegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir. 1983) (in §

1983 cases, "a claim does not accrue until the primary injury complained of occurs").

Here, each plaintiff and member of the putative class first had reason to know of

the violation of their constitutional rights when actually subjected to PRS after the maximum

expiration date of their judicially imposed sentences.  Thus, the statute of limitations for a § 1983

claim begins to run on the first day after an individual's maximum determinate sentence expires,

when he is illegally subjected to PRS for the first time.

Defendants erroneously argue that Penal Law § 70.45 put plaintiffs on notice that

they were subject to PRS at the time of their sentencing hearings, so the statute of limitations

began to run from the moment of sentencing.  Defs.' Coleman Br. at 26-27; Defs.' Hardy Br. at

25-26.  The mere existence of Penal Law § 70.45 at the time of plaintiffs' sentencing proceedings

does not determine the accrual date for a § 1983 action for several reasons.

First, as a matter of fact, plaintiffs were *not* put on notice at the time of their

sentencing proceedings that they would be subject to PRS.  They were never sentenced to PRS.

That is the gravamen of their complaints.  Moreover, at the time of their sentencing proceedings,

plaintiffs could not have been expected to foresee that they would be subject to defendants' *ultra*

*vires* policy of imposing PRS on those who were never sentenced to it.  As the Supreme Court

made clear in *Wampler*:

> The only sentence known to the law is the sentence or judgment entered upon the
> records of the court.  If the entry is inaccurate, there is a remedy by motion to
> correct it to the end that it may speak the truth. . . . Until corrected in a direct
> proceeding, it says what it was meant to say, and this by an irrebuttable
> presumption. In any collateral inquiry, a court will close its ears to a suggestion
> that the sentence entered in the minutes is something other than the authentic
> expression of the sentence of the judge.

298 U.S. at 464.  Since courts "close [their] ears to a suggestion that the sentence entered in the minutes is something other than the authentic expression of the sentence," plaintiffs in this case were entitled to do the same.  *Id.*  Defendants made no motion to "correct" the sentence.  *Id.*; *see also Earley*, 451 F.3d at 76 ("when DOCS discovered the oversight made by [each plaintiff's] sentencing judge, the proper course would have been to inform the state of the problem, not to modify the sentence unilaterally").

Indeed, even without *Wampler*, it is absurd to assume that plaintiffs should have divined that defendants would subject them to PRS even though the judge did not do impose it as part of their sentence.  The reasonable assumption is that the sentence imposed by the judge will be the sentence enforced by defendants.  Plaintiffs knew with certainty that their rights were violated when they were subjected to PRS after their maximum determinate sentence had expired.  That is when their claims accrued.

Moreover, plaintiffs Smith and Hardy each accepted plea bargains that included no PRS terms, and plaintiff Cross accepted a plea bargain that included only 1.5 years PRS.  Under long established federal and state court precedent, each of these individuals was entitled to specific performance of that bargain, or the opportunity to withdraw the guilty plea.  *See Santobello v. New York*, 404 U.S. 257, 263 (1971) (criminal defendant entitled to "specific performance on the agreement on the plea . . . or . . . the opportunity to withdraw his plea of guilty"); *Palermo v. Warden*, 545 F.2d 286, 296-97 (2d Cir. 1976) ("where a defendant pleads guilty because he reasonably relies on promises by prosecutors which are in fact unfulfillable, he has a right to have those promises fulfilled. . . . Where appropriate, courts have not hesitated to mandate specific performance of the [plea] agreement."); *People v. Selikoff*, 35 N.Y.2d 227, 241

-14-

(1974) (same).  Plaintiffs appropriately relied on this expectation of specific performance of their plea bargains.  Thus, their injuries did not accrue until it became obvious that defendants had disregarded their plea bargains entirely by subjecting plaintiffs to *ultra vires* PRS.

It cannot be seriously argued that plaintiffs were on notice of these injuries before they actually occurred.  Until defendants unilaterally violated plaintiffs' plea bargains and the sentences imposed by judges with *ultra vires* PRS, plaintiffs could not have expected that defendants would violate their federal constitutional rights.  Plaintiffs are entitled to rely on the expectation, however unfounded it has now proven to be, that defendant government officials will abide by the Constitution.  Defendants' motion to dismiss on statute of limitations grounds should be denied.

## V.    ABSTENTION IS NOT WARRANTED IN MR. COLEMAN'S CASE

Defendants invoke the *Pullman* and *Younger* abstention doctrines.  Defs.' Coleman Br. at 23-25.  Neither is applicable.

Federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *see also, e.g., England v. La. Bd. of Med. Examiners*, 375 U.S. 411, 415 (1964) ("'When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.'") (quoting *Willcox v. Consol. Gas Co.*, 212 U.S. 19, 40 (1909)); *Cohens v. Virginia*, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given").  The Supreme Court has long emphasized that "[a]bstention rarely should be invoked, because the federal courts have a virtually unflagging . . . obligation to exercise the jurisdiction given them."  *Ankenbrandt v.*

*Richards*, 504 U.S. 689, 705 (1992) (citing *Co. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).[7]  The strong policy disfavoring abstention applies with special force in civil rights cases because "[s]ection 1983 provides a unique federal remedy based on the Constitution."  *C & A Carbone, Inc. v. Town of Clarkstown*, 770 F. Supp. 848, 853 (S.D.N.Y. 1991).

### A.    Abstention Under *Pullman* Is Improper

Under the doctrine first announced in *Railroad Commission of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), a federal court may defer ruling on, but not dismiss, a federal case if there is an ambiguity in state law, which, if narrowly construed, would obviate the necessity of reaching the constitutional question.  "[F]ederal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided."  *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984).  The resolution of the federal question must depend upon the interpretation to be given to the state law.  *Pullman* is limited to "those cases in which the construction of a state statute by a state court could avoid or modify the federal constitutional question."  *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 601 (2d Cir. 1988); *see also Kusper v. Pontikes*, 414 U.S. 51, 54 (1973) (*Pullman* applies only if there is a "challenged state statute . . . susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching a federal constitutional question").

---

[7] *See also City of Houston v. Hill*, 482 U.S. 451, 467 (1987) (abstention is "the exception and not the rule"); *Zwickler v. Koota*, 389 U.S. 241, 251-52 (1967) ("abstention cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim"); *Williams v. Lambert*, 46 F.3d 1275, 1281 (2d Cir. 1995) (abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and "[a]bdication of the obligation to decide cases can be justified . . . only in . . . exceptional circumstances").

A district court may not abstain and issue a stay order under *Pullman* unless three criteria are met: "(1) an unclear state statute or uncertain state law issue; (2) determination of the federal issue turns upon resolution of the unclear state law provision; and (3) the state law provision is susceptible to an interpretation that would avoid or modify the federal constitutional question presented." *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 126 (2d Cir. 1995); *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004).

Not one of these factors is present here. The only state law that has any bearing on Mr. Coleman's federal claim is unmistakably clear. New York Penal Law § 70.45 requires that persons convicted of various enumerated offenses should be sentenced to defined terms of PRS in addition to a determinate sentence of incarceration. There is nothing ambiguous about it. And, although the statute commands that PRS be imposed, the New York Court of Appeals has explicitly held that only a judge – not DOCS – can impose PRS. In *Garner*, the Court of Appeals ruled unequivocally that "only a judge may impose a PRS sentence . . . DOCS may not do so." *Garner v. New York State DOCS*, 10 N.Y.3d 358, 360 (N.Y. 2008).

The *Garner* decision is consistent with the federal constitution. The federal constitution commands that a penal sentence can only be imposed by a court. *Wampler*, 298 U.S. 460. The interpretation of the plain meaning of Penal Law § 70.45 thus has no bearing on the resolution of the federal constitutional question presented. This is handily confirmed by the Second Circuit's analysis of the state statute and its impact on the constitutional analysis in *Earley I* and *Earley II*.

-17-

Defendants do not meaningfully contend otherwise. Instead, they devote most of their *Pullman* argument to contending that state legislation enacted on June 30, 2008 requires resentencing of certain individuals "to either a new sentence with PRS or a new sentence which is a legal sentence without PRS." Defs.' Coleman Br. at 23-24. While this may be true, it has nothing to do with whether this Court should stay its hand under *Pullman*. Mr. Coleman seeks redress based on violations of his federal constitutional rights. Resolution of that federal constitutional issue does not depend on any interpretation given to N.Y. Penal Law § 70.45. *See United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 596 (2d Cir. 1989) (holding district court abused its discretion in relying on *Pullman* abstention because "the federal constitutional issues presented do not depend upon resolution of the state law issues"); *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 602 (2d Cir. 1988) (reversing district court that relied on *Pullman* abstention where "[t]he fundamental issue concerns a deprivation under a state law of federally guaranteed due process").

**B.    The *Younger* Doctrine Does Not Apply**

To justify a refusal to assume jurisdiction on the grounds set forth in *Younger v. Harris*, 401 U.S. 37 (1971), this Court must conclude that the relief Mr. Coleman seeks will interfere with "ongoing" state court enforcement proceedings. *Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 72 (2d Cir. 1990). "*Younger* abstention does, in fact, depend on the 'technicality' of *ongoing* judicial proceedings." *Agriesti v. MGM Grand Hotels*, 53 F.3d 1000, 1002 (9th Cir. 1995). Where no state proceedings are ongoing, *Younger* abstention is inapplicable. *See, e.g.*, *Zablocki v. Redhail*, 434 U.S. 374, 380 n.5 ("the District Court was correct in finding . . . *Younger* [abstention] inapplicable, since there was no pending state-court proceeding in which

-18-

appellee could have challenged the [state] statute"); *Pathways, Inc. v. Dunne*, 329 F.3d 108, 114 (2d Cir. 2003) (remanding to district court for further proceedings because "the state court proceedings that gave rise to the District Court's *Younger* concerns are no longer pending"); *FOCUS v. Allegheny Co. Court of Common Pleas*, 75 F.3d 834, 843 (3d Cir. 1996) (reversing *Younger* abstention where ongoing state judicial proceeding had been terminated).

Here, defendants frivolously claim that "[s]tate action concerning the plaintiff is still ongoing."  Defs.' Coleman Br. at 25.  But they fail to identify any state action because *there is no pending state action concerning Mr. Coleman.*  Defendants' vague assertion that "[i]ssues pertaining to plaintiff's sentencing are ongoing" means nothing.  Without more, it certainly cannot deprive Mr. Coleman of his ability to seek redress for violations of his federal constitutional rights in federal court.

Mr. Coleman is not challenging his conviction here.  He is not challenging his sentence.  Indeed, Mr. Coleman's prosecution and any right to appeal that may have followed ended years ago.  Obviously, nothing this Court does can interfere with Mr. Coleman's long ago completed criminal case.  Because this is undeniably true, defendants' argument that Mr. Coleman may raise his federal claims in state court, *id.* at 24, gets them nowhere.  *Every* plaintiff that seeks to vindicate his federal constitutional rights in federal court has the opportunity to file the same action in state court.

Defendants' arguments based on *Pullman* and *Younger* abstention should be rejected.

## VI.   DEFENDANTS WERE PERSONALLY INVOLVED IN VIOLATING MR. COLEMAN'S CONSTITUTIONAL RIGHTS

Defendants claim that Mr. Coleman's complaint does not allege that defendants were personally involved in depriving him of his constitutional rights.  Defs.' Coleman Br. at 19-20.  This argument is frivolous.

Mr. Coleman's complaint plainly alleges that all defendants named in his case were personally involved in violating his constitutional rights.  *See* Amended Complaint, ¶¶ 10-19, 22-23.  It explains that defendants Fischer, Annucci,[8] LeClaire, and Goord were responsible for the illegal DOCS PRS Policy, since they were "responsible for the policy, practice, supervision, implementation, and conduct of all DOCS personnel . . . [and] for enforcing the rules of DOCS, and for ensuring that DOCS personnel obey the Constitution and laws of the United States."  *Id.* at ¶¶ 10-13.  It also explains that defendants Del Rio, Zwaryczuk, Cudney, and Henry were each personally "responsible for enforcing terms and conditions of PRS on Mr. Coleman notwithstanding that the imposition of PRS was itself unlawful and unconstitutional." *Id.* at ¶¶ 14-17.  It further alleges that, at the time the complaint was filed, defendant Martinez "continue[d] to enforce terms and conditions of PRS on Mr. Coleman notwithstanding that the imposition of PRS was itself unlawful and unconstitutional."  *Id.* at ¶ 18.

---

[8]  Defendant Annucci's personal involvement is set forth in abundant detail in his own affidavit. *See* Affirmation of Anthony J. Annucci, dated June 4, 2008 ("Annucci Aff.") ¶¶ 39-43 (detailing defendant Annucci's efforts to identify the thousands of persons effected by DOCS' unconstitutional policy in early 2007 *after* the Second Circuit's opinions in *Earley)* (attached as Ex. 1 to the Reply Declaration of Matthew D. Brinckerhoff, dated August 15, 2008, submitted in support of plaintiffs' motion for class certification in the *Hardy* case).

These allegations satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 8  (complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief" and "[e]ach averment of a pleading shall be simple, concise, and direct.")  The purpose of this pleading standard "is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  The allegations in Mr. Coleman's complaint about defendants' personal involvement in depriving him of his constitutional rights put all defendants on notice of his claim.

Likewise, Mr. Coleman's allegations of defendants' personal involvement satisfy the requirements of § 1983.  The complaint plainly alleges that defendants Fischer, Annucci, LeClaire, and Goord "created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue." *Wright v. Smith*, 21 F.3d 496 (2d Cir. 1994).  The complaint also plainly alleges that defendants Del Rio, Zwaryczuk, Cudney, and Henry "directly participated in the infraction." *Id.*

To the extent that defendants' argument is that "defendants did not create [the illegal DOCS PRS] policy," Defs.' Coleman Br. at 20,[9] that is an issue of fact that must be resolved by an appropriate trier of fact.  It is no basis for dismissing Mr. Coleman's complaint.

---

[9]  Defendants' defense based lack of personal involvement rings particularly hollow because plaintiffs served witness interrogatories on August 13, 2008 seeking the identities of everyone involved in defendants' unconstitutional conduct.  Defendants' responses were due 30 days later on September 12, 2008.  Defendants have not sought additional time or moved for a protective order.  *See* Fed. R. Civ. P. 33(b) (requiring response to interrogatories within 30 days and providing for waiver of objections if objections are not timely stated).

## VII.   THE ELEVENTH AMENDMENT DOES NOT BAR MR. COLEMAN'S RELIEF

Defendants argue that Mr. Coleman's claim is somehow barred by the Eleventh Amendment.  Defs.' Coleman Br. at 26-27.  Defendants are plainly wrong.

Mr. Coleman sued defendants in their individual capacities for damages.  *See* Coleman Amended Compl. at 10-19.  Such an action is not barred by the Eleventh Amendment. *See Ex Parte Young*, 209 U.S. 123.  Defendants' argument should be rejected.

### CONCLUSION

For the foregoing reasons, defendants' motions to dismiss Mr. Coleman's case and the putative class action should be denied.

Dated: September 26, 2008
        New York, New York

EMERY  CELLI  BRINCKERHOFF
& ABADY LLP

By: _____/s/_____
     Matthew D. Brinckerhoff (MB-3552)
     Elora Mukherjee (EM-0921)

75 Rockefeller Plaza, 20th Floor
New York, NY 10019
(212) 763-5000
*Attorneys for All Plaintiffs*

LAW OFFICES OF JOSHUA L. DRATEL, P.C.

By:  Aaron Mysliwiec (AM-6258)

2 Wall Street, 3rd Floor
New York, NY 10005
(212) 792-5132
*Attorneys for Plaintiffs Hardy, Cross and Smith*

-22-