UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LAWRENCE HARDY, RAMONE CROSS, and, : 08 Civ. 2460 (SHS)
SHAWN SMITH, individually and on behalf of :
all others similarly situated, : OPINION & ORDER
:
Plaintiffs, :
:
-against- :
:
BRIAN FISCHER, in his capacity as Commissioner :
of the New York State Department of Correctional :
Services (DOCS), and in his individual capacity; :
ANTHONY J. ANNUCCI, in his capacity as Deputy :
Commissioner and Counsel for DOCS, and in his :
individual capacity; LUCIEN J. LECLAIRE, JR., :
former Acting Commissioner of DOCS, in his :
individual capacity; GLENN S. GOORD, former :
Commissioner of DOCS, in his individual capacity; :
and JOHN/JANE DOES 1-50 (DOCS Supervisory, :
Training, and Policy Personnel), :
:
Defendants. :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

Plaintiffs Lawrence Hardy, Ramone Cross, and Shawn Smith bring this action pursuant to 42 U.S.C. § 1983 challenging the imposition and enforcement of post-release supervision ("PRS") by the New York State Department of Correctional Services ("DOCS"). Specifically, plaintiffs contend that the imposition of PRS by anyone other than a judge violates the Due Process Clause of the Fourteenth Amendment by depriving plaintiffs of their constitutional right to be sentenced only by a judge. Plaintiffs assert that although this right was clearly established by the U.S. Supreme Court in 1936 in *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936), and by the U.S. Court of Appeals for the Second Circuit in 2006 in *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), DOCS continued to impose and enforce extra-judicial sentences of PRS on New York State criminal defendants administratively pursuant to N.Y. Penal Law §

1

70.45, which mandates the imposition of PRS for certain violent offenders sentenced to determinate sentences.[1] Here, plaintiffs—on behalf of a putative class of similarly situated individuals—seek a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 enjoining defendants from enforcing the conditions of extra-judicially imposed PRS past the maximum expiration date of plaintiffs' determinate sentences, nullifying the conditions of PRS so imposed, and vacating warrants issued for violations of extra-judicially imposed PRS after the maximum expiration date of plaintiffs' determinate sentences.[2] Because plaintiffs have not shown a likelihood of success on the merits of their claims for injunctive relief, their motion for a preliminary injunction is denied, as is their motion to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(2).[3]

## I. HISTORY OF THIS ACTION

In April 2008, shortly after this action was filed, the New York Court of Appeals decided *Garner v. New York State Department of Correctional Services*, 10 N.Y.3d 358, 889 N.E.2d 467 (2008) and *People v. Sparber*, 10 N.Y.3d 457, 889 N.E.2d 459 (2008), which held, *inter alia*, that PRS imposed by anyone other than a judge violates New York state law.[4]

In light of those state decisions, DOCS developed a procedure to review the sentencing

---

[1] In April 2008, the New York State Court of Appeals ruled that extra-judicially imposed PRS violates New York state law. *See Garner v. N.Y. State Dep't of Corr. Servs.*, 10 N.Y.3d 358, 889 N.E.2d 467 (2008); *People v. Sparber*, 10 N.Y.3d 457, 889 N.E.2d 459 (2008); *see also People v. Williams*, --- N.Y.3d ---, 2010 WL 605257 (N.Y. Feb. 23, 2010).

[2] Plaintiffs originally sought the immediate release of those individuals who are currently in prison for violating their extra-judicially imposed PRS after the after the maximum expiration date of their determinant sentences, but they have withdrawn this claim for relief.

[3] Plaintiffs state in their motion papers that they limit their motion for class certification at this time to one for certification of an injunctive class pursuant to Federal Rule of Civil Procedure 23(b)(2), represented by Hardy and Cross. (*See* Mem. in Support of Pls.' Motion for Class Certification at 1 n.1.) Accordingly, denial of the motion for injunctive relief moots the motion for certification of an injunctive class.

[4] The New York legislature subsequently passed N.Y. Corr. Law § 601-d "to provide a mechanism for courts to consider resentencing defendants serving determinate sentences without court-ordered postrelease supervision terms." *Williams*, 2010 WL 605257, at * 2.

2

minutes for each individual on whom PRS may have been imposed improperly and to determine whether the sentencing judge ordered a term of PRS. For those individuals who did not have a term of PRS pronounced by a judge or for whom no sentencing minutes could be located, DOCS would ask the sentencing court either to resentence the individual or to issue an order that the individual was not subject to further PRS.

Plaintiffs subsequently filed a First Amended Complaint in which they substituted two new plaintiffs—Lawrence Hardy and Ramone Cross—for plaintiff Wesley Gabriel, while retaining plaintiff Shawn Smith.[5] After considering the arguments and submissions of the parties, the Court makes the following findings of facts and conclusions of law.

## II. FINDINGS OF FACT

### A. DOCS Imposed and Enforced Extra-Judicial PRS

In 2006, the Second Circuit followed a seventy-year-old Supreme Court decision in *Hill v. United States ex rel. Wampler*, 298 U.S. at 460, and held that the New York State Department of Corrections' imposition of extra-judicial sentences of PRS violated clearly established law. *Earley*, 451 F.3d at 76-77. Despite the decisions in *Wampler* and *Earley*, DOCS continued to impose and enforce PRS on individuals such as plaintiffs despite the fact that a judge had never sentenced them to PRS. (Am. Compl. ¶¶ 3, 36.)

### B. The Named Plaintiffs

#### 1. *Lawrence Hardy*

On October 2, 2002, Lawrence Hardy received a four-year determinate sentence. (Am. Compl. ¶ 41.) The state court judge did not impose a term of PRS as part of Hardy's sentence and his sentencing commitment sheet did not refer to PRS. (*Id.* ¶ 42.) The expiration date of

---

[5] The caption of this action is hereby amended to delete the name of plaintiff Gabriel and add the names of plaintiffs Hardy and Cross to that of Smith.

Hardy's maximum determinate sentence was September 9, 2006, and he received a one-seventh reduction for good time, bringing his release date to February 10, 2006. DOCS imposed a five year term of PRS upon Hardy's release. (*Id.* ¶¶ 43-45.) On October 15, 2007, after the expiration of Hardy's maximum determinate sentence, DOCS reincarcerated him for alleged violations of PRS. (*Id.* ¶¶ 45-46.) Hardy was released on March 11, 2008, although he remains subject to the conditions of PRS imposed by DOCS, including travel restrictions. (*Id.* ¶¶ 47-48.)

    2.    *Ramone Cross*

On May 24, 2002, a judge sentenced Ramone Cross to a four-year determinate sentence and a one-and-one-half year sentence of PRS. (*Id.* ¶ 51.) Due to credit for time served awaiting trial, Cross's determinate sentence expired on February 20, 2003, and his judicially imposed PRS expired on August 20, 2004. (*Id.* ¶¶ 52-53.) Nonetheless, DOCS imposed a five-year term of PRS, which was to expire on February 20, 2008. (*Id.* ¶ 54.) In August 2007, Cross was arrested and charged with promoting prison contraband; he pleaded guilty to disorderly conduct and was sentenced to fifteen days in jail. After his release in August or September 2007, Cross was informed by his parole officer that he had violated the conditions of the PRS term that DOCS had imposed on him. (*Id.* ¶¶ 55-56.) An arrest warrant was issued for Cross (*id.* ¶¶ 57-58), but it has been stayed pending the determination of this motion.

    3.    *Shawn Smith*

In July 2000, Shawn Smith received a determinate sentence of seven years for two counts of burglary in the second degree, and an indeterminate sentence of two to four years for two counts of burglary in the third degree, to run concurrently. (*Id.* ¶¶ 62.) His maximum determinate sentence expired on October 26, 2006 because of the time served awaiting trial. (*Id.* ¶ 64.) Smith was released on October 26, 2005 after a reduction for good conduct. (*Id.* ¶ 65.) DOCS imposed five years of PRS, and, on January 16, 2007, reincarcerated Smith for allegedly

4

violating the terms of his PRS by moving to a new home, missing a home visit with his parole officer, and skipping meetings of a drug program. (*Id.* ¶¶ 66-67.)

While reimprisoned, Smith filed a petition for a writ of habeas corpus in state court. On December 21, 2007, the Bronx County Supreme Court granted Smith's petition, finding that DOCS's imposition of PRS was illegal. (*Id.* ¶¶ 68-69; *see also Smith v. N.Y. State Div. of Parole*, No. 75043-07 (Bronx Co. Sup. Ct. Dec. 21, 2007).) After eleven months in prison, Smith was released on December 24, 2007. (Am. Compl. ¶ 70.)

### III. CONCLUSIONS OF LAW

#### A. Preliminary Injunction Standard

A party seeking a preliminary injunction must demonstrate "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Monserrate v. N.Y. State Senate*, --- F.3d ----, 2010 WL 917591, at *3 (2d Cir. March 16, 2010) (quoting *Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009)). Where a preliminary injunction is sought against government action taken in the public interest pursuant to a statutory or regulatory scheme, however, the party seeking the injunction cannot simply meet the less-demanding "fair ground for litigation" standard; instead, a "likelihood of success" is required. *Id.* In the case of a mandatory injunction, where "'(i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits,'" an even more rigorous standard applies—the movant must show a "clear" or "substantial" showing of likelihood of success. *Forest City Daly Housing, Inc. v. Town of N. Hempstead*, 175 F.3d 144, 150 (2d Cir. 1999) (quoting *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995)).

Because plaintiffs here seek a preliminary injunction "against government action taken in the public interest" and because that injunction will alter the status quo, plaintiffs must meet the more rigorous standard requiring a clear or substantial showing of likelihood of success. As set forth below, however, even if the lesser standard applied and plaintiffs merely needed to demonstrate a simple likelihood of success, they have not satisfied either burden.

B.   Irreparable Harm

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985) (internal quotation marks and citations omitted).

Alleged violations of constitutional rights are commonly considered irreparable injuries for the purposes of a preliminary injunction. *See Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (deprivation of a constitutional right is per se irreparable injury); *see also Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). Furthermore, an ongoing constitutional violation more closely resembles irreparable injury than does a constitutional violation that was suffered in the past and which can be remedied only by money damages. *See Five Borough Bicycle Club v. City of New York*, 483 F. Supp. 2d 351, 361 (S.D.N.Y. 2007). Ongoing unlawful deprivations of liberty and the threat of unlawful detention and reimprisonment would violate plaintiffs' constitutional rights and therefore constitute quintessential irreparable harm.

Defendants argue that because plaintiffs have not made timely attempts to challenge the conditions of their PRS, plaintiffs cannot prevail on an argument that they will be irreparably harmed without immediate relief. Defendants also assert that the risk of releasing hundreds of possibly violent felons from their PRS requirements tips the balance of hardships in the State's

6

favor and justifies the need for individual determinations in each case, rather than a blanket injunction.

Defendants' argument fails on both counts. The possibility that plaintiffs already have suffered injuries by being subjected to allegedly illegal PRS does not eliminate the irreparable nature of any injuries that they will suffer in the future without injunctive relief, and the Court does not find that any delay in filing this lawsuit justifies the denial of interim relief from an ongoing alleged constitutional violation. *See Five Borough*, 483 F. Supp. 2d at 361. As to the balance of hardships, it is irrelevant, as the Court is proceeding on the likelihood-of-success prong of the injunctive relief test. Accordingly, the Court accepts for purposes of this opinion that the threat of irreparable harm is present and will proceed to the question of whether plaintiffs have demonstrated a clear or substantial likelihood of success on their claims for injunctive relief.

    C.    Likelihood of Success on the Merits

    1.    *Legal Standard*

As the U.S. Supreme Court has noted, "the two most fertile sources of federal-court prisoner litigation" are 42 U.S.C. § 1983 for deprivation of civil rights and the federal habeas corpus statute, 28 U.S.C. § 2254, for a prisoner held in violation of federal law. *Heck v. Humphrey*, 512 U.S. 477, 480 (1994). Both statutes "provide access to a federal forum for claims of unconstitutional treatment at the hands of state officials." *Id.* They differ, however, in two important ways: (1) a prisoner must exhaust his state remedies before filing a habeas petition but need not do so before filing a section 1983 action, *see id.* at 480-81, and (2) a prisoner can seek monetary damages pursuant to section 1983 but not in a habeas petition, *see id.*; *Preiser v. Rodriguez*, 411 U.S. 475, 488 (1973).

The U.S. Supreme Court has addressed the circumstances in which prisoners may challenge their confinement either through a writ of habeas corpus or pursuant to section 1983, directing that "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser*, 411 U.S. at 500). The Supreme Court explained further that "conditioning the right to bring a § 1983 action on a favorable result in state litigation or federal habeas serve[s] the practical objective of preserving limitations on the availability of habeas remedies." *Id.* at 751.

In *Heck v. Humphrey*, the Supreme Court clarified that state prisoners can bring claims for money damages pursuant to section 1983, but that those claims are not cognizable if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. To that end, the Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .

*Id.* at 486-87; *see also Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006). This "favorable termination" requirement does not apply, however, "if the district court determines that the

8

plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff."[6] *Heck*, 512 U.S. at 487.

The distinction between habeas and section 1983 actions turns on whether a prisoner challenges the validity or duration of his confinement on the one hand, rather than its conditions on the other hand, and courts include parole within this use of "confinement." In *Preiser v. Rodriguez*, the Supreme Court noted that habeas corpus had "recently . . . [been] made available to challenge less obvious restraints," including parole. 411 U.S. at 486 n.7; *cf. Davis v. Cotov*, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002) ("Federal courts have held that *Heck* applies to Section 1983 actions that challenge the fact or duration of confinement based on the revocation of parole."). Addressing the specific question of PRS, the Second Circuit also directed that "[p]ost-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody'" for purposes of habeas corpus. *Earley*, 451 F.3d at 75. Thus, plaintiffs must bring challenges to the validity or duration of their PRS sentences by seeking a writ of habeas corpus.

    2.    *Analysis*

Plaintiffs contend that the dictates of *Heck* and *Preiser* do not apply to them. They assert first that *Heck* does not apply because plaintiffs are challenging neither their underlying convictions nor their judicially-imposed sentences. They argue that because they would "not demonstrate the invalidity of any outstanding criminal judgment," were they to succeed on their claims, those claims are properly brought pursuant to section 1983. *Heck*, 512 U.S. at 487.

---

[6] The Court recognizes that *Heck*'s favorable termination requirement does not bar plaintiffs who are not in custody—and thus have no remedy through habeas relief—from seeking relief pursuant to section 1983. *See Huang v. Johnson*, 251 F.3d 65, 74-75 (2d Cir. 2001). There is no reason to believe—and plaintiffs do not contend—that habeas relief is unavailable to Hardy and Cross in this action, however. Accordingly, the Court does not address such circumstances here. The Bronx County Supreme Court granted Smith's petition for habeas corpus in December 2007 and declared DOCS's imposition of PRS on him illegal. Plaintiffs do not allege that defendants are enforcing conditions of PRS on Smith, and thus, they do not appear to seek any injunctive relief on his behalf.

Plaintiffs also contend that *Preiser* does not apply because the relief plaintiffs seek—freedom from the terms and conditions of PRS and an order vacating outstanding arrest warrants for violations of PRS—would not affect the fact or duration of their physical confinement, as plaintiffs are not currently incarcerated. Plaintiffs' arguments fail, however, for purposes of their motion for injunctive relief.

Here, plaintiffs ask the Court (1) to direct defendants to vacate all terms of PRS imposed by DOCS, rather than a sentencing judge, on individuals who have passed the maximum expiration date of their determinate sentences and (2) to direct defendants to vacate all warrants for arrest based on violation of extra-judicially imposed PRS issued against individuals who have passed the maximum expiration date of their determinate sentences. Plaintiffs thus ask the Court to vacate the PRS to which they have been sentenced, albeit by DOCS, rather than a judge. Both forms of relief would lift terms of "confinement" as defined by *Preiser*. 411 U.S. at 486 n.7. Accordingly, plaintiffs seek to curtail the duration of their confinement, and must do so through a writ of habeas corpus, rather than pursuant to section 1983. *See Muhammad*, 540 U.S. at 750.

Plaintiffs also contend that, because they are not attacking their convictions or judicially-imposed sentences, this action does not fall within the scope of habeas corpus. For purposes of determining whether plaintiffs can challenge sentences pursuant to section 1983, however, courts do not differentiate between sentences imposed by a judge and those improperly imposed by administrators. *See Preiser*, 411 U.S. at 489 (finding that the habeas statute is the proper means by which a state prisoner should bring a "challenge to the fact or duration of his confinement, based, as here, upon the alleged unconstitutionality of state administrative action"). In *Peralta*, the Second Circuit stated clearly that

> the purpose of the *Heck* favorable termination requirement is to prevent prisoners from using § 1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of their confinement, and that punishments related to

10

their term of imprisonment, or the procedures that led to them (if the procedural defect at issue was critical to the imposition of the punishment), must be attacked through a habeas petition.

467 F.3d at 104. Although plaintiffs are not challenging their underlying convictions, they are challenging their sentences to PRS and ongoing custody.

Indeed, cases challenging the imposition or duration of parole—including challenges to improperly imposed parole sentences—are routinely brought as habeas petitions. *See, e.g., Lane v. Williams*, 455 U.S. 624 (1982); *Earley*, 451 F.3d 71; *Jenkins v. Farrell*, No. 07 Civ. 6937, 2009 WL 1616008 (S.D.N.Y. June 9, 2009); *Larweth v. Conway*, 493 F. Supp. 2d 662 (W.D.N.Y. 2007); *Shabazz v. Perlman*, No. 04 Civ. 4355, 2005 WL 2105533 (S.D.N.Y. Sept. 1, 2005). The fact that those challenges were brought as habeas petitions does not demonstrate conclusively that they could not also have been brought pursuant to section 1983. But the Supreme Court in *Preiser* determined that Congress intended the narrower habeas statute to control even when a suit technically could be brought under section 1983, 411 U.S. at 489, and a district court in this Circuit has found that a section 1983 suit was improper where a detainee sought to challenge his DOCS-imposed PRS, *Inman v. Fischer*, No. 07 Civ. 570, 2007 WL 1580078, at *1 (N.D.N.Y. May 30, 2007). That court, too, determined that the plaintiff was challenging his allegedly illegal incarceration and that the proper course of action was to bring a habeas petition. *Id.*

Finally, plaintiffs urge that as long as the relief they seek does not necessarily and directly affect the fact or duration of physical confinement—i.e., as long as the relief would not immediately free plaintiffs from prison—the action is cognizable under section 1983. This distinction ignores the Supreme Court precedent that equates parole with custody, however, and

is thus unavailing. *See Preiser*, 411 U.S. at 486 n.7; *see also Inman*, 2007 WL 1580078, at *1.[7] Because plaintiffs challenge the validity of, and seek to curtail the duration of, their PRS sentences, plaintiffs' action lies within the scope of habeas corpus and their claims for injunctive relief are not cognizable pursuant to section 1983.

## IV. CONCLUSION

Based on this record, the Court accepts that plaintiffs have demonstrated irreparable harm if the relief they seek is not granted. Nonetheless, plaintiffs have shown neither a clear likelihood of success—nor even a simple likelihood of success—on the merits of their claims for injunctive relief because they cannot bring these claims pursuant to 42 U.S.C. § 1983. Plaintiffs' motions for injunctive relief and for certification of an injunctive class are therefore denied.

Dated: New York, New York
March 31, 2010

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.

---

[7] Whether or not plaintiffs were resentenced if they were successful in this action does not change the analysis. *See Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005) ("[A] case challenging a sentence seeks a prisoner's 'release' in the only pertinent sense: It seeks invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement; the fact that the State may seek a new judgment (through a new trial or a new sentencing proceeding) is beside the point." (emphasis in original)); *but see Williams*, 2010 WL 605257, at * 13 ("[O]nce a defendant is released from custody and returns to the community after serving the period of incarceration that was ordered by the sentencing court, and the time to appeal the sentence has expired or the appeal has been finally determined, there is a legitimate expectation that the sentence, although illegal under the Penal Law, is final and the Double Jeopardy Clause prevents a court from modifying the sentence to include a period of postrelease supervision.").